UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2006 JUN 27  P 4: 46

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| MOMENTUM TELECOM, INC., | ) |
| Plaintiff. | ) |
| v. | ) |
| ALABAMA PUBLIC SERVICE COMMISSION, | ) |
| JIM SULLIVAN, in his capacity as President of the Alabama Public Service Commission, | ) Civil Action No. 2:06cv577-DRB |
| JAN COOK, in her capacity as a Commissioner of the Alabama Public Service Commission, and | ) |
| GEORGE C. WALLACE, JR., in his capacity as a Commissioner of the Alabama Public Service Commission, | ) |
| Defendants. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Momentum Telecom, Inc. ("Momentum") states for its Complaint against the above-named defendants, as follows:

### I.  PARTIES

1. Momentum is a corporation formed under the laws of Delaware. Momentum has its principal place of business at 2700 Corporate Park Drive, Suite 200, Birmingham, Alabama 35242.

2. Momentum provides telecommunications services to over 75,000 customers -- principally residential subscribers -- throughout nine southeastern states, including over 15,000 subscribers in Alabama.

3. Momentum is a competitive local exchange carrier ("CLEC") within Alabama within the meaning of the Telecommunications Act of 1996, Pub. L. No. 104-104, 100 Stat. 56 (1996) (the "Act").

4. Defendant Alabama Public Service Commission (the "PSC") is an agency of the State of Alabama. The PSC is a "state commission" within the meaning of the Act.

5. Defendant Jim Sullivan is the President of the PSC. Mr. Sullivan is named as a defendant in his official capacity only.

6. Defendant Jan Cook is a Commissioner of the PSC. Ms. Cook is named as a defendant in her official capacity only.

7. Defendant George C. Wallace, Jr. is a Commissioner of the PSC. Mr. Wallace is named as a defendant in his official capacity only.

## II. JURISDICTION AND VENUE

8. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331. The Court also has subject matter jurisdiction over this matter pursuant to the Supremacy Clause of the United States Constitution and 28 U.S.C. § 1343(a)(3). Should 47 U.S.C. § 252(e)(6) be construed as jurisdictional, the Court also has subject matter jurisdiction over this matter pursuant to that statute.

9. Venue is proper in this district under 28 U.S.C. § 1391(b).

### III. STATUTORY AND REGULATORY FRAMEWORK

**A.   The Telecommunications Act of 1996.**

10.   This case involves the interpretation and application of the Telecommunications Act of 1996 (the "Act"), Pub. L. 104-104, 110 Stat. 56, codified at 47 U.S.C. § 151-614.

11.   The Act was designed to promote competition in local telephone markets by ending regulated monopolies enjoyed by incumbent local exchange telephone companies ("ILECs") such as BellSouth.  The Eleventh Circuit Court of Appeals has explained:

> Before the Telecommunications Act became law, most areas were served by a single local exchange carrier, now known as the "incumbent local exchange carrier." Over the years, the incumbent local carrier constructed hardware networks to deliver residential and commercial telephone service to the area. Because they were without competition and were often compensated based on how much they spent (the "rate-of-return method"), incumbent local carriers had an incentive to construct networks that were inefficient. The Telecommunications Act was enacted to "uproot[] the monopolies that traditional rate-based methods had perpetuated." The Act preempted state laws that protected local monopolies, and it imposed on local carriers affirmative duties to facilitate market entry by new local carriers, known as "competitive local exchange carriers."

MCI Worldcom Commc'ns., Inc. v. BellSouth Telecomms., Inc., 446 F.3d 1164, 1166-67 (11th Cir. 2006) (citations omitted).

12.   The Court of Appeals for the D.C. Circuit recently described the remedial effect of the Act in uprooting the ILECs' monopolies and facilitating the entry of competitive local exchange carriers ("CLECs") into the market:

> To minimize the characteristics of natural monopoly in the market, the Act gave the FCC broad powers to require ILECs to make unbundled network elements ("UNEs") available to competitive local exchange carriers ("CLECs"). 47 U.S.C. § 251(c)(3), (d); see also 47 U.S.C. § 153(29) (defining a "network element" as a

"facility or equipment used in the provision of a telecommunications service"). Thus, the [FCC] may require the ILECs to offer pieces of their networks as unbundled building blocks, which the CLECs can lease, repackage, and use to compete against the ILECs in communications markets across the country.

13.  Covad Comm. Corp. v. FCC, ___ F.3d ___, 2006 WL 1651045 (June 16, 2006).

**(1)  Section 251 of the Act.**

14.  In Section 251 of the Act, Congress left to the Federal Communications Commission ("FCC") the designation of elements to be "unbundled," specifying that in doing so the FCC was to consider, "at a minimum, whether . . . the failure to provide access to such network elements would impair the ability of the telecommunications carrier seeking access to provide the services that it seeks to offer." 47 U.S.C. § 251(d)(2) (This is commonly called the "impairment" standard.)

15.  The list of required UNEs under Section 251 has not remained constant since the passage of the Act ten years ago. The federal courts reversed three attempts by the FCC to establish such a list under the "impairment" standard of Section 251(d)(2).

16.  As the Court of Appeals for the D.C. Circuit explained:

The Act became effective on February 8, 1996, a little more than eight years ago. Twice since then the courts have faulted the Commission's efforts to identify the elements to be unbundled. The Supreme Court invalidated the first effort in *AT&T Corp. v. Iowa Utilities Board*, 525 U.S. 366, 389-90, 119 S.Ct. 721, 734, 142 L.Ed.2d 835 (1999) ("*AT&T*"). We invalidated much of the second effort (including separately adopted "line-sharing" rules) in *United States Telecom Association v. FCC*, 290 F.3d 415 (D.C. Cir. 2002) ("*USTA I*"). The Commission consolidated our remand in that case with its "triennial review" of the scope of obligatory unbundling and issued the Order on review here. See [TRO]. Again, regrettably, much of the resulting work is unlawful.

U.S. Telecom Ass'n v. F.C.C., 359 F.3d 554, 561 (D.C. Cir. 2004) ("USTA II").

17. As it signaled in the last sentence quoted above, the USTA II Court invalidated for a third time a portion of the FCC's determination of the scope of obligatory unbundling under Section 251. Thus, the USTA II Court remanding the matter to the FCC yet again for a determination of what UNEs ILECs are required to make available to CLECs under Section 251.

18. In response to USTA II, the FCC entered its "Triennial Review Remand Order," limiting the ILECs' Section 251 unbundling obligations by dropping certain network elements from the list of UNEs to which access is required under Section 251. Unbundled Access to Network Elements, Order on Remand, WC Docket No. 04-313; CC Docket No. 01-338, 20 FCC Rcd 2533 (2005) ("Triennial Review Remand Order" or "TRRO").

19. The United States Court of Appeals for the D.C. Circuit recently upheld the TRRO, stating that "the [FCC's] fourth try [at implementing the unbundling provisions of the Act] is a charm." Covad Comm. Corp. v. FCC, ___ F.3d ___, 2006 WL 1651045 (June 16, 2006).

20. In addition to delisting certain Section 251 UNEs, the TRRO also established a transition period of one year in which CLECs could continue to access de-listed Section 251 UNEs to serve end-user customers that existed on the effective date of the Order. See TRRO, ¶ 226, 227. The FCC deemed that this one year period would be enough time for ILECs and CLECs to "modify their interconnection agreements, including completing any change of law processes." TRRO, ¶ 227.

21. The FCC also has the authority to determine what method the state commissions may use in setting rates for Section 251 UNEs. 47 U.S.C. §251(d)(1). The FCC

exercised that authority in establishing the Total Element Long-Run Incremental Cost ("TELRIC") method for setting UNE rates.[1] See 47 C.F.R. § 51.505.

### (2)  Section 252 of the Act.

22.  The terms and conditions under which a CLEC leases UNEs from an ILEC are set forth in interconnection agreement between the two carriers. Interconnection agreements must be submitted to and approved by the applicable "state commission" (in Alabama, the PSC).

23.  The Act encourages ILECs and CLECs to negotiate and agree upon access rates via an interconnection agreement. 47 U.S.C. § 251(c)(1).

24.  Under Section 252, if the ILEC and CLEC cannot negotiate an agreement, either party may petition the state commission to arbitrate any open issues. 47 U.S.C. § 252(b).

25.  "Congress delegated to each state commission the authority to approve the interconnection agreement, including the pricing of unbundled network elements [UNEs]." MCI Worldcom, 446 F.3d at 1167; see also 47 U.S.C. § 252(e).

### (3)  Section 271 of the Act.

26.  Section 271 of the Act gave the largest ILECs, the Bell operating companies or "BOCs" such as BellSouth, the right to enter the market for long distance telephone service, a market in which they previously had been forbidden from participating.

---

[1] The TELRIC of an element is the "forward-looking cost over the long run" of an element, "taking as a given the incumbent LEC's provision of other elements." 47 C.F.R. § 51.505(b). The TELRIC must be measured "based on the use of the most efficient telecommunications technology currently available and the lowest cost network configuration." 47 C.F.R. § 51.505(b)(1).

27. In order to enter the long distance market, a BOC must satisfy a "competitive checklist" containing fourteen requirements. Checklist item two requires BOCs to provide "[n]ondiscriminatory access to network elements in accordance with the requirements of sections 251(c)(3) and 251(d)(1)," while checklist items four, five, six, and ten require the BOC to provide unbundled access to, respectively, local loops, local transport, local switching, and call-related databases, 47 U.S.C. §§ 271(c)(2)(B)(ii), 271(c)(2)(B)(iv)-(vi),(x).

28. The FCC has concluded, and the D.C. Circuit has affirmed, that "checklist items four, five, six and ten imposed unbundling requirements for those elements independent of the unbundling requirements imposed by §§ 251-52." U.S. Telecom Ass'n v. F.C.C., 359 F.3d 554, 588 (D.C. Cir. 2004) ("USTA II"); see also Report and Order and Order on Remand and Further Notice of Proposed Rulemaking, Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers, CC Docket Nos. 01-338 et al., FCC 03-36, 18 FCC Rcd 16978 (Aug. 21, 2003) ("Triennial Review Order" or "TRO").

29. As such, "none of the requirements of § 251(c)(3) applies to items four, five, six and ten on the § 271 competitive checklist." USTA II, 359 F.3d at 590.

30. Although the FCC no longer requires ILECs to make certain network elements available to CLECs pursuant to Section 251, BOCs are still required to make those network elements available to CLECs if they are listed in Section 271.

31. Thus, the TRRO's delisting of a UNE under Section 251 does not relieve a BOC's obligation to provide that UNE if it is mandatory under Section 271.

32. While a BOC is no longer obligated to offer such a Section 271 network element at TELRIC prices, the element still must be priced at the "just and reasonable" standard set forth in Section 271. See 47 U.S.C. § 271; TRO, ¶ 663.

**B. Under the plain language of Section 271, a BOC's compliance with the competitive checklist must funnel through an interconnection agreement approved by the state commission under Section 252.**

33. Congress, in drafting Section 271, directly tied a BOC's obligations under the competitive checklist (including providing Section 271 network elements) to providing that access through an interconnection agreement.

34. Section 271(c)(2) states that a BOC meets the conditions necessary to seek approval to enter the long distance market "if, within the State for which the authorization is sought . . . such company is providing access and interconnection pursuant to <u>one or more agreements described in paragraph (1)(A)</u>" (or, alternatively, no CLEC has requested access to network elements) and "such access and interconnection meets the requirements of [the competitive checklist]." 47 U.S.C. § 271(c)(2)(A) (emphasis added).

35. The "agreements described in paragraph (1)(A)" are <u>binding agreements that have been approved by the state commission under Section 252</u>. Section 271(c)(1)(A) states:

> A Bell operating company meets the requirements of this subparagraph if it has entered into one or more <u>binding agreements that have been approved under section 252 of this title</u> specifying the terms and conditions under which the Bell operating company is providing access and interconnection to its network facilities for the network facilities of one or more unaffiliated competing providers of telephone exchange service . . . to residential and business subscribers.

47 U.S.C. § 272(c)(1) (emphasis added).

36. Section 252 specifically authorizes the state commission to set rates for elements contained in interconnection agreements between ILECs and CLECs. Thus, under the plain language of the Act, when a BOC makes network elements available to ILECs under Section 271, it must do so through an interconnection agreement approved by the state commission under Section 252.

37. Thus, Section 271 elements, like Section 251 elements, must be offered pursuant to interconnection agreements submitted to and approved by state commissions under Section 252.

C. **Alabama state law gives the PSC the power to set rates for telecommunications services; nothing in federal law preempts that authority.**

38. Under Alabama law, the PSC has the authority to set rates for telecommunications service providers "as they may be exercised consistently with the Constitution of the state and of the United States." Ala. Code § 37-1-31; accord QCC v. Hall, 757 So.2d 1115 (Ala. 2000); S. Cent. Bell Tel. Co. v. Holmes, 689 So.2d 786 (Ala. 1996).

39. State law provides that such rates must be "just and reasonable," the same standard Congress and the FCC has established for rate setting under Section 271. Ala. Code § 37-1-80; see also Alabama Pub. Serv. Comm'n v. Southern Bell Tel. & Tel. Co., 268 Ala. 312, 106 So.2d 163 (Ala. 1958), rehearing overruled 269 Ala. 361, 113 So.2d 503.

40. There is no support in the text of Section 271 for an evisceration of the states' traditional power to set rates for telecommunications services within their borders, subject to federal guidance on what standard should be used in doing so. The only federal court ever to squarely examine this issue recently stated:

> A careful reading of § 271 shows that the language of it contains absolutely no express provision for rates or any comment on authority to make rates. In fact, the word "rate" does not appear at all in § 271. There is simply no express consideration of rate-making or rate-making authority set out in § 271. The section only impliedly contemplates how rates are to be made and that occurs because one of the "competitive checklist" requirements that BOC's must comply with, *see* § 271(c)(B)(2) and (ii), is that it provide its services "at just and reasonable" rates, *see* §§ 271(b)(ii) and (iii). Thus, *the authority of state commissions over rate-making and its applicable standards is not pre-empted by the express or implied content of § 271*.

Verizon New England, Inc. v. Maine Pub. Util. Comm'n, 403 F. Supp. 2d 96, 102 (D. Me. 2005) (emphasis added).

### IV.   FACTS PARTICULAR TO THIS ACTION

41.   On September 29, 2004, Momentum, along with another CLEC, ITC^DeltaCom Communications, Inc. ("ITC^DeltaCom"), filed a Petition Regarding the Establishment of a Generic Proceeding on Change in Law and Nondiscriminatory pricing for UNEs (the "Petition"), a copy of which is attached as Exhibit 1 hereto.

42.   In their Petition, Momentum and ITC^DeltaCom asked the PSC to establish a generic proceeding to establish "just, reasonable, and nondiscriminatory" pricing for BellSouth's unbundled switching services in cases where switching is not required to be offered under Section 251 of the 1996 Act, but is required by Section 271.

43.   On November 4, 2004, BellSouth filed a separate petition, asking the PSC to "determine what changes recent decisions from the [FCC] and the [D.C. Circuit] require in existing approved interconnection agreements between Bellsouth and [CLECs] in Alabama." A copy of BellSouth's petition is attached hereto as Exhibit 2.

44. At its meeting of December 12, 2004, the PSC voted to consider the petitions filed by Momentum and ITC/DeltaCom, and by BellSouth, under one docket number, Docket No. 29543.

45. Other parties, including Competitive Carriers of the South ("CompSouth", a nonprofit association of CLECs), Centurytel of Alabama, LLC, and Sprint Communications Company, LP, eventually joined Docket No. 29543.

46. On October 6, 2005, the PSC held a hearing on all open matters, including the issue the PSC denominated as Issue No. 8, "Does the Commission have the authority to require BellSouth to include in its interconnection agreements entered into pursuant to [47 U.S.C.] § 252, network elements under either state law, or pursuant to [47 U.S.C.] § 271 or any other federal law other than § 271?"

47. At its regularly scheduled meeting on Tuesday, March 7, 2006, the PSC unanimously approved its staff's recommendations regarding the pending issues in Docket No. 29543.

48. On April 20, 2006, the PSC formalized its action of March 7, 2006, issuing a Final Order Resolving Disputed Issues (the "Final Order"), a copy of which is attached hereto as Exhibit 3.

49. In the Final Order, as to Issue 8, the PSC determined that, as a matter of law, "it does not appear that the Commission has the requisite jurisdiction to compel the inclusion of § 271 elements in dispute in this proceeding in interconnection agreements that are submitted to the Commission for its review pursuant to § 252. Further, there appears to be no

express or implied obligation on the part of BellSouth to negotiate the terms and conditions regarding § 271 elements."

50. The PSC's finding of "no jurisdiction" is contrary to determinations by the state commissions of border states Tennessee and Georgia, and with the determination of the only other federal court to squarely determine the issue, the United States District Court for the District of Maine.

51. The determination by the Georgia state commission that it has jurisdiction to set rates on § 271 elements contained in interconnection agreements submitted to it for consideration under § 252 is currently the subject of a declaratory judgment action filed by BellSouth in the United States District Court for the Northern District of Georgia (Case No. 1:06-CV-0162-CC).

52. On March 7, 2006, Momentum filed with the PSC an Emergency Petition for Reconsideration of the PSC's final determinations of Issues 8 and 14. A copy of Momentum's Emergency Petition for Reconsideration is attached hereto as <u>Exhibit 4</u>.

53. In its Emergency Petition for Reconsideration, Momentum noted that the PSC's final determination of Issues 8 and 14 was contrary to existing federal court decisions, as well as state commissions of border states Georgia and Tennessee.

54. In its Emergency Petition for Reconsideration, Momentum also asserted that the PSC's final determination, if allowed to stand, would force Momentum to shut down and leave its 15,000 Alabama subscribers without a competitive alternative for telephone service.

55. On May 2, 2006, the PSC ruled that Momentum's Emergency Petition for Reconsideration would be held in abeyance. The PSC reasoned that "[t]he core issues raised by Momentum are currently before the federal district court in Georgia. A ruling on Momentum's Petition will thus be deferred until there is guidance from the federal district court in question." (Order Holding in Abeyance of Momentum Telecom, Inc.'s Emergency Petition for Reconsideration, a copy of which is attached hereto as Exhibit 5.)

56. The PSC, therefore, has determined that it will not take action on Issue No. 8 pending guidance from a federal court.

57. This court, which has jurisdiction over the PSC, is a more appropriate forum for the resolution of the PSC's concerns than is the United States District Court for the Northern District of Georgia.

58. Because the PSC has declined to resolve Issue No. 8 without the guidance of a federal court, an actual case or controversy regarding a matter of federal law exists, which this Court may resolve pursuant to 28 U.S.C. § 2201.

## VI. CLAIM FOR RELEF: DECLARATORY JUDGMENT

59. Momentum incorporates Paragraphs 1-58 as if set forth completely herein.

60. The PSC's determination that it may not set rates for Section 271 elements and may not require BellSouth to include Section 271 elements in its interconnection agreements is incorrect as a matter of federal and state law.

61. Momentum is harmed by the resulting state of limbo in which it finds itself before the PSC.

62. The harm to Momentum is directly due to the PSC's failure to act because of its uncertainty as to a matter of federal law.

63. Momentum's injury is likely to be redressed by a favorable decision by this Court.

64. This Court should determine whether the PSC, acting pursuant to its statutory powers under Alabama state law and pursuant to the Telecommunications Act of 1996, may set rates for Section 271 elements and may require BellSouth to include Section 271 elements in its interconnection agreements.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Momentum prays that the Court enter an order:

1. Declaring that the PSC, acting pursuant to its powers under Alabama state law and the Telecommunications Act of 1996, may set rates for Section 271 network elements and may require BellSouth to include Section 271 network elements in its interconnection agreements; and

2. Granting Momentum such further relief as the Court may deem just and reasonable.

- 15 -

Respectfully submitted,

*[signature]*

James H. McLemore, (MCL014)
*Attorney for Momentum Telecom, Inc.*

<u>Of Counsel:</u>
CAPELL & HOWARD, P.C.
150 South Perry Street (36104)
P.O. Box. 2069 (36101-0078)
Montgomery, Alabama  36102
(334) 241-8058
(334) 241-8258 fax