**EXHIBIT 1**

COMMISSIONERS
STAN WISE, CHAIRMAN
ROBERT B BAKER, JR
DAVID L BURGESS
H DOUG EVERETT
ANGELA ELIZABETH SPEIR

DEBORAH K FLANNAGAN
EXECUTIVE DIRECTOR

REECE MCALISTER
EXECUTIVE SECRETARY

(404) 656 4501
(800) 282 5813

FAX (404) 656-2341
www psc state ga us

Docket No 19341-U

In Re    Generic Proceeding to Examine Issues Related to BellSouth Telecommunications, Inc's Obligations to Provide Unbundled Network Elements

## ORDER INITIATING HEARINGS TO SET A JUST AND REASONABLE RATE UNDER SECTION 271

### I    Background

The Georgia Public Service Commission ("Commission") initiated this docket on August 24, 2004. In its June 30, 2005 Procedural and Scheduling Order, the Commission directed the parties to submit a Joint Issues List. The Commission approved the Joint Issues List submitted by BellSouth Telecommunications, Inc ("BellSouth") and Competitive Carriers of the South ("CompSouth")[1] along with the issues added by Digital Agent, LLC (Order on Motion to Move Issues into Generic Proceeding, p 2)

While the docket includes twenty-five (25) issues, the most significant issue, and one that impacts the resolution of several other issues in the docket, is set forth as part of Issue 8(a) Issue 8(a) states as follows

> Does the Commission have the *authority* to require BellSouth to include in its interconnection agreements entered into pursuant to Section 252, network elements under either state law, or pursuant to Section 271 or any other federal law other than Section 251?

---

[1] CompSouth is an association of Competitive Local Exchange Carriers

At its January 17, 2006 Administrative Session, the Commission limited its consideration to only this issue. At a later time, the Commission will address the remaining issues.

## II. Positions of the Parties

### A. BellSouth

The foundation for BellSouth's position is that its obligations with respect to state commission approved interconnection agreements are tied exclusively to Section 251. It is from this premise that BellSouth argues that a state commission's authority does not extend to requiring an incumbent local exchange carrier ("ILEC") to comply with any terms and conditions based in any other section of federal law. BellSouth concludes that to the extent it has ongoing unbundling obligations under Section 271, then those obligations are to be enforced by the Federal Communications Commission ("FCC").

CompSouth's argument is based on a theory that Sections 251 and 271 are independent but interrelated. The first step in their analysis is pointing out that the Triennial Review Order established that the duties of an ILEC under Section 271 are independent from the obligations of a Bell operating company ("BOC") under Section 251. The import of this conclusion is that the omission of an obligation under Section 251 would not mean that the obligation ceases to exist under Section 271. The next step in the analysis focuses on the references to Section 252 interconnection agreements in Section 271. In short, CompSouth argues that because Section 252 interconnection agreements must include items from the Section 271 competitive checklist, state commissions have the authority to require ILECs to include in Section 252 interconnection agreements unbundling requirements under Section 271.

## III. FINDINGS AND CONCLUSIONS

The Commission has examined the arguments of both parties and recognizes that the question of its jurisdiction on this issue has not been yet been squarely addressed by a controlling authority. The Commission will proceed with its analysis in an effort to act properly under the law and to protect the consumers of the State of Georgia. Incumbent local exchange carriers have the obligation to negotiate in good faith interconnection agreements with requesting telecommunications carriers. 47 U.S.C. § 251(c)(1). Under Section 252, these interconnection agreements may be voluntarily negotiated. 47 U.S.C. § 252(a)(1). State commissions may be asked to mediate disagreements that arise between the parties during negotiations. 47 U.S.C. § 252(a)(2). If the parties are unable to reach agreement through negotiation, then a party to the negotiation may petition the state commission for arbitration. In such an instance, the state commission resolves the issues set forth in the petition for arbitration and the response thereto. 47 U.S.C. § 252(b)(4)(C). Regardless of whether the interconnection agreement is reached through voluntary negotiation or compulsory arbitration, it must be approved by the state commission prior to becoming effective. 47 U.S.C. § 252(e)(1). A state commission is also authorized to reject an interconnection agreement. Id. Section 251(f) provides for the filing by a bell operating company of a Statement of Generally Available Terms ("SGAT"). In order to be approved by a state commission, such a filing must be found to comply with Section 251 and Section 252(d). 47 U.S.C. § 252(f)(2).

Section 271 compliance is necessary for a BOC to establish or maintain the right to provide interLATA long distance services. In order to comply with the requirements of Section 271, a BOC must provide access and interconnection pursuant to at least one Section 252 interconnection agreement or be offering access and interconnection pursuant to an SGAT. 47 U.S.C. § 271(c)(2)(A)(i). In addition, Section 271 requires that the BOC provide access to unbundled network elements ("UNEs") on the competitive checklist set forth within the statute at just and reasonable rates. 47 U.S.C. § 271(c)(2)(B)(i). The Section 271 competitive checklist items (i) and (ii) make explicit reference to compliance with provisions in Sections 251 and 252. Therefore, the Section 252 agreements are the vehicles through which a BOC demonstrates compliance with Section 271. As such, it is logical to conclude that obligations under Section 271 must be included in a Section 252 interconnection agreement. This conclusion is consistent with the holding of the Minnesota District Court in *Qwest Corporation v. Minnesota Public Utilities Commission*, 2004 U.S. Dist. LEXIS 16963 (D. Minn. 2004). The District Court found that any agreement containing a checklist term must be filed as an ICA under the Act. *Qwest Corporation*. As stated above, state commissions have authority to approve or reject these interconnection agreements.

There are elements that a BOC must provide under Section 271 that the FCC has found no longer meet the Section 251 impairment standard. While a BOC is no longer obligated to offer such an element at TELRIC[2] prices, the element still must be priced at the just and reasonable standard set forth in Section 271. (*Triennial Review Order* ¶ 663). In discussing the just and reasonable standard the FCC states as follows:

> Thus, the pricing of checklist network elements that do not satisfy the unbundling standards in section 251(d)(2) are reviewed utilizing the basic just, reasonable and nondiscriminatory rate standard of sections 201 and 202 that is fundamental to common carrier regulation that has historically been applied *under most federal and state statutes* including (for interstate services) the Communications Act.

*Id.* (emphasis added). Far from claiming the exclusive right to set the rates pursuant to this standard, the FCC expressly recognizes the application of such a standard at both the state and the federal level.

BellSouth's preemption argument overstates what the Commission is being asked to do in this proceeding. By setting rates, the Commission is not enforcing Section 271. The FCC's enforcement authority under Section 271 is clear. Section 271(d)(6) sets forth the actions that the FCC may take if it determines that a BOC has ceased to meet any of the conditions required for approval. The actions that the FCC may take if it finds such non-compliance include the issuance of an order obligating the BOC to correct the deficiency, the imposition of a penalty or the suspension or revocation of such approval. 47 U.S.C. 271(d)(6)(A)(i), (ii) and (iii). First, the Commission is not making a finding that BellSouth has failed to meet any of the conditions for Section 271 approval. Rather, it is setting just and reasonable rates for de-listed unbundled network elements. Second, the Commission is not taking any of the actions included in Section 271(d)(6). The setting of just and reasonable rates does not assume any of the responsibilities that the Federal Act reserves for the FCC under Section 271(d)(6).

---

[2] "TELRIC" is an acronym for total element long-run incremental cost.

Recently, the United States District Court for the District of Maine considered the question of whether the FCC has exclusive jurisdiction to establish, interpret, price, and enforce network access obligations under Section 271. The District Court concluded that the Federal Act did not intend to preempt state regulation of Section 271 obligations. *Verizon New England Inc d/b/a Verizon Maine v Maine Public Utilities Commission* 2005 U S Dist LEXIS 30288 at 16. The Court reasons that while it is the FCC that approves Section 271 applications, there is no provision in the federal act that grants the FCC exclusive ratemaking authority for Section 271 UNEs. *Id* The Court further reasons that Section 271 only impliedly contemplates the making of rates, and it concludes that "the authority of state commissions over rate-making and its applicable standards is not pre-empted by the express or implied content of Section 271." *Id* at 17. Finally, the Court notes that Verizon did not cite to any FCC order that interpreted Section 271 to provide an exclusive grant of authority for rate-making under Section 271. *Id*

The Commission finds similarly that BellSouth has not cited to any federal court decision directly on point. BellSouth cites to a decision of United States District Court for the Southern District of Mississippi[3] for the proposition that the FCC enforces Section 271. (BellSouth Brief, p 20) Similarly, BellSouth cites to a decision for the United States District Court for the Eastern District of Kentucky[4] that also focuses on the issue of FCC enforcement authority for Section 271. *Id* As discussed above, the question of enforcement of the statute is a separate issue from the question of setting just and reasonable rates.

Based on the foregoing, the Commission concludes that it is reasonable to assert jurisdiction to set just and reasonable rates for de-listed UNEs pursuant to Section 271 of the Federal Telecom Act. Pursuant to this jurisdiction, the Commission will proceed with an expedited hearing schedule as detailed below for the purpose of setting just and reasonable rates for de-listed UNEs pursuant to Section 271. The Commission will continue to monitor proceedings to determine whether any case law or FCC decision sheds additional light on the jurisdictional question under Section 271. In the absence of any additional guidance, the Commission will file an emergency petition with the FCC seeking that it clarify that state commissions have the authority to set just and reasonable rates for de-listed UNEs. Along with the petition, the Commission will certify the record from the evidentiary proceeding to be held in February in this docket. In the event that the FCC concludes that this Commission does not have jurisdiction to set Section 271 rates, then the expedited petition will ask the FCC to set rates for the de-listed UNEs based on the record that this Commission will have compiled and certified in the petition.

## IV    HEARING DATES AND PROCEDURES

### February 10, 2006

BellSouth and other interested parties may file cost studies and Direct Testimony regarding issues in this docket. Accompanied therewith shall be an electronic version of the

---

[3] *BellSouth Telecommunications Inc v Mississippi Public Serv Com'n et al* Civil Action No 3 05 CV173LN *Memorandum Opinion and Order* (S D Miss Apr 13 2005), 2005 U S Dist LEXIS 8498
[4] *BellSouth Telecommunications Inc v Cinergy Communications Co et al* Civil Action No 3 05-CV-16-JMH, *Memorandum Opinion and Order* (E D Ky Apr 22, 2005)

party's testimony, which shall be made on a 3 5" diskette using Microsoft Word® format for text documents and Excel® for spread sheets or other comparable electronic format. Under no circumstances should an electronic filing consist of more than four (4) files, including attachments. Cost studies may be filed on CD Rom. This filing shall be made at the office of the Executive Secretary, Georgia Public Service Commission, 244 Washington Street, S W, Atlanta, Georgia 30334-5701. If a party chooses to use the BSTLM cost model to develop proposed rates, that party shall include in its testimony detailed descriptions of each and every change made within the model.

### February 20-23, 2006

At 10 00 a m, the Commission will commence hearings for Docket No 19341-U beginning with the testimony of any public witnesses pursuant to O C G A § 46-2-59(g), and the hearing of any appropriate motions. After these preliminary matters, the Commission will conduct hearings on the testimony filed by BellSouth and the intervenors. Hearings will commence at 10 00 a m each day for the duration of the hearings, except that on February 21, hearings will commence at 1 30 p m. The hearings will take place in the Commission Hearing Room on the First Floor of 244 Washington Street, S W, Atlanta, Georgia 30334-5701.

### February 28, 2006

All parties are to file an original and fifteen (15) copies of closing briefs, orders or recommendations. Accompanied therewith shall be an electronic version of a party's filing, which shall be made on a 3½ inch diskette using Microsoft Word® format for text documents and Excel® for spread sheets.

#### Discovery

The Commission finds and concludes that it is appropriate to permit the parties to conduct discovery in this proceeding, subject to the following procedures. The parties shall have the right to issue written discovery and conduct depositions. Written discovery, for parties other than the Staff, shall be limited to 25 requests. Objections to discovery shall be filed within ten (10) days after receipt of discovery. Responses to discovery shall be provided no later than fourteen (14) days after receipt of the request. Depositions shall be limited to one per witness. Parties should endeavor to keep their discovery requests focused on the issues in this docket, and to use written data requests in the first instance to obtain the data, information, or admissions they may seek. Discovery requests shall be served electronically, and all discovery requests must be served prior to January 24.

## Copies of Pleadings, Filings and Correspondence

Parties shall file the original plus 15 copies, as well as an electronic version (Word format for text documents), of all documents with the Commission's Executive Secretary no later than 4 00 p m on the date due However, only two copies need to be filed for discovery responses In addition, copies of all pleadings, filing, correspondence, and any other documents related to, and submitted in the course of this docketed matter (except for discovery requests and responses) shall be served upon the other parties as well as upon the following individuals in their capacities as indicated below

Daniel S Walsh

Assistant Attorney General

Department of Law

State of Georgia

40 Capitol Square SW

Atlanta, Georgia 30334

(404) 657-2204


Jeanette Mellinger

Consumers' Utility Counsel Division

2 Martin Luther King Jr Drive

Plaza Level East

Atlanta, Georgia 30334

(404) 656-3982

## Record

The parties shall be responsible for bringing before the Commission all evidence that they wish to have considered in this proceeding The Commission may also require the parties to provide any additional information that the Commission considers useful and necessary in order to reach a decision Any party filing documents or presenting evidence that is considered by the source of the information to be a "trade secret" under Georgia law, O C G A § 10-1-761(4), must comply with the rules of the Commission governing such information See GPSC Rule 515-3-1-11 Trade Secrets (containing rules for asserting trade secret status, filing both under seal and with public disclosure versions, use of protective agreements, petitioning for access, and procedures for challenging trade secret designations) Responses to discovery will not be considered part of the record unless formally introduced and admitted as exhibits

## Testimony of Witnesses

(a) Summations of direct testimony will take no longer than ten (15) minutes, unless the Commission, in its discretion, allows for a longer period of time

(b) In the absence of a valid objection being made and sustained, the pre-filed testimony and exhibits, with corrections, will be admitted into the record as if given orally prior to the summation made by witnesses subject to a motion to strike after admission or other relevant objection

(c) Where the testimony of a panel of witnesses is presented, cross-examination may be addressed either to the panel, in which case any member of the panel may respond, or to any individual panel member, in which case that panel member shall respond to the question

## *Rights of the Parties*

The parties have the following rights in connection with this hearing

(1) To respond to the matters asserted in this document and to present evidence on any relevant issue,

(2) To be represented by counsel at its expense,

(3) To subpoena witnesses and documentary evidence through the Commission by filing requests with the Executive Secretary of the Commission, and

(4) Such other rights as are conferred by law and the rules and regulations of the Commission

**WHEREFORE,** it is

**ORDERED,** that the Commission hereby adopts the procedures, schedule, and statements regarding the issues set forth within this Order

**ORDERED FURTHER,** that the Commission hereby asserts its authority under Section 271 of the Federal Act to set just and reasonable rates for de-listed unbundled network elements

**ORDERED FURTHER,** that at the conclusion of the proceedings the Commission will file with the FCC an expedited petition as described herein

**ORDERED FURTHER,** that a motion for reconsideration, rehearing or oral argument or any other motion shall not stay the effective date of this Order, unless otherwise ordered by the Commission

**ORDERED FURTHER,** jurisdiction over this matter is expressly retained for the purpose of entering such further Order or Orders as this Commission may deem just and proper

The above by action of the Commission in Administrative Session on the 17th day of January 2006

_____  
**REECE MCALISTER**  
**EXECUTIVE SECRETARY**

_____  
**STAN WISE**  
**CHAIRMAN**

_____  
**Date**

_____  
**Date**

COMMISSIONERS:
STAN WISE, CHAIRMAN
ROBERT B. BAKER, JR.
DAVID L. BURGESS
H. DOUG EVERETT
ANGELA E. SPEIR

RECEIVED
MAR 2 4 2006
EXECUTIVE SECRETARY
G.P.S.C.

DEBORAH K. FLANNAGAN
EXECUTIVE DIRECTOR

REECE McALISTER
EXECUTIVE SECRETARY

**Georgia Public Service Commission**

(404) 656-4501
(800) 282-5813

244 WASHINGTON STREET, S.W.
ATLANTA, GEORGIA 30334-5701

FAX: (404) 656-2341
www.psc.state.ga.us

DOCKET # 19341
DOCUMENT # 90828

Docket No. 19341-U

In Re:   Generic Proceeding to Examine Issues Related to BellSouth Telecommunication, Inc.'s Obligations to Provide Unbundled Network Elements

## ORDER ON RECONSIDERATION

### I. Proceedings

On January 20, 2006, the Georgia Public Service Commission ("Commission") issued its Order Initiating Hearings to Set a Just and Reasonable Rate Under Section 271 ("Order Initiating Hearings"). In that Order, the Commission concluded that it had jurisdiction to set just and reasonable rates for de-listed unbundled network elements and scheduled hearings commencing on February 20, 2006 for the purpose of setting just and reasonable rates for de-listed UNEs pursuant to Section 271. (Order Initiating Hearings, pp. 2-5). On March 10, 2006, after holding hearings and receiving evidence and arguments of counsel, the Commission issued its Order Setting Rates Under Section 271 ("Order Setting Rates"). In the Order Setting Rates, the Commission set just and reasonable rates for unbundled local switching, high capacity loops and transport and line sharing.

The Commission adopted the rates proposed by the Competitive Carriers of the South for local switching and high capacity loops and transport. (Order Setting Rates, pp. 3-9). For the line sharing loop, the Commission adopted a loop rate of $6.50. *Id.* at 12. This figure reflects the average of the highest rates contained in the agreements Covad Communication Company has entered into with incumbent local exchange carriers. *Id.* The Commission adopted the remainder of Covad's proposed recurring and non-recurring rates for line sharing. *Id.*

### II. Proceedings

As set forth in more detail in its prior orders in this docket, the Commission has jurisdiction over these matters pursuant to Sections 251, 252 and 271 of the Federal Telecommunications Act of 1996, Georgia's Telecommunications and Competition Development Act of 1995 (Georgia Act), O.C.G.A. §§ 46-5-160 *et seq.*, and generally O.C.G.A. §§ 46-1-1 *et seq.*, 46-2-20, 46-2-21 and 46-2-23. Pursuant to state law, the Commission has the jurisdiction to set reasonable rates, terms or conditions for interconnection services. O.C.G.A. § 46-5-164(d).

## III. Discussion

The Commission reconsidered the matter at its March 21, 2006 Administrative Session. On reconsideration, the Commission voted not to set a rate for local switching, but did not alter the rates it set for high capacity loops and transport and line sharing. Nothing in this decision alters the Commission's prior determinations regarding its authority to set just and reasonable rates for de-listed network elements under Section 271. Rather, the Commission concludes that it is more appropriate not to set a just and reasonable rate for local switching at this time. Therefore, as of the effective date of this order, BellSouth Telecommunications, Inc. ("BellSouth") shall be able to transition the Unbundled Network Element Platform ("UNE-P") arrangements of competitive local exchange carriers to resale or other arrangements negotiated by the parties.

\* \* \* \* \*

**WHEREFORE IT IS ORDERED,** that all findings, conclusions, statements, and directives made by the Commission and contained in the foregoing sections of this Order are hereby adopted as findings of fact, conclusions of law, statements of regulatory policy, and orders of this Commission.

**ORDERED FURTHER,** that the Commission reconsiders the rates set for local switching in its Order Setting Rates, and will not to set a rate for local switching at this time. As of the effective date of this order, BellSouth shall be able to transition the UNE-P arrangements of competitive local exchange carriers to resale or other arrangements negotiated by the parties.

**ORDERED FURTHER,** that a motion for reconsideration, rehearing, or oral argument or any other motion shall not stay the effective date of this Order, unless otherwise ordered by the Commission.

**ORDERED FURTHER,** that jurisdiction over these matters is expressly retained for the purpose of entering such further Order or Orders as this Commission may deem just and proper.

The above by action of the Commission in Special Administrative Session on the 21st day of March, 2006.

_____
Reece McAlister
Executive Secretary

_____
Stan Wise
Chairman

3-24-06
_____
Date

3-24-06
_____
Date

Commission Order
Docket No. 19341-U
Page 2 of 2