**EXHIBIT 5**

# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

DIECA COMMUNICATIONS, INC., etc.,

       Plaintiff,

v.                         CASE NO.  4:06cv72-RH/WCS

FLORIDA PUBLIC SERVICE
COMMISSION et al.,

       Defendants.

_____/

## ORDER ON MERITS

This is a challenge to a decision of the Florida Public Service Commission based on alternative holdings first, that it has no authority to enforce the federal statute setting forth the terms on which a Bell Operating Company may enter the market for interLATA services, and second, that in any event, that statute does not require a Bell Operating Company to allow competitors unbundled access to the high frequency portion of a local loop.  I uphold the Florida Commission's decision on both grounds.

# I
## Background—The Statutory Framework

Historically, telephone service in the United States, both local exchange service and interexchange service, was provided on a monopoly basis, primarily by American Telephone & Telegraph Company ("AT&T") and its subsidiaries. AT&T subsidiaries that later came to be known as "Bell Operating Companies" or "BOCs" provided local exchange service in most (but not all) of the country.

Eventually, other carriers attempted to enter the interexchange market, not always without resistance. The government brought an antitrust action against AT&T. One of the allegations was that the company had used its BOC subsidiaries' admittedly lawful monopolies in local markets to restrict competition in the interexchange market; interexchange carriers needed the local network to originate and terminate interexchange calls. A settlement agreement required AT&T to divest the BOCs. *See United States v. Am. Tel. & Tel. Co.*, 552 F. Supp. 131 (D.D.C. 1982), *aff'd sub nom. Maryland v. United States*, 460 U.S. 1001, 103 S. Ct. 1240, 75 L. Ed. 2d 472 (1983). Under the settlement agreement as ultimately implemented, a BOC could provide service within a Local Access and Transport Area, that is, "intraLATA service," but BOCs were prohibited from providing *inter*LATA service. In essence, the BOCs were to remain local exchange carriers, not interexchange carriers, thus eliminating the incentive to use

the local bottleneck to restrict competition in the interexchange market .

More than a decade later, Congress adopted the Telecommunications Act of 1996. Among the Act's purposes were to take back oversight in this area from the antitrust court and, more fundamentally, to foster competition for local as well as interexchange services. The Act imposes on local exchange carriers, as a matter of federal law, various duties designed to foster competition. The Act allows state commissions the option of taking a major role in implementing the Act's requirements. The Florida Commission has accepted that invitation.

The federal duties imposed on each "incumbent local exchange carrier"—that is, on each carrier who previously provided local service on a monopoly basis—include the obligation to sell local services at wholesale to any competing carrier for resale by the competing carrier to customers; the obligation to allow competitors to interconnect with the incumbent's facilities for the purpose of providing services to the competitor's own customers; and, of importance in the case at bar, the obligation to make certain "network elements"—parts of the incumbent's telecommunications system—available to competing carriers for their use in providing service to their own customers. The Act directs the Federal Communications Commission to determine which network elements must be made available to competitors and to consider, in making that determination, whether access to a proprietary network element is "necessary" and failure to provide

Case 2:06-cv-00577-WKW-TFM   Document 25-6   Filed 09/22/2006   Page 5 of 25
Case 4:06-cv-00072-RH-WCS   Document 64   Filed 09/12/2006   Page 4 of 23

Page 4 of 23

access would "impair" the ability of the competitive carrier to provide services. 47

U.S.C. §251(d)(2).[1]

Separate and apart from the duties imposed on all incumbent local exchange

carriers under §251, the Act prohibits BOCs from providing interLATA services,

unless and until they obtain authorization from the FCC. *See* 47 U.S.C. §271. The

Act set forth specific prerequisites to any such authorization. Among the

prerequisites is a 14-item checklist. *See* 47 U.S.C. §271(c)(2)(B). The Act

requires the FCC to consult with state commissions prior to making any

determination on this but otherwise gives state commissions no role in the process.

*See* 47 U.S.C. §271(d)(2)(B).


## II
## Background—The Case at Bar

As noted above, under the 1996 Act, incumbent local exchange carriers,

including defendant BellSouth Telecommunications, Inc. ("BellSouth"), must

make elements of their networks meeting specified criteria available to competitors

_____

[1] These duties are described in greater detail in an ever growing list of
judicial decisions. *See, e.g., AT&T Corp. v. Iowa Util. Bd.*, 525 U.S. 366, 119 S.
Ct. 721, 142 L. Ed. 2d 835 (1999); *MCI Telecomms. Corp. v. BellSouth
Telecomms., Inc.*, 112 F. Supp. 2d 1286 (N.D. Fla. 2000). A comprehensive
review of early FCC and judicial interpretations of the "necessary and impair"
standard is set forth in Report and Order and Order on Remand and Further Notice
of Proposed Rulemaking, *In re Review of the Section 251 Unbundling Obligations
of Incumbent Local Exchange Carriers*, 18 FCC Rcd 19020 (2003).

Case 2:06-cv-00577-WKW-TFM    Document 25-6    Filed 09/22/2006    Page 6 of 25
Case 4:06-cv-00072-RH-WCS    Document 64    Filed 09/12/2006    Page 5 of 23

Page 5 of 23

for their use in providing telecommunications services to their own customers. *See* 47 U.S.C. §251. One element that must be made available is the local loop—ordinarily consisting of copper wire—that connects the incumbent's central office to a customer's premises.

A local loop has a low frequency portion, primarily used to provide traditional telephone service carrying voice transmissions, and a high frequency portion, ordinarily used for access to the internet or other data transmission through what is commonly referred to as "digital subscriber line" or "DSL" service.

Plaintiff Dieca Communications, Inc. d/b/a Covad Communications Company ("Covad") is a competitive carrier whose principal business is providing DSL services to customers over the high frequency portion of local loops owned by incumbent carriers, including BellSouth.

It is undisputed that a competitive carrier (such as Covad), is entitled to obtain any entire local loop from an incumbent (such as BellSouth) at an appropriate price. Very much disputed, however, is whether a competitive carrier is entitled to obtain only the high frequency portion of a loop, without also buying access to the remainder of the loop. The FCC required incumbents to allow this practice, commonly referred to as "line sharing," beginning in 1999,[2] but its

---

[2] *See* Third Report and Order in CC Docket No. 98-147 and Fourth Report and Order in CC Docket No. 96-98, *In re Deployment of Wireline Services Offering Advanced Telecommunications Capability and Implementation of the*

decision on this was vacated on judicial review,[3] and in 2003 the FCC reversed

course and concluded that requiring incumbents to allow line sharing is anti-

competitive.[4]

Prior to the FCC's reversal of course, BellSouth and Covad entered an

agreement under 47 U.S.C. §252 under which BellSouth allowed Covad access to

the required network elements, including local loops. The Florida Commission

approved the agreement. The agreement provided for line sharing, consistent with

the prevailing FCC view that line sharing was a requirement under §251.

When the FCC changed course and concluded line sharing was not a §251

requirement, BellSouth petitioned the Florida Commission for relief from its

agreement with Covad. In response, Covad admitted that line sharing was no

longer required under §251, but Covad asserted that §271—the provision

addressing the entry of BOCs into the interLATA market—still required BellSouth

to allow line sharing. BellSouth had sought and obtained FCC authorization to

provide interLATA services and thus was (and is) duty bound to comply with the

---

*Local Competition Provisions of the Telecommunications Act of 1996*, 14 FCC Rcd 20912 (1999), *vacated and remanded*, *United States Telecom Ass'n v. FCC*, 290 F.3d 415 (D.C. Cir. 2002).

[3] *See United States Telecom Ass'n v. FCC*, 290 F.3d 415 (D.C. Cir. 2002).

[4] *See* Report and Order and Order on Remand and Further Notice of Proposed Rulemaking, *In re Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers*, 18 FCC Rcd 16978 (2003), *aff'd in relevant part*, *United States Telecom Ass'n v. FCC*, 359 F.3d 554 (D.C. Cir. 2004).

requirements of §271.

The Florida Commission ruled in BellSouth's favor on two separate grounds. First, the Florida Commission determined that its authority over agreements of this type between carriers is limited to enforcing the requirements of §251 and that it lacks authority to compel BellSouth to comply with separate §271 requirements. Second, the Commission determined that line sharing is not a §271 requirement, so that even if the Commission could consider the §271 issue on the merits, BellSouth still would be entitled to relief from the line sharing provision of its agreement with Covad.

Covad filed this action for review of the Florida Commission's decision. Defendants are BellSouth, the Florida Commission, and individual Commissioners.[5] By agreement of both sides, the matter has been submitted based on the record compiled in the Florida Commission and appellate-style briefs.[6] In its brief, Covad did not address the first of the Florida Commission's alternative holdings—that it lacked authority to compel compliance with §271 requirements.

---

[5] The Florida Commission has not sought to be dismissed as a defendant based on Eleventh Amendment immunity. Whether the Commission itself remains a defendant or is dismissed, leaving the action to proceed only against individual Commissioners (and BellSouth), makes no difference.

[6] Covad also has requested judicial notice of two letters written by FCC staff that are appended to Covad's initial brief as exhibits 26 and 28. The letters are not part of the administrative record and will not be judicially noticed. Even if noticed, they would not affect the decision announced in this order.

At oral argument, Covad made clear that it indeed does not challenge that decision. Covad asserts, however, that it properly can go forward with its challenge to the Florida Commission's alternative holding, and that this court should review that holding on the merits. Defendants assert that Covad's failure to challenge the Florida Commission's determination that it lacks authority to compel compliance with §271 should end the matter. Defendants also have addressed the Florida Commission's alternative holding on the merits.

### III
### Standard of Review

The issues presented in this action are legal issues on which no deference is due the decision of the Florida Commission. I thus review the issues *de novo*. *See MCI Telecommunications Corp. v. BellSouth Telecommunications, Inc.*, 112 F. Supp. 2d 1286, 1290-92 (N.D. Fla. 2000) (explaining that proper standard of review in actions brought under 47 U.S.C. §252(e)(6) is *de novo* (for issues regarding the meaning and import of the Telecommunications Act) and the arbitrary and capricious standard (for state commission determinations of how to implement the Act as so construed)).

# IV
## Florida Commission Authority To Enforce §271

The Telecommunications Act of 1996 prohibits BOCs from entering the market for interLATA services unless and until authorized by the FCC on the basis of meeting specified conditions. After a BOC obtains authorization, it must continue to comply with the conditions. A person, including a competitor, who asserts a BOC has failed to comply with the conditions may file a complaint with the FCC. *See* 47 U.S.C. §271(d)(6)(B). The FCC must act on such a complaint within 90 days (unless the parties agree otherwise). *Id.*

The Act requires the FCC to consult with the relevant state commission prior to making any determination on these matters but otherwise assigns state commissions no role in the process. It thus is correct, precisely as the Florida Commission determined, that any complaint by Covad that BellSouth's failure to provide line sharing will violate §271 is an issue for the FCC, not for the Florida Commission.

That the Florida Commission has authority under §252 over agreements between carriers implementing the requirements of §251 does not change this result. The procedures set forth in §252 commence with a request by one carrier to another for "interconnection, services, or network elements *pursuant to section 251.*" 47 U.S.C. §252(a)(1) (emphasis added). If the carriers fail to agree, the state

Case 2:06-cv-00577-WKW-TFM    Document 25-6    Filed 09/22/2006    Page 11 of 25
Case 4:06-cv-00072-RH-WCS    Document 64    Filed 09/12/2006    Page 10 of 23

Page 10 of 23

commission may resolve "any open issues" through "arbitration" and may impose conditions on the carriers. Under the law of the circuit, "any open issues" means issues arising under §251. *See MCI Telecomms. Corp. v. BellSouth Telecomms. Inc.*, 298 F.3d 1269, 1274 (11th Cir. 2002). And under the plain terms of the statute, the state commission's resolution of open issues and imposition of conditions must be based on §251; the statute directs the state commission to "ensure that such resolution and conditions meet the *requirements of section 251* of this title, including the regulations prescribed by the [FCC] *pursuant to section 251* of this title." 47 U.S.C. §252(c)(1) (emphasis added).[7]

The Florida Commission thus had it right. It has no authority to enforce

---

[7] In asserting the contrary, Covad cites *Verizon New England Inc. v. Maine Public Utilities Commission*, 2006 WL 2007655 (D. Me. July 18, 2006). There the court upheld a state commission's authority to establish the price at which Covad was entitled to acquire from a BOC the high frequency portion of the local loop. In doing so, the court rejected the contention that only the FCC could address this issue. The court said the commission had authority to establish this price under state law and that the BOC had not challenged the commission's state law authority to do so. Whatever might be said of a commission's authority to establish a price under state law, in the case at bar there is no issue of price, only of the BOC's obligation to provide the service at all, and the Florida commission claims no authority to address this issue under state (or federal) law. In this circuit, a state commission's authority in a §251 arbitration is only to address issues arising under §251, *see MCI Telecomms. Corp. v. BellSouth Telecomms., Inc.*, 298 F.3d 1269, 1274 (11th Cir. 2002), and Covad neither challenges the Florida Commission's implicit holding that it has no state law authority in this area, nor could it properly do so in this court. *See, e.g., Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 121, 104 S. Ct. 900, 79 L. Ed. 2d 67(1984) (holding that the Eleventh Amendment bars any claim for injunctive relief based on state law against a state or against a state officer in his or her official capacity).

Case 2:06-cv-00577-WKW-TFM   Document 25-6   Filed 09/22/2006   Page 12 of 25
Case 4:06-cv-00072-RH-WCS   Document 64   Filed 09/12/2006   Page 11 of 23

*Page 11 of 23*

§271.  Covad apparently has acquiesced in this conclusion.  This, standing alone, would be sufficient to require affirmance of the Florida Commission's decision.[8]

## V
## Line Sharing Under §271

The very foundation of the government's original demand in its antitrust action against AT&T for divestiture of the BOCs was the concern that their local monopolies had been and would continue to be used as improper leverage in the market for interstate and other services.  The settlement agreement in the antitrust action required divestiture of the BOCs and prohibited them from entering the interLATA market, at least initially, thus removing the major motivation for misuse of the local monopoly.

The Telecommunications Act of 1996 speak to this same concern in three respects.  First, the Act seeks to open the local markets to competition, adopting requirements applicable not just to the BOCs but to all incumbent local exchange carriers.  *See* 47 U.S.C. §§251-52.  Second, the Act authorizes BOCs to enter the

---

[8] The provisions cited in the text make clear that if Covad were today seeking to enter an agreement with BellSouth for the first time and this same dispute over line sharing arose, the Florida Commission would have no authority to impose a line sharing requirement.  Covad has made no claim that the result should be different on the ground that an agreement with a line sharing requirement already is in place and BellSouth seeks to end that requirement.  I thus have no occasion to address that issue.

Case 2:06-cv-00577-WKW-TFM    Document 25-6    Filed 09/22/2006    Page 13 of 25
Case 4:06-cv-00072-RH-WCS    Document 64    Filed 09/12/2006    Page 12 of 23

*Page 12 of 23*

market for interLATA services originating *outside* their respective areas, that is, in

areas where they have never had a local monopoly to misuse. *See* 47 U.S.C.

§271(b)(2). Third, the Act provides a method by which BOCs can obtain FCC

authorization to enter the market for interLATA services originating *within* their

respective areas, if and only if specified conditions are met. *See* 47 U.S.C.

§271(c). The conditions all focus on the opening of the local market to

competition. *See* 47 U.S.C. §271(c)(1) & (2).

Included among the conditions is a 14-item checklist that requires a BOC to

offer other carriers access to and interconnection with the BOC's network

including each of the following:

> (i) Interconnection in accordance with the requirements of sections 251(c)(2) and 252(d)(1) of this title.

> (ii) Nondiscriminatory access to network elements in accordance with the requirements of sections 251(c)(3) and 252(d)(1) of this title.

> (iii) Nondiscriminatory access to the poles, ducts, conduits, and rights-of-way owned or controlled by the Bell operating company at just and reasonable rates in accordance with the requirements of section 224 of this title.

> (iv) *Local loop transmission from the central office to the customer's premises, unbundled from local switching or other services.*

> (v) Local transport from the trunk side of a wireline local exchange carrier switch unbundled from switching or other services.

> (vi) Local switching unbundled from transport, local loop

transmission, or other services.

(vii) Nondiscriminatory access to--

    (I) 911 and E911 services;

    (II) directory assistance services to allow the other carrier's customers to obtain telephone numbers; and

    (III) operator call completion services.

(viii) White pages directory listings for customers of the other carrier's telephone exchange service.

(ix) Until the date by which telecommunications numbering administration guidelines, plan, or rules are established, nondiscriminatory access to telephone numbers for assignment to the other carrier's telephone exchange service customers. After that date, compliance with such guidelines, plan, or rules.

(x) Nondiscriminatory access to databases and associated signaling necessary for call routing and completion.

(xi) Until the date by which the Commission issues regulations pursuant to section 251 of this title to require number portability, interim telecommunications number portability through remote call forwarding, direct inward dialing trunks, or other comparable arrangements, with as little impairment of functioning, quality, reliability, and convenience as possible. After that date, full compliance with such regulations.

(xii) Nondiscriminatory access to such services or information as are necessary to allow the requesting carrier to implement local dialing parity in accordance with the requirements of section 251(b)(3) of this title.

(xiii) Reciprocal compensation arrangements in accordance with the

Case 2:06-cv-00577-WKW-TFM    Document 25-6    Filed 09/22/2006    Page 15 of 25
Case 4:06-cv-00072-RH-WCS    Document 64    Filed 09/12/2006    Page 14 of 23

*Page 14 of 23*

requirements of section 252(d)(2) of this title.

(xiv) Telecommunications services are available for resale in accordance with the requirements of sections 251(c)(4) and 252(d)(3) of this title.

47 U.S.C. §271(c)(2)(B) (emphasis added).

The issue in the case at bar is whether checklist item 4—"[l]ocal loop transmission from the central office to the customer's premises, unbundled from local switching or other services"—requires a BOC not only to make available to a competitor any entire local loop, but also to make separately available the high frequency portion of the loop, unbundled from the remainder of the loop.

For three reasons, I conclude that the answer is no.

First, the plain language of this provision supports this conclusion. By making available an entire local loop, a BOC provides local loop transmission from the central office to the customer's premises. On its face, that is all the statute requires. To be sure, the statute does speak to unbundling—but only unbundling of the local loop from local switching or other services. Nothing on the face of the statute suggests a BOC must unbundle the different portions of the local loop from one another.

Second, the overriding purpose of §271 supports this conclusion. That overriding purpose is to prevent BOCs from improperly leveraging their monopolies in the local market into the interLATA market. That purpose is what

led to the original prohibition on BOCs entering the interLATA market at the time of their original divestiture from AT&T. It explains the 1996 Act's separate treatment of interLATA services originating *outside* a BOC's area (where a BOC has no monopoly to leverage) and interLATA service originating *within* a BOC's area (where a BOC historically had a monopoly). And it explains the 1996 Act's decision to allow a BOC to enter the market for interLATA services originating within its area if and only if it meets a long list of conditions—all focused on ensuring that the *local* market has been opened to competition.

Allowing competitors unbundled access to the high frequency portion of a loop may or may not be good telecommunications policy and may or may not promote competition in the market for high speed access to the internet and other data transmissions (that is, the "broadband" market). Competition in the broadband market is an important issue that the FCC appropriately may address in a variety of ways, including when deciding which network elements an incumbent local exchange carrier must make available to competitors under §251. But whether competitors are afforded unbundled access to the high frequency portion of a local loop has very little to do with whether the *local* market is or is not open to competition as required prior to entry of a BOC into the market for interLATA services originating in its own area. Whether competitors are afforded unbundled access to the high frequency portion of a local loop has very little to do with

whether a BOC can misuse its position in the local market to restrict competition in

the market for *interLATA services.* In light of the overriding statutory purpose

embodied in §271 and the checklist, the most appropriate construction of checklist

item 4 is that it requires a BOC to allow access to an entire local loop, without any

additional requirement to provide unbundled access to the high frequency portion

of the loop.

Third, even if one assumes that the FCC would be free to interpret checklist

item 4 as requiring unbundled access to the high frequency portion of the loop, it is

by no means clear that the FCC ever made a considered decision so to interpret

checklist item 4, and even less clear that the FCC so interprets it now.[9]

The FCC first required such unbundled access or "line sharing" in 1999,

when the FCC issued its "Line Sharing Order."[10] That order imposed the line

sharing obligation not just on BOCs but on all incumbent local exchange carriers.

---

[9] One reasonably could argue both sides of the question whether the FCC could, if it chose, properly construe checklist item 4 to require unbundled access to the high frequency portion of the loop. *Compare* 47 U.S.C. §271(d)(4) (prohibiting the FCC from limiting or extending the terms in the checklist) with *Chevron U.S.A., Inc. v. Natural Resources Defense Counsel*, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984) (requiring deference to an agency's reasonable interpretation of a statute it is charged with administering).

[10] Third Report and Order in CC Docket No. 98-147 and Fourth Report and Order in CC Docket No. 96-98, *In re Deployment of Wireline Services Offering Advanced Telecommunications Capability and Implementation of the Local Competition Provisions of the Telecommunications Act of 1996*, 14 FCC Rcd 20912 (1999), *vacated and remanded, United States Telecom Ass'n v. FCC*, 290 F.3d 415 (D.C. Cir. 2002).

Case 2:06-cv-00577-WKW-TFM    Document 25-6    Filed 09/22/2006    Page 18 of 25
Case 4:06-cv-00072-RH-WCS    Document 64    Filed 09/12/2006    Page 17 of 23

Page 17 of 23

The authority for doing so was 47 U.S.C. §251(c)(3); the FCC determined that the high frequency portion of the loop was a network element to which incumbents were required to provide access under that section. The FCC's Line Sharing Order was vacated on review in the District of Columbia Circuit.[11] On remand, the FCC determined that the high frequency portion of a local loop is *not* a network element that incumbent local exchange carriers must make available to competitors under §251(c)(3).[12]

The FCC never required a BOC to provide line sharing prior to the effective date of the Line Sharing Order. The FCC has never explicitly required a BOC to provide line sharing since the Line Sharing Order was vacated. There is thus no explicit indication of whether the FCC does or does not regard line sharing as an independent obligation under §271, separate and apart from any line sharing obligation under §251(c)(3). Both sides do, however, cite FCC orders as support for their respective positions.

Under §271 checklist item 2, a BOC must provide nondiscriminatory access to network elements "in accordance with the requirements of sections 251(c)(3)." The FCC's determination that line sharing was a §251(c)(3) requirement

---

[11] *United States Telecom Ass'n v. FCC*, 290 F.3d 415 (D.C. Cir. 2002).

[12] *See* Report and Order and Order on Remand and Further Notice of Proposed Rulemaking, *In re Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers*, 18 FCC Rcd 16978 (2003), *aff'd in relevant part*, *United States Telecom Ass'n v. FCC*, 359 F.3d 554 (D.C. Cir. 2004).

(applicable to all incumbents, not just BOCs) thus also meant line sharing was a

§271 requirement (applicable to BOCs providing interLATA services originating

in their own areas). While the Line Sharing Order was in effect, the FCC

sometimes referred to line sharing as a requirement not just under §251(c)(3) and

§271 checklist item 2, but also under checklist item 4.[13] Checklist item 4 is an

independent §271 obligation not dependent on anything in §251.[14] Covad says the

FCC's description of line sharing as a checklist item 4 requirement thus shows that

the FCC regarded line sharing as an independent obligation under §271. But the

references to checklist item 4 never made a difference, and they thus provide little

support for the assertion that the FCC made a considered decision that BOCs that

provide interLATA services originating in their own areas should be required to

provide line sharing as an independent obligation under §271 and checklist item 4,

---

[13] *See, e.g.,* Memorandum Opinion and Order, *In re Application of Verizon New England Inc., et al., for Authorization To Provide In-Region, InterLATA Services in Massachusetts,* 16 FCC Rcd 8988, 9079, ¶163 (2001).

[14] This is undisputed. Covad sets up and then knocks down a straw man, saying the Florida Commission misunderstood this principle and incorrectly concluded that when a network element is removed from the list of elements an incumbent must make available under §251, this automatically means the element need not be made available by a BOC under §271. But the Florida Commission expressed no such view. It plainly is correct, as Covad emphasizes, that a network element that an incumbent need no longer make available under §251 may still be required under §271. But it is equally true that an element that has been included and then removed from the list of required elements under §251 might *not* be an independent §271 element. That an element is included and then removed from the list of §251 elements simply does not resolve one way or the other the issue of whether the element is independently required under §271.

Case 2:06-cv-00577-WKW-TFM    Document 25-6    Filed 09/22/2006    Page 20 of 25
Case 4:06-cv-00072-RH-WCS    Document 64    Filed 09/12/2006    Page 19 of 23

*Page 19 of 23*

separate and apart from any obligation of all incumbents to provide line sharing under §251.

For its part, BellSouth asserts the FCC actually held, without explicitly saying, that line sharing is *not* a §271 requirement. In orders granting BOC applications for authority to provide interLATA services originating in New York and Texas, respectively, the FCC required BOCs to allow line sharing but deferred implementation of the obligation until the effective date of the Line Sharing Order.[15] The 1996 Act does not itself indicate whether any given network element must be made available to competitors under §251(c)(3); instead, the Act requires the FCC to make that determination. *See* 47 U.S.C. §251(d)(2). The requirement to make line sharing available under §251(c)(3) thus arose only when the FCC said it did. Any independent obligation to make line sharing available under §271, on the other hand, would have existed from the effective date of the Act itself. The FCC's decision to delay line sharing in New York and Texas until the effective date of the Line Sharing Order thus is some indication, albeit weak, that the FCC

---

[15] *See* Memorandum Opinion and Order, *In re Application by Bell Atlantic New York for Authorization Under Section 271 of the Communications Act To Provide In-Region InterLATA Service in the State of New York*, 15 FCC Rcd 3953, 3967, ¶31 n.70 (1999), *aff'd, AT&T Corp. v. FCC*, 220 F.3d 607 (D.C. Cir. 2000); Memorandum Opinion and Order, *In re Application by SBC Communications Inc., et al., Pursuant to Section 271 of the Telecommunications Act of 1996 To Provide In-Region InterLATA Services in Texas*, 15 FCC Rcd 18354, 18367-68, ¶28, 18370, ¶33, 18514, ¶321 (2000).

Case 2:06-cv-00577-WKW-TFM    Document 25-6    Filed 09/22/2006    Page 21 of 25
Case 4:06-cv-00072-RH-WCS    Document 64    Filed 09/12/2006    Page 19 of 23

*Page 19 of 23*

separate and apart from any obligation of all incumbents to provide line sharing under §251.

For its part, BellSouth asserts the FCC actually held, without explicitly saying, that line sharing is *not* a §271 requirement. In orders granting BOC applications for authority to provide interLATA services originating in New York and Texas, respectively, the FCC required BOCs to allow line sharing but deferred implementation of the obligation until the effective date of the Line Sharing Order.[15] The 1996 Act does not itself indicate whether any given network element must be made available to competitors under §251(c)(3); instead, the Act requires the FCC to make that determination. *See* 47 U.S.C. §251(d)(2). The requirement to make line sharing available under §251(c)(3) thus arose only when the FCC said it did. Any independent obligation to make line sharing available under §271, on the other hand, would have existed from the effective date of the Act itself. The FCC's decision to delay line sharing in New York and Texas until the effective date of the Line Sharing Order thus is some indication, albeit weak, that the FCC

---

[15] *See* Memorandum Opinion and Order, *In re Application by Bell Atlantic New York for Authorization Under Section 271 of the Communications Act To Provide In-Region InterLATA Service in the State of New York*, 15 FCC Rcd 3953, 3967, ¶31 n.70 (1999), *aff'd, AT&T Corp. v. FCC*, 220 F.3d 607 (D.C. Cir. 2000); Memorandum Opinion and Order, *In re Application by SBC Communications Inc., et al., Pursuant to Section 271 of the Telecommunications Act of 1996 To Provide In-Region InterLATA Services in Texas*, 15 FCC Rcd 18354, 18367-68, ¶28, 18370, ¶33, 18514, ¶321 (2000).

Case 2:06-cv-00577-WKW-TFM   Document 25-6   Filed 09/22/2006   Page 22 of 25
Case 4:06-cv-00072-RH-WCS   Document 64   Filed 09/12/2006   Page 20 of 23

*Page 20 of 23*

did not view line sharing as an independent §271 obligation. Still, DSL was still an emerging issue in 1999, and the FCC often exercises its discretion to phase in new decisions. The FCC never explicitly said the New York and Texas decisions were based on any view that line sharing was not an independent §271 requirement.

BellSouth also cites the FCC's statement, in another order granting a BOC application for authority to provide interLATA services, that line sharing is required under §251(c)(3) "and, *thus*, checklist items 2 and 4 of section 271."[16] This, BellSouth says, is a recognition by the FCC that line sharing was required under §271 only because it was required under §251(c)(3). But like the references to line sharing as a checklist item 4 requirement on which Covad relies, this is language not addressing any dispute on this issue. There is little reason to believe this language gives any real indication of the FCC's view on this.

These authorities thus do not establish one way or the other whether the FCC ever viewed line sharing as an independent §271 requirement separate and apart from any obligation under §251(c)(3). A more recent FCC decision provides strong support for the conclusion that the FCC does *not* now view line sharing as an independent §271 requirement, if indeed it ever did. The FCC now has said, in

---

[16] Memorandum Opinion and Order, *In re Application of Verizon New England Inc. et al. for Authorization To Provide In-Region, InterLATA Services in Massachusetts*, 16 FCC Rcd 8988, 9079, ¶163 (2001) (emphasis added).

Case 2:06-cv-00577-WKW-TFM    Document 25-6    Filed 09/22/2006    Page 23 of 25
Case 4:06-cv-00072-RH-WCS    Document 64    Filed 09/12/2006    Page 21 of 23

*Page 21 of 23*

no uncertain terms, that line sharing is not a §251(c)(3) requirement.  *See* Report and Order and Order on Remand and Further Notice of Proposed Rulemaking, *In re Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carries*, 18 FCC Rcd 16978 (2003), *aff'd in relevant part*, *United States Telecom Ass'n v. FCC*, 359 F.3d 554 (D.C. Cir. 2004).  The FCC reached this result based on its strongly expressed determination that requiring line sharing in today's market would be anticompetitive, *see* Report and Order, ¶¶ 258-63, and "would run counter to the statute's express goal of encouraging competition and innovation in all telecommunications markets."  Report and Order, ¶ 261.[17]  The FCC phased in its decision, so that ongoing business would not be disrupted, but the FCC made clear that line sharing was to end.  *See, e.g.*, Report and Order, ¶266 ("It is entirely appropriate to fashion a transition period of sufficient length to enable competitive [local exchange carriers] to move their customers to alternative arrangements and modify their business practices and operations going forward.").  The FCC decision on this did not explicitly address the BOCs or §271, but the entire discussion plainly contemplated the decision's application to the BOCs (who have the lion's share of the local markets); if intended to address only the much

---

[17] The FCC reached this conclusion in part by emphasizing the availability of line *splitting*, that is, the ability of a DSL provider (like Covad) to partner with a competitive local exchange carrier, to acquire from an incumbent (like BellSouth) an entire local loop, and to split the line so that the competitive local exchange carrier and DSL provider serve the same customer.

smaller portion of the market comprised of others, the FCC's analysis was woefully incomplete to the point of being nonsensical.[18]  One cannot read this Report and Order and still have any doubt about the FCC's current disapproval of any line sharing requirement, including for BOCs who provide interLATA services originating in their own areas.[19]

---

[18] Moreover, the FCC explicitly reinstated certain rules relating to the high frequency portion of the loop.  See Report and Order, ¶268.  The FCC said it was doing so "[i]n order to implement the line sharing transition plan."  *Id.*  Had the FCC intended the BOCs to remain subject to line sharing under §271 checklist item 4, the FCC presumably would have said not that it was reinstating the rules to implement the transition plan, but that it was reinstating the rules because the overwhelming majority of the market would remain subject to the line sharing requirement forever.

[19] Another FCC decision cited by BellSouth is less compelling.  *See* Memorandum Opinion and Order, *Petition for Forbearance of the Verizon Telephone Companies Pursuant to 47 U.S.C. §160(c)*, 19 FCC Rcd 21496 (2004). There the FCC addressed petitions of BellSouth and other BOCs for forbearance from §271 requirements with respect to broadband services.  Although BellSouth's petition referred generally to broadband, a term that in common understanding includes DSL services provided over the high frequency portion of a copper local loop, the FCC's decision explicitly referred only to fiber and specific services available through fiber.  The FCC's analysis emphasized the importance of encouraging BOCs to invest in fiber—a goal unrelated to line sharing.  BellSouth says the FCC decision nonetheless should be read to encompass DSL services provided over copper wire (that is, line sharing), not just fiber.  BellSouth also says its petition was explicitly granted in full and should be deemed granted in full anyway (because petitions on which the FCC does not render a timely decision are deemed granted by default).  BellSouth's reliance on this order is perhaps a stretch; neither BellSouth in its petition, nor the FCC in its order, brought the line sharing issue into the open.  Two commissioners wrote separately and noted in passing their conflicting opinions on whether the order did or did not extend to line sharing.  The bottom line:  this forbearance decision gives little explicit guidance on the line sharing issue.

*Page 23 of 23*

In sum, based on the language of §271 checklist item 4, its purpose, and the absence of any basis for concluding the FCC construes the item differently, I conclude that line sharing is not a §271 checklist item 4 requirement.[20]

## VI
## Conclusion

The Florida Public Service Commission correctly concluded that it lacks authority to enforce 47 U.S.C. §271 and that, in any event, §271 does not require BellSouth to provide Covad unbundled access to the high frequency portion of the local loop. Accordingly,

IT IS ORDERED:

The decision of the Florida Public Service Commission is affirmed. The clerk shall enter judgment accordingly and close the file.

SO ORDERED this 12th day of September, 2006.

s/Robert L. Hinkle
Chief United States District Judge

---

[20] In reaching this decision, I have not overlooked *Verizon New England Inc. v. Maine Public Utilities Commission*, 2006 WL 2007655 (D. Me. July 18, 2006), which reaches the opposite result. For the reasons set forth in text, I respectfully disagree with that decision.

Case No: 4:06cv72-RH/WCS