# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| MOMENTUM TELECOM, INC., ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **ALABAMA PUBLIC SERVICE** ) | |
| **COMMISSION,** ) | |
| ) | |
| **JIM SULLIVAN, in his capacity as a President** ) | |
| **of the Alabama Public Service Commission,** ) | **Civil Action No. 2:06-cv-00577-WKW** |
| ) | |
| **JAN COOK, in her capacity as a** ) | |
| **Commissioner of the Alabama Public Service** ) | |
| **Commission, and** ) | |
| ) | |
| **GEORGE C. WALLACE, JR., in his capacity** ) | |
| **as a Commissioner of the Alabama Public** ) | |
| **Service Commission** ) | |
| ) | |
|     **Defendants** ) | |

---

## BRIEF IN OPPOSITION OF COMPLAINT FOR DECLARATORY JUDGMENT

---

Pursuant to the Scheduling Order entered by the Court on September 15, 2006, Defendants, Alabama Public Service Commission, Jim Sullivan (in his capacity as President of the Alabama Public Service Commission) and Jan Cook and George C. Wallace, Jr. (in their capacities as Commissioners of the Alabama Public Service Commission) (collectively the "APSC"), submit this brief in opposition to the Complaint for Declaratory Judgment sought in this cause by Momentum Telecom, Inc. ("Momentum").

## I.    INTRODUCTION

Pursuant to the provisions of §271 of the Federal Telecommunications Act of 1996 (the "Telecom Act of 1996" or the "96 Act"), 47 U.S.C. §271, Bell Operating Companies ("BOCs") such as BellSouth Telecommunications, Inc. ("BellSouth") are required to provide access and/or interconnection to portions, or elements, of their incumbent local exchange telephone networks to competing carriers such as the Plaintiff Momentum.  The Telecom Act of 1996, other federal statutes, and orders of the Federal Communications Commission (the "FCC") implementing those statutes require that the charges assessed by BOCs such as BellSouth to Momentum and other competing carriers for access to those §271 network elements must be "just and reasonable."

The APSC has broad general authority under state law to regulate local telephone companies such as BellSouth and Momentum.  BellSouth provides local exchange telephone service in Alabama subject to a certificate of public convenience and necessity issued by the APSC.  Similarly, Momentum provides telecommunications services in Alabama as a competitive local exchange carrier ("CLEC") pursuant to a certificate of public convenience and necessity issued by the APSC.

The Complaint for Declaratory Judgment filed by Momentum in this cause generally seeks a determination as to whether the APSC has jurisdiction under state and federal law to set rates for §271 network elements and may require BellSouth to include §271 network elements in its interconnection agreements.  *Momentum Complaint* at p. 14.

As explained in the Answer of the APSC, the APSC has rendered a determination that it may not require incumbent local exchange carriers such as BellSouth to include

§271 network elements in interconnection agreements submitted to the APSC for approval pursuant to the provisions of §252 of the Telecom Act of 1996. *APSC Answer* at ¶60, p. 14. The APSC's Answer also reflects, however, that the APSC has not rendered a determination as to whether it may set rates for §271 elements pursuant to state law. *Id.*

As further noted in its Answer, the APSC has represented that it will defer to the wisdom of the Court with respect to the issue of whether the APSC, acting pursuant to its powers under Alabama state law and the Telecom Act 1996, may set rates for 47 U.S.C. §271 network elements. *Id.* at ¶60, p. 14 and p. 15. It should be noted, however, that it has never been the intention of the APSC in this proceeding to voluntarily submit to the jurisdiction of the Court with respect to a determination regarding the state law authority of the APSC to establish rates for §271 elements. The APSC has merely agreed to defer to the wisdom of the Court with regard to a determination as to whether federal law affords the APSC the authority to establish rates for §271 elements in the event the APSC later determines that it has the authority to establish such rates consistent with state law.

## II.     THE STATUTORY AND REGULATORY FRAMEWORK

As previously indicated herein, the dispute in this cause involves the interpretation and application of certain provisions of the Telecom Act of 1996. In order to fully comprehend the 96 Act and the Congressional intent underlying its implementation, however, it is helpful to understand fully the circumstances of the telecommunications industry that predated the 96 Act and ultimately led to its passage.

From its infancy to the early 1980's, local and interexchange telephone services in this country were viewed as monopolistic in nature. The primary provider of telephone service throughout the United States up until the early 80's was the American

Telephone & Telegraph Company ("AT&T") and its subsidiaries which included the various regional Bell Operating Companies ("RBOCs" or "BOCs"). As other telecommunications carriers attempted to enter the interexchange market, there was increasing pressure to break up the monopoly position of AT&T. A settlement agreement between the U. S. Department of Justice and AT&T known as the Modified Final Judgment (the "MFJ") was ultimately entered in resolution of the antitrust issues raised. *United States v. American Tel. & Tel. Co.*, 552 F. Supp. 131(D.D.C. 1982), *aff'd sub nom. Maryland v. United States*, 460 U.S. 1001, 103 S.Ct. 1240, 75 L. Ed.2d 472 (1983). Pursuant to the MFJ, AT&T was required to divest itself of the regional BOCs that primarily provided local telephone service.

The terms of the MFJ allowed the BOCs to provide service within defined local access and transport areas ("LATAs"), but prohibited the BOCs from providing InterLATA service absent the satisfaction of established criteria as overseen and administered by the federal court. The logic was that until the criteria established for the provision of long distance services were met, BOCs would remain primarily local exchange carriers thus eliminating the incentive to use their local bottleneck to restrict competition in the interexchange market.

In the face of increasing pressure for additional competition in the local telecommunications markets, Congress enacted the Telecom Act of 1996. As a means of providing incentive for the RBOCs to open their local markets more readily to increased competition, Congress established provisions in §271 of the 96 Act that authorized RBOCs to provide in-region, InterLATA services upon demonstrating to the satisfaction

of the FCC that they had met the parameters established for gaining such authority as established by §271.

In addition to the provisions of §271, the 96 Act also imposed general interconnection obligations on incumbent local exchange carriers ("ILECs") including the BOCs. Less stringent interconnection obligations were also imposed on all providers of local exchange telecommunications services including local exchange carriers who are not incumbents. *See* 47 U.S.C. §251(a) and (b). The foregoing obligations were imposed to facilitate the entry of competing carriers into the market for local telephone service and generally required incumbent carriers to provide interconnection and other wholesale services to competing carriers on a nondiscriminatory basis. As will be discussed in more detail below, the provisions of §§251 and 252 of the 96 Act also established the process for reaching the "interconnection agreements" through which competing carriers interconnect their facilities with the networks, facilities, and services of ILECs.

Among the §251 duties that ILECs must comply with is the obligation to lease certain parts of their networks to competitors at regulated rates. *See* 47 U.S.C. §251(c)(3) Before network facilities are required to be made available pursuant to §251(c)(3), however, the FCC is charged with rendering a determination as to which network elements must be accessible to competitors. In making that determination, the FCC must assess whether access to the network elements in question is "necessary" and whether a competitor will be "impaired" in their ability to provide competitive services if access those elements is not provided to them. *See* 47 U.S.C. §251(d)(2). Facilities that the FCC has required to be made available following its necessary/impairment analysis are

known in the telecommunications industry as "unbundled network elements" (or "UNEs").

As noted previously, the duties and requirements of §251 are implemented through "interconnection agreements" between ILECs and CLECs. *See* 47 U.S.C. §252. The 96 Act requires ILECs and CLECs to negotiate in good faith the terms and conditions of such agreements. *See* 47 U.S.C. §251(c)(1). If negotiations are unsuccessful, either party may petition the appropriate state public utility commission to arbitrate "any open issues" the parties have been unable to resolve through their negotiations. *See* 47 U.S.C. §252(b). In deciding such "open issues," state commissions are required to adhere to the requirements of the 96 Act and the FCC's implementing regulations with respect to §251. *See* 47 U.S.C. §252(c).

As also noted previously, §271 of the 96 Act imposes a separate set of affirmative duties on BOCs that were divested from AT&T as part of the implementation of the MFJ. §271 also sets out the factors the FCC must evaluate in deciding whether the application of an BOC to enter the in-region InterLATA market is due to be granted. The objective of the established criteria is to ensure that each BOC applying for in-region InterLATA authority has sufficiently opened its local market to competitors before that carrier was allowed to enter the in-region InterLATA long distance market.

Among the §271 obligations are 14 competitive "checklist" items that BOCs must provide to CLECs in order to ensure that the market for local services is irreversibly opened to competition. *See* 47 U.S.C. §271(c)(2)(B). BOCs must continue to provide competitive carriers with access to certain of their network elements that are required to be made available pursuant to the 14-point checklist of §271 even though they may no

longer be required to provide those elements to competitors pursuant to the provisions of §251. Indeed, §271 creates an obligation for BOCs to make network elements available to competitors which is independent of the RBOCs' obligations under §251.

A key difference between the unbundling obligations of §251 and the checklist obligations of §271 is the price that CLECs must pay for network elements. Under §271, network elements are to be provided at "just and reasonable" rates rather than the lower cost-based rates required by the provisions of §251(c)(2)(D) and §252(d)(1).

As is evidenced by the foregoing discussion, the role of state commissions with respect to the implementation of the provisions of the 96 Act is primarily tied to §§251 and 252 thereof. The only noted role of state commissions pursuant to the provisions of §271 are set forth in §271(D) which requires the FCC to "consult" with state commissions to verify a BOCs' compliance with the §271(c) competitive checklist items.

## III.     THE UNDISPUTED FACTS IN THE PRESENT CASE

The APSC established proceedings in Docket 29543, *In Re:  Petition Regarding the Establishment of a Generic Proceeding on Change of Law and Nondiscriminatory Pricing for UNEs*, as the result of a Joint Petition filed by Momentum and ITC^DeltaCom Communications, Inc. ("ITC^DeltaCom") on September 29, 2004, and a separate petition filed by BellSouth on November 2, 2004.  In general, Momentum, ITC^DeltaCom, and BellSouth sought the establishment of said proceeding for purposes of clarifying issues related to the legal and regulatory changes that resulted from the FCC's issuance of the *Triennial Review Order*;[1]  the decision of the U.S. Court of

---

[1] Report and Order on Remand and Further Notice of Proposed Rulemaking, *Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers*, 18 FCC Rcd. 16978 (2003) ("*Triennial Review Order*" or "*TRO*")

Appeals for the D.C. Circuit in *United States Telecom Ass'n v. FCC* ("*USTA II*");[2] and the

FCC's *Triennial Review Remand Order*[3] entered in response to the *USTA II* decision.

On October 6, 2005, the APSC conducted a hearing on all open issues in Docket

29543. Among the matters in dispute as jointly framed by the parties was Issue 8:

> Does the Commission have the authority to require
> BellSouth to include in its interconnection agreements
> entered into pursuant to §252, network elements under
> either state law, or pursuant to §271 or any other federal
> law other than §271?

After considering all evidence of record including posthearing briefs submitted by

the parties to the proceedings in Docket 29543, the APSC unanimously approved at its

regularly scheduled meeting of March 7, 2006, recommendations from its staff regarding

all pending issues in Docket 29543, including Issue No. 8. On April 20, 2006, the APSC

issued an order formalizing its actions of March 7, 2006 which was entitled the Final

Order Resolving Disputed Issues (the "Final Order"). *See* Exhibit 3 to the *Complaint of*

*Momentum.*

With respect to Issue No. 8, the Commission concluded in the Final Order that

"[g]iven the fact that the Commission's sole authority to review interconnection

agreements is derived from §252 and the interplay between §§251 and 252, it does not

appear that the Commission has the requisite jurisdiction to compel the inclusion of the

§271 elements in dispute in this proceeding in interconnection agreements that are

submitted to the Commission for its review pursuant to §252. Further, there appears to

---

[2] *United States Telecom Ass'n v. FCC*, 359 F.3d 554 (D.C. Cir. 2004) *cert. denied, NARUC v. United States Telecom Ass'n*, 543 U.S. 925 (2004).
[3] Order on Remand, *Unbundled Access to Network Elements; Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers*, WC Docket No. 04-313, CC Docket No. 01-338, FCC 04-290 (FCC rel. Feb. 4, 2005) (*"Triennial Review Remand Order"* or *"TRRO"*)

be no express or implied obligation on the part of BellSouth to negotiate the terms and conditions regarding §271 elements." *Id.* at pp. 4-5.

On March 7, 2006, Momentum filed with the APSC an Emergency Petition for Reconsideration of the APSC's determinations in its Final Order regarding Issues 8 and 14. *See* Exhibit 4 to the *Complaint of Momentum.* Momentum asserted in its Emergency Petition for Reconsideration that the APSC's final determinations regarding Issues 8 and 14 were contrary to existing federal court decisions as well as decisions of the state commissions of Georgia and Tennessee. Momentum further asserted that, if the APSC's final determinations were allowed to stand, Momentum would be required to shut down its operations and leave its 15,000 Alabama subscribers without a competitive alternative for telephone service.

On May 2, 2006, the APSC entered an order holding Momentum's Emergency Petition for Reconsideration in abeyance. *See* Exhibit 5 to the *Complaint of Momentum* The APSC's decision in that regard was predicated on the fact that "[t]he core issues raised by Momentum are currently before the federal district court in Georgia. A ruling on Momentum's Petition will thus be deferred until there is guidance from the federal court in question." *Id.* at p. 2.

### IV.    STATEMENT OF JURISDICTION

The APSC does not dispute that Momentum properly brought this action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§2201-2202, and 28 U.S.C. §1331 which authorizes federal courts to interpret the Constitution, law or treaties of the United States. The provisions of the Federal Telecommunications Act of 1996 in dispute in this proceeding clearly fall within the coverage of 28 U.S.C. §1331.

The APSC also does not dispute that this Court has subject matter jurisdiction over this matter pursuant to the Supremacy Clause of the United States Constitution and 28 U.S.C. §1343(a)(3). Further, Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

As will be discussed further herein, however, the APSC does not voluntarily submit to the jurisdiction of this Court with regard to a determination of the state law authority of the APSC to establish §271 network element rates and does not believe that a determination on that issue is ripe for a decision by this Court even if it is otherwise determined that jurisdiction to render that determination exists.

## V.     SUMMARY OF THE ARGUMENTS OF THE APSC

In this Brief, the APSC presents three main arguments in opposition to the positions asserted by the Plaintiff Momentum in its Complaint and initial brief in this matter. First, the APSC asserts that given the undisputed fact that the APSC has not rendered a conclusive determination regarding its state law authority to establish §271 element rates, that issue is not ripe for a determination by this Court. Indeed, Article III of the United States Constitution limits the jurisdiction of federal courts to "actual cases and controversies." Given Momentum's numerous references in its initial brief to the fact that the APSC has not ruled on the "state law/preemption question," there is simply no binding, conclusive administrative decision regarding the state law authority of the APSC to establish §271 network element rates about which a controversy exists. *Momentum Initial Brief* at pp. 3, 17. It would accordingly appear inappropriate for this Court to render a determination which could impede further administrative action by the APSC regarding the issue of its state law authority to establish rates for §271 elements.

The APSC secondly argues that a ruling by the Court concerning the APSC's broad, general authority under state law to regulate the rates of local telephone companies as requested by Momentum would violate the Eleventh Amendment to the United States Constitution by intruding on the state sovereignty of the APSC. *Momentum Initial Brief* at p. 2. Although the APSC has noted its willingness to defer to the wisdom of the Court with respect to the authority of the APSC to establish §271 rates pursuant to federal law, the APSC has not voluntarily subjected itself to a determination from this Court regarding the agency's rights, duties and obligations to establish §271 network element rates pursuant to state law. It therefore follows that any claims for relief by Momentum regarding the state law authority of the APSC with respect to the establishment of §271 network element rates should not go forward.

The APSC lastly argues that there is no express or implied arbitration or ratemaking authority over §271 network elements granted to states by the Telecom Act of 1996 and that the determination by the APSC that it cannot require the inclusion of §271 network elements in interconnection agreements submitted to the APSC for review pursuant to §252 of the 96 Act is therefore correct. As will be discussed in more detail later in this brief, the Telecom Act of 1996 mandated a substantial shift in the regulation and oversight of specifically delineated local telecommunications competition matters from state regulators to federal regulators. The provisions of the 96 Act clearly set forth the functions of state regulators regarding the matters specifically addressed therein and concentrate the remainder of the authority regarding such matters in the hands of federal regulators.

The very text of the 96 Act makes clear that when Congress intended for states to have a role in the implementation and/or enforcement of any provision thereof, specific language granting and defining a state's authority was included. The absence of any reference to state authority in a particular provision of the 96 Act therefore indicates a rather clear intention that Congress did not retain or establish state jurisdiction over the matters addressed in such provisions.

The express provisions of §271 drive the foregoing point home. Indeed, the 96 Act leaves entirely to the FCC the authority to deny or approve BOC applications for in-region interLATA authority pursuant to §271. States were merely assigned a "consultative" role with the FCC for purposes of verifying a BOC's compliance with the applicable terms and conditions of §271 in the state in question. The ultimate authority of the FCC with regard to §271 is further highlighted by the fact that the 96 Act exclusively establishes the FCC as the exclusive enforcement authority with respect to a BOC's continuing compliance with the provisions of §271.

As discussed previously, the exclusive grant of authority to the FCC for purposes of implementing and enforcing the provisions of §271 of the Act is most consistent with the Congressional mandate to shift the primary regulation of the local telecommunications competition from state to federal control. Further, the Act's §271 provisions have generally been recognized as an extension of the requirements imposed by the Modified Final Judgment ("MFJ") which divested AT&T Corporation into the regional BOCs and imposed restrictions on their provision of long distance services. Just as the MFJ's restrictions were federal in nature, so are the provisions of §271.

The foregoing discussion leads to the conclusion that states cannot expand their clearly defined consultative role pursuant to §271 into authority to establish substantive duties with respect to §271 including the establishment of rates for §271 network elements.   Furthermore, federal courts have conclusively determined that the §271 elements for which Momentum seeks just and reasonable pricing do not incorporate directly or indirectly the provisions imposed by §§251 and 252.   Given the fact that the sole authority of states to review interconnection agreements entered pursuant to the Telecom Act of 1996 is derived from §252 of the Act and the interplay between §251 and 252, the APSC has held that it does not have the requisite jurisdiction to compel the inclusion of the §271 elements sought by Momentum in interconnection agreements that are submitted to the Commission for its review pursuant to §252.   The APSC has also conclusively determined that there appears to be no express or implied obligation on the part of BellSouth to negotiate the terms and conditions for §271 network elements for inclusion in interconnection agreements that must be submitted to the APSC for review pursuant to §§251 and 252 of the Telecom Act of 1996.   The APSC asserts that its determinations in this regard are correct.

## VI.    THE ARGUMENTS OF THE APSC

A.    <u>Given the undisputed fact that the APSC has not rendered a conclusive determination regarding its state law authority to establish §271 network element rates, that issue is not ripe for a determination by this Court.</u>

There is no disagreement among the parties to this cause that the APSC has not rendered a determination regarding its state law authority to establish rates for §271 network elements.   Given the fact that the jurisdiction of federal courts is limited by Article III of the United States Constitution to "actual cases and controversies," there

must be a threshold determination as to whether Momentum's apparent attempt to have the Court rule on the state law jurisdiction of the APSC to establish rates for §271 elements is ripe for review. *Konikov v. Orange County*, 410 F.3d 1317, 1322 (11th Cir. 2005).

In reaching a determination as to whether a matter is ripe for judicial review, courts must examine both the fitness of the issue for judicial decision and the hardship on the parties if the court withholds consideration. *Abbott Lab. v. Gardner*, 387 U.S. 136, 149 (1967). Courts must further determine "whether judicial intervention would inappropriately interfere with further administrative action." *Beaulieu v. City of Alabaster*, 454 F.3d 1219, 1227 (11th Cir. 2006) (quoting *Ohio Forestry Association, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998)).

Based on the foregoing, the APSC asserts that because it has not ruled on the issue of whether the APSC may review and/or establish BellSouth's rates for §271 network elements under state law, there is no binding, conclusive administrative determination by the APSC about which a tangible controversy exists. *Digital Props. v. City of Plantation*, 121 F.3d 586, 590 (11th Cir. 1997). The APSC therefore maintains that the Court does not have the requisite authority to act on the state law issue as framed by Momentum.

The APSC further maintains that since Momentum has chosen not to pursue a ruling by the APSC on its state law authority to establish rates for §271 elements, there is obviously no hardship to Momentum that will result from this Court's postponement of a decision on the state law question now posed by Momentum. Further, the circumstances of the present case do not present a situation where the APSC has threatened legal action

against Momentum such that Momentum would suffer undue hardship without a ruling on the state law question. *Beaulieu*, 454 F.3d at 1231 (finding that a plaintiff would suffer hardship without a ruling because the city had already sent her a notice of violation of a sign ordinance).

The APSC lastly maintains that a premature ruling by this Court on the state law issue presented by Momentum would "inappropriately interfere with further administrative action" by the APSC. *Beauleiu*, 454 F.3d at 1227. Indeed, if the Court herein renders a determination on the state law authority of the APSC to establish §271 network element rates when the APSC has not ruled on that state law question, any future administrative action by the APSC regarding that issue would be impeded. Such a result is unacceptable and inconsistent with the protection afforded by the Eleventh Amendment. Clearly, States and their agencies should be allowed to establish their policies without undue interference from the federal courts. *Pittman v. Cole*, 267 F.3d 1269, 1273 (11th Cir. 2001). The APSC accordingly requests that it be afforded the latitude to preserve its right to render a determination on the issue of its state law authority to establish §271 network element rates prior to any determination regarding that issue by a federal court.

B.     A ruling by the Court concerning the APSC's broad, general authority under state law to regulate local telephone companies" as requested by Momentum would violate the Eleventh Amendment to the United States Constitution by intruding on the state sovereignty of the APSC.

Even though Momentum has not at any point formally requested that the APSC render a determination on its ability to establish §271 network element rates for BellSouth pursuant to the APSC's "broad, general authority under state law to regulate local telephone companies," Momentum has now asked this Court to make that very

determination.  It is, however, well established that absent an express waiver by a state, the Eleventh Amendment to the United States Constitution bars state law claims against a state in federal court. *Maynard v. Board of Regents*, 342 F.3d at 1281, 1287, (11th Cir. 2003)  The United States Supreme Court has in fact conclusively held that the Eleventh Amendment immunity of state agencies and state officials extends to suits based on state law and that the jurisdictional bar set forth in the Eleventh Amendment applies regardless of the nature of the relief sought by the moving party. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1084).

Numerous federal courts have specifically held that parties are not allowed to seek declaratory judgments against state officials based on state law. *See, e.g. George-Khouri Family, LP v. Ohio Dept. of Liquor Control*, 2005 U.S. App. Lexis 9807, at *8-*9 (6th Cir. 2005) ("Appellants concede that the Eleventh Amendment bars a federal court from enjoining the actions of state officials on the basis of state law … Appellants argue, however, that their complaints are only a declaratory judgment, not injunctive relief, … and that therefore the Eleventh Amendment does not bar their claim.  This is not a correct reading of law."); *Benning v. Board of Regents of Universities,* 928 F.2d 775, 778, (7th Cir. 1991) ("Here, issuance of a federal declaratory judgment as a step towards a state's damage or injunctive remedy would operate as an end-run around *Pennhurst* that is equally forbidden by the Eleventh Amendment."); *Everett v. Schramm*, 587 F. Supp. 228, 235 n.11 (D. Del. 1984) ("[A] suit for declaratory judgment regarding the obligations of state officials places the federal court in a position where its resolution of the controversy will either be pointless or will conflict directly with the principles of federalism that

underlie the Eleventh Amendment."), *aff'd*, 772 F.2d 1114 (3d Cir. 1985) (internal quotation marks omitted).

As noted previously herein, neither the APSC nor its Commissioners have waived immunity from suit as to the state law issue that Momentum seeks to raise in this proceeding. The APSC accordingly asserts that the state law claim raised by Momentum is barred by the Eleventh Amendment and cannot proceed before this Court.

C.  <u>There is no express or implied arbitration or ratemaking authority over §271 network elements granted to states by the Telecom Act of 1996 thus rendering correct the determination by the APSC that it cannot require the inclusion of §271 network elements in interconnection agreements submitted to the APSC for review pursuant to §252 of the 96 Act.</u>

The Telecom Act of 1996 mandated a substantial shift in the regulation and oversight of specifically delineated local telecommunications competition matters from state regulators to federal regulators. *AT&T Corp. v. Iowa Utilities Board*, 525 U.S. 366, 378 n.6 (1999) (the 96 Act "took regulation of local telecommunications competition away from the states") It has in fact been conclusively held that Congress "transferred broad authority from state regulators to federal regulators" even though it left "corners in which the states ha[ve] a role." *Indiana Bell Tel. Co. v. Indiana Utility Regulatory Comm'n 35*9 F.3d 493, 497 (7th Cir. 2004). It has been further established that the "new regime for regulating competition [under the Act] is federal in nature … and while Congress has chosen to retain a significant role for state commissions," the scope of that role is "measured by federal, not state, law." *Southwestern Bell Tel. Co. v. Connect Commc'ns Corp.*, 225 F.3d 942, 947 (8th Cir. 2000)

In keeping with this shift in the regulatory paradigm with respect to local competition matters, it has also been held that the express provisions of the 96 Act make

clear that when Congress intended for States to have a role in the implementation and/or enforcement of any provision thereof, specific language granting and/or defining state authority was included. *USTA II,* 359 F.3d at 568. Conversely, where the specific provisions of the 96 Act do not delineate a particular role for state commissions, it has been held that state commissions lack authority to enforce and/or administer such provisions. *Id.*

In applying these principles to §271 of the Telecom Act of 1996, it appears that the only grant of authority to States pursuant to §271 is the consultative role with the FCC which is set forth in 47 U.S.C. §271(d)(2)(B). The lack of any other express delegation of authority to state commissions regarding the implementation and/or enforcement of the provisions of §271 thus conveys a Congressional intention to leave the ultimate authority regarding §271 expressly with the FCC. *Indiana Bell*, 359 F.3d at 497. The Seventh Circuit has in fact confirmed that Congress intended for States to have the limited role of "issuing a recommendation" to the FCC regarding §271 applications and has held further that state commissions cannot "parlay" that merely consultative role into authority to establish additional duties with respect to the provisions of §271. *Id.*

With respect to the enforcement of the provisions of §271, federal district courts have recognized that "§271 explicitly places enforcement authority with the FCC" and have noted that the implementation of the requirements of §271 lie within the "prerogative of the FCC." *BellSouth Telecommunications, Inc. v. Mississippi Pub. Serv. Comm'n*, 368 F. Supp. 2d 557, 566 (S.D. Miss. 2005); *see also BellSouth Telecommunications v. Cinergy Communications Co.*, No. 3:05-CV-0016-JMH, slip op. 12 (E.D. KY. Apr. 22, 2005 ("[T]he enforcement authority for §271 unbundling duties

lies with the FCC and must be challenged there first.").  The FCC has itself reached that

same conclusion. *InterLATA Boundary Order*, 14 FCC Rcd. 14400-01, ¶¶17-18 (holding

that Congress intended that the [FCC] exercise exclusive authority over the §271

process.)

       The above conclusions regarding the exclusivity of the federal grant of authority

with respect to the ultimate implementation and enforcement of the provisions of §271

are entirely consistent with the historical backdrop against which the Telecom Act of

1996 was promulgated.  More particularly, the 1982 decree known as the Modified Final

Judgment (the "MFJ") that divested AT&T Corporation into regional BOCs and

prohibited them from engaging in the sale of long distance services absent the satisfaction

of established requirements had its genesis in a federal court case and was subject to

enforcement by that federal court. *United States v. American Tel. & Tel. Co.*  When the

Telecom Act of 1996 was passed almost 15 years following the entry of the MFJ,

Congress specifically preserved therein the MFJ's notion that BOCs must satisfy certain

requirements in order to provide long distance service. *See* §601(a) of the 96 Act

(codified at 47 U.S.C. §152). s*ee also* Memorandum, Opinion and Order, *Petition of SBC*

*Communications for Forbearance*, 19 FCC Rcd. 5211, ¶7 (2004).  It accordingly follows

that Congress intended to place with the FCC the "sole" and "exclusive" authority to

regulate the conditions a BOC must satisfy in order to provide long distance service just

as a federal court exclusively administered similar provisions under the MFJ. *InterLATA*

*Boundary Order* ¶¶17-18.

       The foregoing discussion reinforces the conclusion that States cannot expand their

clearly defined consultative role pursuant to §271 into authority to establish substantive

duties with respect to §271.  This includes the establishment of rates for §271 network elements or the imposition of a requirement that such elements be included in §252 interconnection agreements.  Indeed, three of the four federal district courts that have directly addressed the issue of state jurisdiction over §271 network elements have recognized that Congress granted exclusively to the FCC the implementation and enforcement authority over §271 while expressly confining the authority of the States to the separate provisions of §§251 and 252.

A Missouri district court relied on the text and structure of the 96 Act as discussed above, as well as numerous FCC, federal court and state commission decisions, to conclude that state commissions "lack jurisdiction and authority to order §271 elements to be provided in an interconnection agreement arbitrated pursuant to §252." *Southwestern Bell Tel., LP v. Missouri Pub. Serv. Comm'n.*, No. 4:05-CV-1264 (CAS), 2006 U.S. Dist. Lexis 65536, at *35-*36 (E.D. Mo. Sept. 14, 2006).  The Missouri court observed that §271's limited statutory reference to state commission approval under §252 "cannot vest authority in states to set rates for all §271 checklist items" and is "not properly understood as an implied grant of arbitration or ratemaking authority" with respect to §271 elements. *Id.*

An Illinois district court also recently concluded that "the structure of the [1996] Act strongly suggests Congress's intent to separate §§251 and 252 from §271 as well as its intent to confine state authority to the former provisions."  *Illinois Bell Tel. Co. v. O-Connell-Diaz,* No. 05-C-1149, 2006 U.S. Dist. Lexis 70221, at *39 (N.D. Ill. Sept. 28, 2006).  The Illinois court accordingly held that the Illinois Commerce Commission could not require the inclusion of §271 elements in §252 interconnection agreements because

such an approach would empower the state commission to rely on §271 to do indirectly what it could not do directly pursuant to §§251 and 252. *Id.*

A federal district court in New Hampshire also recently determined that "[s]tate commissions have only a limited role in the §271 application process" and rejected the New Hampshire Public Utilities Commission's assertion of authority over Verizon's provision of §271 elements in that state. *Verizon New England, Inc. v. New Hampshire Pub. Utils. Comm'n*, (No. 05-CV-94-PB, 2006 WL 2433249 at *3 (D.N.H. Aug. 22, 2006). The New Hampshire Court stated that because §271 does not contain a provision comparable to §251(d)(2), it "is difficult to understand" any claim that "Congress conferred greater power on [state] public utilities commissions to set §271 [element] rates than it did to set §251 UNE rates even though §251 assigns express rate-setting responsibilities to local public utilities commissions, but §271 does not." *Id.*

Only the federal district court in Maine has reached a contrary conclusion regarding state jurisdiction pursuant to §271 network elements. *Verizon New England, Inc. v. Maine Public Utilities Comm'n*, 403 F. Supp.2d 96 (D. Me. 2005). The Maine court in fact concluded the Maine Public Utilities Commission could establish §271 network element rates for Verizon based on Verizon's prior agreement to submit a tariff governing its §271 obligations, including prices, and the Maine Public Utilities Commission's finding that it was authorized pursuant to state law to enforce the FCC's "just and reasonable pricing standard for §271 network elements." *Id.* at pp. 102-103. The Maine court's conclusion was also premised on the absence of any express consideration of ratemaking or ratemaking authority in §271. *Id.* The Maine court thus reasoned that the provisions of §271 did not grant the FCC exclusive ratemaking authority with respect

to §271 network elements. *Id.* Notably, the federal district courts in Missouri, Illinois, and New Hampshire each considered and rejected the reasoning of the Maine court in their decisions which were discussed in detail above.

The APSC believes that the decisions of the federal district courts of Missouri, Illinois, and New Hampshire more accurately reflect and further the intentions of Congress in promulgating the Telecom Act of 1996 with respect to the provisions of §271 than does the decision of the Maine district court in *Verizon Maine*. The APSC also notes that the two underlying elements that were critical to the Maine district court's determination in *Verizon Maine*, Verizon's prior agreement to submit §271 tariffs and the Maine Commission's apparent finding of state law authority to establish §271 network element rates, are absent in the present case.

In summary, the APSC contends that the Congressional intentions underlying the passage of the Telecom Act of 1996, the text and structure of the 96 Act, and the various federal court decisions discussed above dictate that States cannot expand their clearly defined consultative role pursuant to §271 into authority to establish substantive duties with respect to §271. This includes the establishment of rates for §271 network elements and/or the requirement that such elements be included in interconnection agreements submitted for APSC approval pursuant to §252.

It is true that §§271(c)(1) and (c)(2) provide that in order to obtain initial §271 approval, a BOC must demonstrate that it is providing the services required by other provisions of §271 under "one or more binding agreements that have been approved under §252." 47 U.S.C. §271(c)(1)(A). It appears from the foregoing discussions, however, that the inclusion of the "approved under §252" language in §271(c)(1)(A) does

not mean that agreements incorporating §271 network elements are subject to the §252 state commission arbitration process if the parties do not reach agreement concerning those elements and there has been no agreement by the applicable BOC to negotiate access to §271 elements pursuant to §251. Simply put, §271(c)'s limited reference to state commission approval under §252 does not appear to vest authority in states to arbitrate or otherwise set the rates for §271 network elements absent an agreement by an affected BOC to negotiate access to §271 network elements pursuant to §251. The 96 Act instead appears to limit state commission arbitration and ratemaking authority to items required pursuant to §251 *See Southwestern Bell Telephone, LP* at pp. 19-20. The APSC submits that this same reasoning confirms that the APSC correctly held that it does not have the requisite jurisdiction to compel the inclusion of the §271 elements sought by Momentum in interconnection agreements that are submitted to the Commission for its review pursuant to §252.

## VII.    CONCLUSION

Although the APSC does not herein cede any authority it has been granted pursuant to the express terms of the Telecom Act of 1996, it appears from the foregoing discussions that the APSC does not have the requisite authority pursuant to §271 of the 96 Act to establish rates for §271 networks. It further appears that the APSC does not have jurisdiction to compel the inclusion of §271 network elements in interconnection agreements which must be submitted to the APSC for review and approval pursuant to §252 as has already been held by the APSC.

The APSC further notes, however, its belief that a determination by this Court regarding the state law authority of the Alabama Public Service Commission to establish

rates for §271 network elements is not ripe for consideration given the fact that the APSC has not itself rendered a conclusive determination regarding that question. The APSC further notes that it has never been the intention of the APSC to voluntarily submit to the jurisdiction of this or any other federal court for purposes of a determination of the APSC's state law authority to establish rates for §271 network elements.

Respectfully submitted,

s/G. Scott Morris
G. Scott Morris
Bar Number: MOR080
Attorney for the Defendants
Alabama Public Service Commission
100 N. Union Street, Suite 836
Montgomery, AL 36104
Telephone: (334)242-5200
Fax: (334)242-0748
E-mail: scott.morris@psc.alabama.gov

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | | |
|---|---|---|
| Walter R. Byars, Esq. | Sean A. Lev, Esq. | James H. McLemore, Esq. |
| George H. Nolan, Esq. | Jonathan D. Rose, Esq. | Francis B. Semmes, Esq. |
| Henry M. Walker, Esq. | | |

Respectfully submitted,

s/G. Scott Morris
G. Scott Morris
Attorney for the Defendants
Alabama Public Service Commission
Post Office Box 304260 (36130)
100 North Union Street, Suite 836
Montgomery, Alabama 36104
Phone: (334)242-5200
Fax: (334)242-0748
Email: scott.morris@psc.alabama.gov
Bar Number: MOR080