**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| MOMENTUM TELECOM, INC., | ) |
| | ) |
|     Plaintiff, | ) |
| v. | ) |
| | ) No. 2:06-CV-577-WKW |
| ALABAMA PUBLIC SERVICE COMMISSION, et al., | ) |
| | ) |
|     Defendants. | ) |
| | ) |
| | ) |

**BELLSOUTH TELECOMMUNICATIONS, INC.'S MOTION FOR SUMMARY**
**JUDGMENT AND MEMORANDUM OF LAW IN OPPOSITION TO**
**MOMENTUM TELECOM, INC.'S BRIEF IN SUPPORT OF COMPLAINT FOR**
**DECLARATORY JUDGMENT**

FRANCIS B. SEMMES (SEM002)
Bellsouth Telecommunications, Inc.
Suite 28A2
600 No. 19th Street
Birmingham, AL 35203
(205) 714-0556

WALTER R. BYARS (BYA002)
Steiner, Crum & Byars, P.C.
Post Office Box 668
Montgomery, AL 36101
(334) 832-8800

SEAN A. LEV (D.C. Bar # 449936)
Kellogg, Huber, Hansen ,Todd
  Evans & Figel, P.L.L.C.
Suite 400
1615 M Street, N.W.
Washington, D.C. 20036
(202) 326-7975

## TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................2

A.    The Telecommunications Act of 1996.............................................................2

    1.    The Unbundling Requirement of Section 251 .........................................2

    2.    The FCC's Prior Unbundling Orders and the Supreme Court and D.C. Circuit Vacaturs.............................................................................4

    3.    Section 271...........................................................................................5

B.    Procedural History .........................................................................................7

    1.    The First PSC Order.............................................................................7

    2.    The Second PSC Order .........................................................................8

STANDARD OF REVIEW ......................................................................................9

ARGUMENT .......................................................................................................10

I.    THE PSC CORRECTLY DETERMINED THAT FEDERAL LAW GRANTS IT NO AUTHORITY TO IMPLEMENT SECTION 271 ...............................10

    A.    The PSC Lacks Authority To Implement Section 271 .........................10

    B.    Momentum's Contrary Federal-Law Arguments Are Incorrect ............14

    C.    In Any Event, Momentum's Claims Are Unripe ..................................17

II.    MOMENTUM'S STATE-LAW THEORY IS UNRIPE, INCORRECT, AND IS PREEMPTED IN ANY EVENT ........................................................17

    A.    Momentum's Claim Is Unripe ............................................................18

    B.    State Law Cannot Create Federal Jurisdiction.....................................19

    C.    Momentum's State-Law Claim Is Preempted in Any Event .................21

    D.    Alabama Law Does Not Authorize Momentum's Requested Relief.................25

CONCLUSION......................................................................................................25

# TABLE OF AUTHORITIES

Page

**Cases**

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967).................................................................18

*Alabama State Fed'n of Labor v. McAdory*, 325 U.S. 450 (1945) ...............................19

*AT&T Corp. v. FCC*, 220 F.3d 607 (D.C. Cir. 2000) ....................................................6

*AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366 (1999).........................................4, 5, 19

*Beaulieu v. City of Alabaster*, 454 F.3d 1219 (11th Cir. 2006) ...................................18

*BellSouth Telecomms., Inc. v. NuVox Communications*, No. 1:04-CV-2790-WSD,
2006 WL 2617123 (N.D. Ga. Sept. 12, 2006) ..................................................21

*BellSouth Telecomms., Inc. v. ITC DeltaCom Communications, Inc.*, 62 F. Supp.
2d 1302 (M.D. Ala. 1999)......................................................................................9

*BellSouth Telecomms., Inc. v. MCImetro Access Transmission Servs., LLC*, 425
F.3d 964 (11th Cir. 2005) ...........................................................................2, 22, 23

*BellSouth Telecomms., Inc. v. Mississippi Public Serv. Comm'n*, 368 F. Supp. 2d
557 (S.D. Miss. 2005).......................................................................................1, 12

*Camp v. Pitts*, 411 U.S. 138 (1973) ...............................................................................9

*Clifton Power Corp. v. FERC*, 294 F.3d 108 (D.C. Cir. 2002) ....................................17

*Coserv Ltd. Liab. Corp. v. Southwestern Bell Tel. Co.*, 350 F.3d 482 (5th Cir.
2003) ..............................................................................................................16, 17

*Dieca Communications, Inc. v. Florida Pub. Serv. Comm'n*, No. 4:06-cv-72, 2006
U.S. Dist. LEXIS 73511 (N.D. Fla. Sept. 12, 2006) (*notice of appeal filed*
Oct. 10, 2006) .......................................................................................1, 11, 13, 20

*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141 (1982) .......................23

*Florida Power & Light Co. v. Lorion*, 470 U.S. 729 (1985) ..........................................9

*Geier v. American Honda Motor Co.*, 529 U.S. 861 (2000)....................................21, 23

*Illinois Bell Tel. Co. v. O'Connell-Diaz*, No. 05-C-1149, 2006 U.S. Dist. LEXIS
70221 (N.D. Ill. Sept. 28, 2006) ............................................................1, 11, 13, 20

*Indiana Bell Tel. Co. v. Indiana Util. Regulatory Comm'n*, 359 F.3d 493 (7th Cir. 2004) ........................................................................................................12, 19

*Konikov v. Orange County*, 410 F.3d 1317 (11th Cir. 2005)..........................................18

*MCI Telecomms. Corp. v. BellSouth Telecomms., Inc.*, 298 F.3d 1269 (11th Cir. 2002) ..................................................................................................................3, 11, 16

*MCI Telecomms. Corp. v. Illinois Bell Tel. Co.*, 222 F.3d 323 (7th Cir. 2000)...........................19

*MCI WorldCom Communications, Inc. v. BellSouth Telecomms., Inc.*, 446 F.3d 1164 (11th Cir. 2006).......................................................................................9, 10

*Michigan Bell Tel. Co. v. MCImetro Access Transmission Servs., Inc.*, 323 F.3d 348 (6th Cir. 2003).................................................................................................22

*Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214 (11th Cir. 2004) .............................18

*Pittman v. Cole*, 267 F.3d 1269 (11th Cir. 2001) .........................................................18

*Southwestern Bell Tel. Co. v. Connect Communications Corp.*, 225 F.3d 942 (8th Cir. 2000) .......................................................................................................19

*Southwestern Bell Tel. Co. v. Public Utils. Comm'n*, 208 F.3d 475 (5th Cir. 2000)....................10

*Southwestern Bell Tel., L.P. v. Missouri Pub. Serv. Comm'n*, No. 4:05-cv-1264, 2006 U.S. Dist. LEXIS 65536 (E.D. Mo. Sept. 14, 2006) (notice of appeal filed Oct. 12, 2006) .........................................................................1, 11, 12, 13, 15, 20, 22, 24

*TeleSTAR, Inc. v. FCC*, 888 F.2d 132 (D.C. Cir. 1989) .............................................17

*Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568 (1985) .............................................18

*United States v. AT&T Corp.*, 552 F. Supp. 131 (D.D.C. 1982)....................................................20

*United States v. Western Elec. Co.*, 900 F.2d 283 (D.C. Cir. 1990).............................................20

*USTA v. FCC*, 290 F.3d 415 (D.C. Cir. 2002), *cert. denied*, 538 U.S. 940 (2003) ........................5

*USTA v. FCC*, 359 F.3d 554 (D.C. Cir.), *cert. denied*, 543 U.S. 925 (2004) .....................5, 16, 23

*Verizon Communications Inc. v. FCC*, 535 U.S. 467 (2002)...........................................................3

*Verizon New England, Inc. v. Maine Pub. Utils. Comm'n*, 403 F. Supp. 2d 96 (D. Me. 2006), *appeal docketed*, No. 06-2151 (1st Cir. Aug. 7, 2006) ...................................20

*Verizon New England, Inc. v. New Hampshire Public Utils. Comm'n*, Case No. 05-cv-94, 2006 U.S. Dist. LEXIS 59339 (D.N.H. Aug. 22, 2006)...................1, 13, 20, 22

*Vonage Holdings Corp. v. Minnesota Pub. Utils. Comm'n*, 394 F.3d 568 (8th Cir. 2004) ...................................................................................................................22

**Administrative Decisions**

*Federal*

First Report and Order, *Implementation of the Local Competition Provisions in the Telecommunications Act of 1996*, 11 FCC Rcd 15499, *modified on recon.*, 11 FCC Rcd 13042 (1996), *vacated in part, Iowa Utils. Bd. v. FCC*, 120 F.3d 753 (8th Cir. 1997), *aff'd in part, rev'd in part sub nom. AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366 (1999), *decision on remand, Iowa Utils. Bd. v. FCC*, 219 F.3d 744 (8th Cir. 2000), *aff'd in part, rev'd in part sub nom. Verizon Communications Inc. v. FCC*, 535 U.S. 467 (2002)...........................................................................................................................4

Memorandum Opinion and Order, *Application for Review and Petition for Reconsideration or Clarification of Declaratory Ruling Regarding US West Petitions To Consolidate LATAs in Minnesota and Arizona*, 14 FCC Rcd 14392 (1999) .............................................................................................6, 11

Memorandum Opinion and Order, *Omnipoint Communications, Inc. New York MTA Frequency Block A*, 11 FCC Rcd 10785 (1996) .......................................16

Order, *Petition of Home Owners' Long Distance, Inc. for a Declaratory Ruling*, 14 FCC Rcd 17139 (1999).............................................................................16

Order on Remand, *Unbundled Access to Network Elements; Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers*, 20 FCC Rcd 2533 (2005), *petitions for review denied, Covad Communications Co. v. FCC*, 450 F.3d 528 (D.C. Cir. 2006)...........................4, 5, 22, 23

Order of Dismissal, *Momentum Telecom, Inc. f/k/a Momentum Business Solutions, Inc. v. BellSouth Telecommunications, Inc.*, 21 FCC Rcd 2247 (2006)...............................................................................................................10

Report and Order and Order on Remand and Further Notice of Proposed Rulemaking, *Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers*, 18 FCC Rcd 16978 (2003), *vacated in part and remanded, USTA v. FCC*, 359 F.3d 554 (D.C. Cir.), *cert. denied*, 543 U.S. 925 (2004). .................................................4, 6, 7, 11, 16, 21

Third Report and Order and Fourth Further Notice of Proposed Rulemaking, *Implementation of the Local Competition Provisions of the Telecommunications Act of 1996*, 15 FCC Rcd 3696 (1999), *vacated and remanded, United States Telecom Ass'n v. FCC*, 290 F.3d 415 (D.C. Cir. 2002), *cert. denied*, 538 U.S. 940 (2003)...................................4, 7, 21, 24, 25

*State*

Order, *Indiana Utility Regulatory Commission's Investigation of Issues Related to the Implementation of the Federal Communication Commission's Triennial Review Remand Order and the Remaining Portions of the Triennial Review Order*, Cause No. 42857 (Ind. Util. Regulatory Comm'n Jan. 11, 2006) ................................................................................14

Report and Order, *Verizon-Rhode Island's Filing of February 18, 2005 To Amend Tariff No. 18*, Docket No. 3662, 2005 RI PUC LEXIS 26 (R.I. Pub. Utils. Comm'n July 28, 2005) ................................................................14

**Statutes and Rules**

Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (1996) (amending the Communications Act of 1934, 47 U.S.C. §§ 151 *et seq.*):

§ 152 note ................................................................................21

§ 153(29) ................................................................................2

§ 251(c)(1) ................................................................................3

§ 251(c)(3) ................................................................................2

§ 251(d)(2) ................................................................................3

§ 251(d)(3) ................................................................................24

§ 252 ................................................................................3, 13

§ 252(b) ................................................................................3

§ 252(c) ................................................................................3

§ 252(c)(1) ................................................................................11

§ 252(c)(2) ................................................................................11

§ 252(d)(1) ................................................................................3, 11

§ 252(d)(1)-(3) ................................................................................3

§ 252(e) ................................................................................4

§ 252(e)(6) ................................................................................4

§ 271 ................................................................................5

§ 271(c)(1)(A) ................................................................................................14, 15

§ 271 (c)(2) ..........................................................................................................14

§ 271(c)(2)(B) .........................................................................................................6

§ 271(c)(2)(B)(vi) ...................................................................................................6

§ 271(d)(1) ............................................................................................................10

§ 271(d)(2)(B) ...................................................................................................6, 11

§ 271(d)(3) .......................................................................................................6, 10

§ 271(d)(6) .......................................................................................................6, 11

5 U.S.C. § 554(e) ........................................................................................................16

Fed. R. Civ. P. 56(c) ...................................................................................................9

Ala. Code § 37-2A-4(b) (2005) ................................................................................25

**Other Materials**

13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* (2d ed. 1984) ............................................................18

## INTRODUCTION

Defendant BellSouth Telecommunications, Inc. ("BellSouth") respectfully requests that this Court enter summary judgment against Plaintiff Momentum Telecom, Inc. ("Momentum") and in favor of the Alabama Public Service Commission ("PSC") and BellSouth.

Momentum seeks review of the PSC's decision dated April 20, 2006. In that decision, the PSC concluded that it lacked authority to implement 47 U.S.C. § 271. Despite the fact that Momentum has a petition for reconsideration pending at the PSC, it has come to this Court asking for a declaration that the PSC has such authority under federal and state law. For multiple, independent reasons, Momentum is wrong on all points.

Just as four separate federal courts have held in the past several months and another federal court in Mississippi held last year, the PSC correctly concluded that it lacks authority under federal law to implement § 271.[1] *No* federal court has disagreed with that conclusion, and the vast majority of state commissions (at least 26 in all) concur in the PSC's analysis. These consistent determinations accord with the plain language of the federal Telecommunications Act of 1996 (the "1996 Act"),[2] which gives the Federal Communications Commission ("FCC") the sole authority to implement § 271 and gives states only an advisory role under that statutory provision.

---

[1] *See Illinois Bell Tel. Co. v. O'Connell-Diaz*, No. 05-C-1149, 2006 U.S. Dist. LEXIS 70221 (N.D. Ill. Sept. 28, 2006) ("Illinois Decision") (Exh.1); *Dieca Communications, Inc. v. Florida Pub. Serv. Comm'n*, No. 4:06-cv-72, 2006 U.S. Dist. LEXIS 73511 (N.D. Fla. Sept. 12, 2006) ("Florida Decision") (notice of appeal filed Oct. 10, 2006) (Exh. 2); *Southwestern Bell Tel., L.P. v. Missouri Pub. Serv. Comm'n*, No. 4:05-cv-1264, 2006 U.S. Dist. LEXIS 65536 (E.D. Mo. Sept. 14, 2006) ("Missouri Decision") (*notice of appeal filed* Oct. 12, 2006) (Exh. 3); *Verizon New England, Inc. v. New Hampshire Pub. Utils. Comm'n*, No. 05-cv-94, 2006 U.S. Dist. LEXIS 59339 (D.N.H. Aug. 22, 2006) ("New Hampshire Decision") (Exh. 4); *BellSouth Telecomms., Inc. v. Mississippi Pub. Serv. Comm'n*, 368 F. Supp. 2d 557, 566 (S.D. Miss. 2005).

[2] Pub. L. No. 104-104, 110 Stat. 56 (1996) (amending the Communications Act of 1934, 47 U.S.C. §§ 151 *et seq.*). Relevant sections of the 1996 Act are attached in a Statutory Addendum at the end of this brief.

Momentum's state-law claims also are without merit.  As an initial matter, these claims are unripe, as, by Momentum's own account, the PSC has not ruled on this issue.  In any event, on the merits, as federal courts of appeals have recognized, only the federal 1996 Act itself can give the PSC authority to implement parts of that *federal* statute, including § 271.  Beyond that, establishing regulated rates for facilities that must be offered under § 271 is directly contrary to federal law and policy, and thus would be preempted by federal law even if it were authorized under state law.  Finally, provisions of Alabama law that Momentum disregards expressly prevent the PSC from going beyond FCC requirements in the way that Momentum requests.

BACKGROUND

## A.      The Telecommunications Act of 1996

### 1.      The Unbundling Requirement of Section 251

The 1996 Act imposes a series of duties on incumbent local exchange carriers ("incumbent LECs" or "ILECs").  Incumbent LECs are companies like BellSouth that have traditionally provided local telephone service in a particular geographic area.

One of the duties imposed by the 1996 Act requires ILECs in certain circumstances to allow competitive local exchange carriers ("competitive LECs" or "CLECs"), which are entrants into the local telephone market such as Momentum, to lease elements of the ILECs' telephone networks.  Those network elements include switches (devices for routing and connecting calls), loops (the wire and fiber facilities strung on telephone poles or buried underground that connect individual customer locations to the network), and transport (cables that connect the facilities that house switches).  *See* 47 U.S.C. §§ 153(29), 251(c)(3).  When an ILEC is required to provide access to a particular network element, that element is known as an unbundled network element (or "UNE").  *See generally BellSouth Telecomms., Inc. v. MCImetro Access*

2

*Transmission Servs., LLC*, 425 F.3d 964, 966 (11th Cir. 2005) (explaining the concept of UNEs under the 1996 Act).

The 1996 Act assigns the FCC the duty to determine which network elements will be subject to unbundling (and thus become UNEs). The FCC may require an incumbent LEC to provide access to (*i.e.*, to "unbundle") an element only if it determines that competitive LECs would otherwise be "impair[ed]" in their ability to provide service. 47 U.S.C. § 251(d)(2). Rates charged by ILECs for access to UNEs must be based on "cost." *Id.* § 252(d)(1). The FCC has implemented that directive by establishing a pricing methodology known as "Total Element Long Run Incremental Cost," or "TELRIC." TELRIC allows CLEC access to UNEs that must be offered under § 251 at low rates that stop just "short of confiscati[on]." *Verizon Communications Inc. v. FCC*, 535 U.S. 467, 489 (2002).

The duties of § 251 are implemented through "interconnection agreements" between ILECs and CLECs. *See* 47 U.S.C. § 252. The 1996 Act requires ILECs and CLECs to negotiate in "good faith" the "particular terms and conditions of agreements to fulfill the duties described in [§ 251(b) and (c)]." *Id.* § 251(c)(1). If negotiations are unsuccessful, either party may ask the state commission to arbitrate "any open issues" under § 251(b) and (c) that the parties have not resolved. *See id.* § 252(b). In deciding these "open issues," the state commission must adhere to the requirements of the statute and the FCC's implementing regulations. *See id.* § 252(c); *MCI Telecomms. Corp. v. BellSouth Telecomms., Inc.*, 298 F.3d 1269, 1274 (11th Cir. 2002) (confirming that state authority in arbitration process is limited to implementing § 251). Moreover, and of particular importance here, § 252(d) specifically limits the state commission's authority to set rates only "for purposes of" access to facilities and services that must be offered *under § 251(b) and (c). See* 47 U.S.C. § 252(d)(1)-(3).

After an ILEC and CLEC have reached a full agreement – as a result of either negotiation or arbitration – the state commission must approve or reject the agreement based on whether it meets the criteria set out in §§ 251 and 252.  *See id.* § 252(e).  A party aggrieved by a state commission determination under § 252 may bring suit in district court.  *See id.* § 252(e)(6).

### 2.    The FCC's Prior Unbundling Orders and the Supreme Court and D.C. Circuit Vacaturs

On three occasions from 1996 through 2003, the FCC issued orders[3] that imposed what the Supreme Court has termed "blanket" unbundling.[4]  Under these orders, incumbent LECs were required to allow competitive LECs access – at artificially low regulated TELRIC rates – to *all* the facilities necessary to provide local service.  The set of pre-combined UNEs that provides all the facilities necessary to provide telecommunications service is known in the industry as the "UNE Platform."  Because competitive LECs could obtain access to all the UNEs necessary to provide local service, many competitors sought to provide service using *only* those UNEs instead of relying upon any of their own facilities.[5]

Each time the FCC sought to impose blanket unbundling, the federal courts – first the Supreme Court and then twice the D.C. Circuit – vacated the FCC's decision as inconsistent with

---

[3] *See* First Report and Order, *Implementation of the Local Competition Provisions in the Telecommunications Act of* 1996, 11 FCC Rcd 15499 (1996) (subsequent history omitted); Third Report and Order and Fourth Further Notice of Proposed Rulemaking, *Implementation of the Local Competition Provisions of the Telecommunications Act of 1996*, 15 FCC Rcd 3696 ("*UNE Remand Order*") (subsequent history omitted); Report and Order and Order on Remand and Further Notice of Proposed Rulemaking, *Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers*, 18 FCC Rcd 16978 (2003) ("*Triennial Review Order*") (subsequent history omitted).

[4] *AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 389 (1999).

[5] *See* Order on Remand, *Unbundled Access to Network Elements; Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers*, 20 FCC Rcd 2533, ¶ 220 (2005) ("*Order on Remand*") ("Some competitive LECs have openly admitted that they have no interest in deploying facilities.") (subsequent history omitted).

the 1996 Act.[6]  The FCC's repeated adoption of blanket unbundling demonstrated, in the words

of the D.C. Circuit, a "failure, after eight years, to develop lawful unbundling rules, and [an]

apparent unwillingness to adhere to prior judicial rulings."  *USTA II*, 359 F.3d at 595.

    In February 2005, the FCC responded to the last of these "scathing rebuke[s]," *BellSouth*,

425 F.3d at 969, of its unlawful "blanket" unbundling policies by issuing the *Order on Remand*.

That decision finally prohibited the mandatory leasing of unbundled switching at nearly

confiscatory TELRIC rates.  Because switching is a necessary component of the UNE Platform,

this FCC decision put an end to that anticompetitive practice.  *See Order on Remand* ¶ 5.  The

FCC explained that competitors were not "impaired" within the meaning of § 251(d)(2) without

unbundled switching, and it further held that the availability of the UNE Platform "hinder[s]"

genuine competition.  *Id.* ¶¶ 218, 220.  The FCC accordingly adopted a "nationwide bar" on the

mandatory unbundling of local switching.  *Id.* ¶ 204.  Because of the "need for prompt action,"

the FCC made its new rules effective on March 11, 2005.  *Id.* ¶ 235.  Accordingly, as a matter of

federal law, under this FCC decision, competitive LECs such as Momentum may no longer

obtain the UNE Platform.

    **3.    Section 271**

    The 1996 Act also established a process pursuant to which the largest ILECs, known as

Bell operating companies ("BOCs"), could obtain authority on a state-by-state basis to provide

long-distance service.  *See* 47 U.S.C. § 271.  In Alabama, BellSouth is a BOC subject to § 271.

Section 271 authorizes the *FCC* to grant a BOC application to provide long-distance service in a

given state if the BOC satisfies statutory criteria designed to confirm that the local market in the

---

    [6] *See Iowa Utils. Bd.*, 525 U.S. at 388-91; *USTA v. FCC*, 290 F.3d 415 (D.C. Cir. 2002)
("*USTA I*"), *cert. denied*, 538 U.S. 940 (2003); *USTA v. FCC*, 359 F.3d 554 (D.C. Cir.) ("*USTA II*"), *cert. denied*, 543 U.S. 925 (2004).

state is open to competition. *See id.* § 271(d)(3); *AT&T Corp. v. FCC*, 220 F.3d 607, 612 (D.C. Cir. 2000). These criteria include a showing that the BOC satisfies the "competitive checklist" – *i.e.*, a list of services and facilities that the BOC must make available to CLECs operating in the state. 47 U.S.C. § 271(c)(2)(B). This list includes "[l]ocal switching," *id.* § 271(c)(2)(B)(vi), which CLECs contend is the same as the switching element that the FCC held in the *Order on Remand* does not have to be made available pursuant to § 251. The FCC has held that the obligations of the § 271 competitive checklist continue even after a BOC obtains long-distance authority in a given state (as BellSouth did in Alabama in September 2002), and even after the FCC determines that the element need not be made available pursuant to § 251. *See Triennial Review Order* ¶¶ 653-655; *id.* ¶ 665.

Section 271 makes clear that all issues under § 271 are to be resolved by the FCC, *not* a state commission, because Congress granted "*sole authority* [to the FCC] to administer . . . section 271." *InterLATA Boundary Order*[7] ¶¶ 17-18 (emphasis added). In particular, both applications for approval to provide long-distance service are to be approved or rejected by the FCC (referred to as the "Commission" in the statute), and, post-approval, the statute authorizes only the FCC to determine, on its own motion or in response to a complaint, whether a BOC remains in compliance with § 271. *See* 47 U.S.C. § 271(d)(3), (6). By contrast, Congress expressly gave the states only an advisory role assisting the FCC in the § 271 application process. *See id.* § 271(d)(2)(B).

In addition to this important jurisdictional distinction, there are also significant substantive differences between §§ 251 and 271. Of particular relevance here, where the FCC

---

[7] Memorandum Opinion and Order, *Application for Review and Petition for Reconsideration or Clarification of Declaratory Ruling Regarding US West Petitions To Consolidate LATAs in Minnesota and Arizona*, 14 FCC Rcd 14392 (1999) ("*InterLATA Boundary Order*").

has determined that an element required under § 271 is *not* required to be unbundled under § 251, the *rate* that applies to that element is not the low TELRIC-based rate that applies to § 251 unbundled elements. *See Triennial Review Order* ¶¶ 657-659. In that circumstance, the pricing of the § 271 element is subject to the "just, reasonable, and nondiscriminatory rate standard of sections 201 and 202" of the Communications Act. *Id.* ¶ 663.

Critically, the FCC has established that, under this standard, "the *market price* should prevail" – "*as opposed* to a regulated rate" of the type that Momentum seeks. *UNE Remand Order* ¶ 473 (emphases added). A BOC may demonstrate that it is offering a market rate that complies with §§ 201 and 202 by "showing that it has entered into arms-length agreements with other, similarly situated purchasing carriers to provide the element at that rate." *Triennial Review Order* ¶ 664.

## B.    Procedural History

### 1.    The First PSC Order

After the FCC issued its *Order on Remand*, BellSouth notified competitive LECs on February 11, 2005, that, as of March 11, 2005, it would no longer accept new UNE switching orders or orders for loops and transport in circumstances where UNE access to those facilities was not required under the FCC's decision.

In February 2005, several carriers filed motions asking the PSC to mandate that BellSouth be required to continue to provide new UNE Platform orders for an indefinite period pending negotiation of new terms. *See* First PSC Order,[8] 2005 Ala. PUC LEXIS 126, at *9-*23. The PSC rejected that argument. It concluded that "the FCC indeed intended for the provisions

---

[8] Order Dissolving Temporary Standstill, *Competitive Carriers of the South, Inc.*, Docket 29393, 2005 Ala. PUC LEXIS 126, at *1 (Ala. Pub. Serv. Comm'n May 25, 2005) ("First PSC Order").

of the [*Order on Remand*] precluding new UNE orders on and after March 11, 2005 to be self-effectuating on that date." *Id.* at *33.

Moreover, in response to the argument that "BellSouth has an independent obligation to provision [UNE Platform] switching pursuant to § 271 of the [1996 Act]," the PSC held that there is "no federal right to § 271 based [UNE Platform] arrangements," and that "the ultimate enforcement authority with respect to a regional [BOC's] alleged failure to meet the continuing requirements of § 271 of the [1996 Act] rests with the FCC and not this Commission." *Id.* at *42-*43.

### 2.    The Second PSC Order

Also in 2005, the PSC initiated a separate proceeding in response to a petition from Momentum and another carrier. The purpose was to determine how to amend BellSouth's interconnection agreements in light of the *Triennial Review Order* and the *Order on Remand*.

During that proceeding, several CLECs argued before the PSC that the state agency should require BellSouth "to include in its § 252 interconnection agreements the availability and pricing of network elements under § 271." Final Order Resolving Disputed Issues, *Petition Regarding the Establishment of a Generic Proceeding on Change of Law and Nondiscriminatory Pricing for UNEs*, Docket 29543, at 4-5 (Ala. Pub. Serv. Comm'n Apr. 20, 2006) (Exh. 3 to Momentum Complaint).

The PSC rejected this argument. *See id.* The PSC held that, "[g]iven the fact that the Commission's sole authority to review interconnection agreements is derived from § 252 and the interplay between §§ 251 and 252, it does not appear that the [PSC] has the requisite jurisdiction to compel the inclusion of the § 271 elements" in interconnection agreements. *Id.* at 5-6. The PSC also noted that "there appears to be no express or implied obligation on the part of

8

BellSouth to negotiate the terms and conditions regarding § 271 elements." *Id.* at 6. Finally, the PSC took note of the D.C. Circuit's decision to uphold "the FCC's determination that §§ 271(c)(2)(B)(iv), (v), (vi), and (x) do not incorporate the requirements of §§ 251 and 252 that are made applicable to other items in the § 271 checklist by specific reference." *Id.* at 5.

On March 7, 2006, Momentum filed a petition for reconsideration, and, on May 2, 2006, the PSC issued an order holding Momentum's petition for reconsideration in abeyance. *See* Order Holding in Abeyance of Momentum Telecom, Inc.'s Emergency Petition for Reconsideration, *Petition Regarding the Establishment of a Generic Proceeding on Change of Law and Nondiscriminatory Pricing for UNEs*, Docket 29543, 2006 Ala. PUC LEXIS 251 (Ala. Pub. Serv. Comm'n May 2, 2006). The PSC reasoned that the "core issues raised by Momentum are currently before the federal district court in Georgia," and a "ruling on Momentum's Petition will thus be deferred until there is guidance from the federal district court in question." *Id.* at *2.

### STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as matter of law." Fed. R. Civ. P. 56(c). In reviewing a decision of a state agency, the district court looks only to the administrative record.[9]

As to the federal legal questions presented, federal courts agree that this review occurs *de novo*. *See MCI WorldCom Communications, Inc. v. BellSouth Telecomms., Inc.*, 446 F.3d 1164, 1170 (11th Cir. 2006) ("This Court reviews *de novo* questions of law."). All other issues,

---

[9] *See Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985) ("'[T]he focal point for judicial review [of an administrative agency decision] should be the administrative record already in existence, not some new record made initially.'") (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)); *BellSouth Telecomms., Inc. v. ITC DeltaCom Communications, Inc.*, 62 F. Supp. 2d 1302, 1307 (M.D. Ala. 1999) ("Regarding the scope of review, there is general agreement that review under § 252(e)(6) is confined to the administrative record.") (internal quotation marks omitted).

including those under state law, are subject to highly deferential arbitrary and capricious review. *See id.*; *see also Southwestern Bell Tel. Co. v. Public Util. Comm'n*, 208 F.3d 475, 482 (5th Cir. 2000) ("We shall therefore review *de novo* whether the interconnection agreements as interpreted by the PUC meet the requirements of the [1996] Act, but our review of the PUC's state law determinations will be under the more deferential arbitrary-and-capricious standard.").

## ARGUMENT

I.   **THE PSC CORRECTLY DETERMINED THAT FEDERAL LAW GRANTS IT NO AUTHORITY TO IMPLEMENT SECTION 271**

   A.   **The PSC Lacks Authority To Implement Section 271**

Contrary to Momentum's arguments, the PSC has no authority under federal law either to set rates for purposes of § 271 elements or to require that the terms of access to such § 271 facilities be negotiated and arbitrated in state proceedings under § 252. In fact, states have no authority whatsoever to implement § 271. Rather, all such authority rests with the FCC, with whom Momentum may file a complaint if it believes that BellSouth is not complying with § 271. In fact, *Momentum previously filed such a complaint at the FCC, but it chose to withdraw that complaint before the FCC reached a decision.*[10] If Momentum believes that BellSouth is violating any § 271 requirement, it remains entitled to seek relief from the FCC.

Any such relief, however, must come from the FCC, not the PSC, because federal law is unambiguous in granting the FCC sole authority to implement § 271. When a BOC applies for permission to serve the long-distance market, its § 271 application is submitted to the FCC, *see* 47 U.S.C. § 271(d)(1), and approval may be granted only by the FCC, *see id.* § 271(d)(3). During the application process, state commissions are afforded no role other than as a consultant

---

[10] *See* Order of Dismissal, *Momentum Telecom, Inc. f/k/a Momentum Business Solutions, Inc. v. BellSouth Telecommunications, Inc.*, 21 FCC Rcd 2247 (2006).

to the FCC.  *See id.* § 271(d)(2)(B).  And where, as here, the BOC has *already* received approval, the statute again leaves enforcement of any ongoing obligations exclusively to "the Commission," that is, the FCC.  *See id.* § 271(d)(6).

The absence of state commission authority under § 271 is further confirmed by § 252.  Only under § 252 do state commissions have authority to arbitrate interconnection agreements between incumbent LECs and CLECs.  And, as the language of the statute makes clear – and as the Eleventh Circuit has confirmed – state commission authority in this process is limited to ensuring that the interconnection agreement reached through the arbitration "meet[s] the requirements of *section 251* of this title, including the regulations prescribed by the [FCC] pursuant to section 251."  *Id.* § 252(c)(1) (emphasis added); *see MCI Telecomms.*, 298 F.3d at 1274.  Moreover, and critically for this case, § 252 authorizes state commissions to set rates *only* "for purposes of" *§ 251.  See* 47 U.S.C. § 252(d)(1); *id.* § 252(c)(2).  Thus, as the FCC and multiple federal courts have explained, with respect to state commissions' authority to set rates, § 252 is "quite specific" and "*only* applies for the purposes of implementation of section 251(c)(3)."  *Triennial Review Order* ¶ 657 (emphasis added); *see also* Missouri Decision, 2006 U.S. Dist. LEXIS 65536, at *31-*32 (contrasting § 271, which "does not contain an express provision for rate-making or rate-making authority," with § 252); Florida Decision, 2006 U.S. Dist. LEXIS 73511, at *11-*14 (same); Illinois Decision, 2006 U.S. Dist. LEXIS 70221, at *39 (same).

In accord with this statutory language, both the FCC and the courts have repeatedly recognized that Congress granted "*sole authority* [to the FCC] to administer . . . section 271." *InterLATA Boundary Order* ¶¶ 17-18 (emphasis added); *see id.* ¶ 18 (finding that Congress intended that the FCC exercise "*exclusive authority* . . . over the section 271 process") (emphasis

added); *see also* Missouri Decision, 2006 U.S. Dist. LEXIS 65536, at *32-*33 (relying on

*InterLATA Boundary Order* to support holding that state commission could not mandate

unbundling under § 271).[11]  As the Mississippi court succinctly explained last year, "it is the

prerogative of the FCC . . . to address any alleged failure by [a Bell company] to satisfy any

statutorily imposed conditions to its continued provision of long distance service."  *BellSouth*,

368 F. Supp. 2d at 566[12]; *see also Indiana Bell Tel. Co. v. Indiana Util. Regulatory Comm'n*, 359

F.3d 493, 497 (7th Cir. 2004) (holding that a state commission may not "parlay its limited role"

in consulting with the FCC on a BOC's application for long-distance relief to impose substantive

requirements).

   Indeed, in four separate cases decided in just the past few months, federal courts have

confirmed that state commissions have no federal-law authority to impose requirements to

implement § 271.  For instance, the Missouri commission decided last year to grant the same

relief that Momentum seeks here, *i.e.*, it set rates for facilities that must be provided only under

§ 271.  *See* Missouri Decision, 2006 U.S. Dist. LEXIS 65536, at *27.  On review of that

decision, the federal district court reversed the state commission, concluding that "[t]he text of

§ 271 gives the FCC exclusive jurisdiction over the enforcement of that section"; that the state

commission's "only role" is to "act as consultant to the FCC during the application process"; and

that "the statute places exclusive enforcement of any ongoing obligations with the FCC."  *Id.* at

*31.  The Missouri federal court further explained, in a passage that accords with the PSC's

---

   [11] Given the Missouri court's citation of the *InterLATA Boundary Order*, Momentum is wrong to suggest that the court "does not cite any specific ruling of the FCC."  Momentum Br. at 8.

   [12] Momentum attempts to distinguish this case on the theory that it does not address a commission's power under state law to set § 271 rates.  *See* Momentum Br. at 6 n.6.  But no such alleged state-law power could override the FCC's exclusive authority to enforce § 271.  *See infra* pp. 19-25.

analysis here, that "Section 252 provides that the state commission's duty in arbitrating and approving agreements is limited to ensuring that the agreement 'meets the requirements of section 251,' and does not mention any role for the state commission under § 271." *Id.* at *32 (quoting 47 U.S.C. § 252); *see* Illinois Decision, 2006 U.S. Dist. LEXIS 70221, at *39 (the "structure of the [1996] Act strongly suggests Congress's intent to separate Sections 251 and 252 from Section 271, as well its intent to confine state authority to the former provisions"); Florida Decision, 2006 U.S. Dist. LEXIS 73511, at *11-*12 (holding that § 271 "assigns state commissions no role in the process" other than consulting with the FCC "prior" to the FCC's decision, and that it "is correct . . . that any complaint by Covad that BellSouth's failure to provide [a certain form of network access] will violate § 271 is an issue for the FCC, not for the Florida Commission"); New Hampshire Decision, 2006 U.S. Dist. LEXIS 59339, at *34 (holding that the state commission "ha[d] failed to identify" any legitimate "source for its power to set § 271 UNE rates").

*No* federal court has held that state commissions have authority to implement § 271 under federal law. Rather, the lone federal court to adopt any of Momentum's theories relied upon *state* law, a theory that, as discussed *infra* pp. 17-24, is not properly presented here and that is wrong in any event under both federal law (as these later district court decisions have expressly concluded), and under Alabama law (which imposes distinct limits on PSC authority that Momentum never acknowledges).

Additionally, the overwhelming majority of other state commissions – 26, according to BellSouth's most recent count – have also agreed that they do not have authority to implement § 271 obligations. *See* Exh. 5. For instance, like the PSC, the Indiana commission stated that it joined "the many courts and commissions that have already held that section 271 obligations

have no place in Section 251/252 interconnection agreement[s] and that state commissions have no jurisdiction to enforce or determine the requirements of Section 271."[13]  As the Rhode Island commission put it, "at the bistro serving up the BOCs' wholesale obligations, the kitchen door numbered 271 is for 'federal employees only.'"[14]

### B.    Momentum's Contrary Federal-Law Arguments Are Incorrect

In the face of this wall of contrary precedent, Momentum argues primarily that § 271(c) authorizes the PSC to mandate unbundling at regulated rates.  *See* Momentum Br. at 3, 16. Under § 271(c), a BOC applicant for long-distance authority is permitted to establish that it makes available each item on the "competitive checklist" – including unbundled switching – by pointing to "one or more binding agreements that have been approved under section 252."  47 U.S.C. § 271(c)(1)(A), (c)(2).  Because the state commissions "approve[]" agreements "under section 252," Momentum's theory goes, state commissions have the authority to set rates for any element required under § 271, including elements (such as switching) that are *not* required under § 251.  *See* Momentum Br. at 3, 16.

But § 271(c) says nothing about state commission authority *to arbitrate* disputed issues or, even more to the point, *to set rates* for services and facilities required under § 271, which Momentum is seeking here.  Rather, § 271(c) merely provides that a BOC is eligible to seek long-distance relief under § 271 if it has "*entered* into one or more" agreements "that have been *approved* under section 252" and that contain terms and conditions for each item on the

---

[13] Order, *Indiana Utility Regulatory Commission's Investigation of Issues Related to the Implementation of the Federal Communication Commission's Triennial Review Remand Order and the Remaining Portions of the Triennial Review Order*, Cause No. 42857, 2006 Ind. PUC LEXIS 40, at *88 (Ind. Util. Regulatory Comm'n Jan. 11, 2006).

[14] Report and Order, *Verizon-Rhode Island's Filing of February 18, 2005 To Amend Tariff No. 18*, Docket No. 3662, 2005 RI PUC LEXIS 26, at *16 (R.I. Pub. Utils. Comm'n July 28, 2005).

competitive checklist.  47 U.S.C. § 271(c)(1)(A) (emphases added).  That provision is satisfied by (among other things) the existence of a *single*, *voluntarily negotiated* agreement that has been approved by a state commission and under which a BOC makes available the items on the competitive checklist at just and reasonable rates.  On no theory could that limited statutory reference to state commission "approv[al] under section 252" vest authority in the PSC to *arbitrate* disputes and thereby establish terms and conditions, including rates, for *all* § 271 checklist items for *every* CLEC in the state.

For that reason, *no* federal court has adopted the argument that Momentum makes here.  On the contrary, the Missouri federal court expressly rejected it because "[s]ection 271(c)(1) does not . . . provide authority to state commissions to arbitrate disputed terms or to set rates during an arbitration."  Missouri Decision, 2006 U.S. Dist. LEXIS 65536, at *35.  "Instead, the statute limits state commission arbitration and rate-setting authority to items required under § 251," and a BOC such as BellSouth "could satisfy the requirements of § 271(c)(1)(A) by pointing to a single, voluntarily negotiated agreement, approved by a state commission, pursuant to which [the BOC] would make available the items on the competitive checklist, including switching, at a just and reasonable rate."  *Id.*  As a result, "the limited statutory reference to state commission approval under § 252 cannot vest authority in [a state commission] to set the rates for all § 271 checklist items, and is not properly understood as an implied grant of arbitration or rate-making authority."  *Id.*  In accord with this reasoning, the FCC has held, and the D.C. Circuit has affirmed, that the ratesetting authority in § 252(d)(1) is "quite specific" and "*only*

15

*applies* for the purposes of implementation of section 251(c)(3)," and thus gives states no authority to implement § 271.[15]

In support of its federal-law claims, Momentum also notes that the same question presented here – whether state commissions can regulate substantive unbundling requirements under § 271 – has been pending before the FCC for more than two years now.  Momentum Br. at 5, 18-19.  It is difficult to see how that point helps Momentum.  During that two-year period, multiple federal courts and more than a score of state commissions have agreed with BellSouth that states lack the federal-law authority that Momentum claims the states have.  *See supra* pp. 11-14.  Moreover, prior FCC decisions such as the *InterLATA Boundary Order* confirm that the FCC has "sole authority" to implement § 271.  The fact that the FCC has not exercised its "broad discretion"[16] also to issue a declaratory ruling (which is how this question was presented to the FCC, *see* Momentum Br. at 5) in addition to its prior decision does nothing to diminish the persuasive force of these many consistent decisions from the FCC and the federal courts.[17]

_____

[15] *Triennial Review Order* ¶ 657 (emphasis added); *see id.* ¶ 656 ("Where there is no impairment under section 251 . . ., section 271 requires [certain] elements to be unbundled, but not using the statutorily mandated rate under section 252."); *USTA II*, 359 F.3d at 589 ("we see nothing unreasonable in the Commission's decision to confine TELRIC pricing to instances where it has found impairment").

[16] *See* Order, *Petition of Home Owners' Long Distance, Inc. for a Declaratory Ruling*, 14 FCC Rcd 17139, ¶ 12 (1999) ("broad discretion"); *see also* Memorandum Opinion and Order, *Omnipoint Communications, Inc. New York MTA Frequency Block A*, 11 FCC Rcd 10785, 10788, ¶ 7 (1996) ("[t]he Commission has discretionary authority to issue a declaratory ruling."); 5 U.S.C. § 554(e) ("The agency, with like effect as in the case of other orders, *and in its sound discretion, may* issue a declaratory order to terminate a controversy or remove uncertainty.") (emphasis added).

[17] Finally, Momentum claims in a footnote that it is "settled law that state commissions can set rates for elements other than those found in Section 251 in at least one other circumstance," namely, when the issue of § 271 rates is an "open issue" to be resolved under § 252.  Momentum Br. at 16 n.9.  This argument contravenes Eleventh Circuit law, which establishes that the "open issues" that state commissions must decide arise only under § 251.  *See MCI Telecomms.*, 298 F.3d at 1274.  In any event, the case cited by Momentum (*Coserv Ltd. Liab. Corp. v. Southwestern Bell Tel. Co.*, 350 F.3d 482 (5th Cir. 2003)) actually supports

### C.    In Any Event, Momentum's Claims Are Unripe

Independent of these other flaws, Momentum's federal claims are unripe, because the PSC has yet to rule on Momentum's pending petition for reconsideration. *See supra* p. 9.  As federal courts have long recognized, "[a] request for administrative reconsideration renders an agency's otherwise final action non-final with respect to the requesting party," and "subsequent action by the agency on a motion for reconsideration does not ripen the petition for review or secure appellate jurisdiction."[18]  As the D.C. Circuit has said, "[i]f a party determines to seek reconsideration of an agency ruling, it is a pointless waste of judicial energy for the court to process any petition for review before the agency has acted on the request for reconsideration."[19]

## II.    MOMENTUM'S STATE-LAW THEORY IS UNRIPE, INCORRECT, AND IS PREEMPTED IN ANY EVENT

In addition to its federal-law claim, Momentum repeatedly suggests that *state law* allows the PSC to regulate under 47 U.S.C. § 271.  *See* Momentum Br. at 2-5, 8, 17-21.  This theory cannot stand.  *First*, even if this case could proceed as to Momentum's federal-law claim, Momentum's state-law theory is unripe; according to Momentum, the PSC did not address this theory in the first place.  *Second*, state law simply cannot be the sole source of authority to implement a federal statutory provision; such a theory is unprecedented.  *Third*, if the PSC were to issue an order that coincides with Momentum's demands, such an order would crash head-on

---

BellSouth's position here.  That opinion emphasized that a state commission cannot require negotiation of any issues other than those under section 251: "[a]n ILEC is *clearly free to refuse to negotiate any issues other than those it has a duty to negotiate* under the [1996] Act when a CLEC requests negotiation pursuant to §§ 251 and 252."  350 F.3d at 488 (emphasis added).  Thus, because BellSouth has not voluntarily agreed to negotiate over the § 271 issue here, Momentum cannot rely on the *Coserv* case to concoct a way for a state commission to regulate the substantive obligations of § 271, a function that is statutorily reserved to the FCC.

[18] *Clifton Power Corp. v. FERC*, 294 F.3d 108, 110 (D.C. Cir. 2002) (internal quotation marks omitted).

[19] *TeleSTAR, Inc. v. FCC*, 888 F.2d 132, 134 (D.C. Cir. 1989).

into the FCC's orders and policies, and thus would be preempted. *Finally*, the PSC does not even have the state-law authority that Momentum claims, because an Alabama statute prevents the PSC from regulating unbundling in a way that differs from the FCC's own regulations.

### A.    Momentum's Claim Is Unripe

According to Momentum's own theory of the case, the PSC "has yet not [sic] ruled on the state law/preemption question." Momentum Br. at 3; *see also id.* at 17 ("[T]he APSC has not ruled on the issue of whether the agency, acting under state law, may review BellSouth's rates for Section 271 network elements."). Under Momentum's own argument, its claim is unripe for judicial review at this time, as Momentum's "allegations amount to mere speculation about contingent future events." *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1224 (11th Cir. 2004); *see also Thomas v. Union Carbide Agric. Prods. Co*., 473 U.S. 568, 580-81 (1985) (noting that a claim is unripe if it refers to "'contingent future events that may not occur as anticipated, or indeed may not occur at all'") (quoting 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3532 (2d ed. 1984)); *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967); *Konikov v. Orange County*, 410 F.3d 1317, 1322 (11th Cir. 2005) (the purpose of ripeness is to "shield agencies from judicial interaction until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties") (internal quotation marks omitted). Finally, to the extent that Momentum believes that this issue remains before the PSC, Momentum's claim would also "inappropriately interfere with further administrative action," *Beaulieu v. City of Alabaster*, 454 F.3d 1219, 1227 (11th Cir. 2006); *see also Pittman v. Cole*, 267 F.3d 1269, 1279 (11th Cir. 2001).

Thus, Momentum is wrong that this case is an appropriate declaratory judgment action. *See* Momentum Br. at 21-22. The Supreme Court has long cautioned that "[t]he requirements for a justiciable case or controversy are no less strict in a declaratory judgment proceeding than in

any other type of suit," including the rule that a federal court is "not to decide abstract, hypothetical or contingent questions." *Alabama State Fed'n of Labor v. McAdory*, 325 U.S. 450, 461 (1945).

## B.    State Law Cannot Create Federal Jurisdiction

In any event, Momentum's argument is legally without merit. The issue here is whether the state commission has authority to set rates and enforce other requirements for purposes of a provision of *federal* law, § 271. States have no presumed or inherent authority under their own state law to implement such a provision of federal law, and that is particularly clear in the context of the 1996 Act. As the Supreme Court has explained, in the 1996 Act, Congress "unquestionably" took "regulation of local telecommunications competition away from the States" on all "matters addressed by the 1996 Act," including intrastate matters that formerly were within the states' exclusive authority. *Iowa Utils. Bd.*, 525 U.S. at 378 n.6. Even in those few instances where Congress gave authority to state commissions, those commissions' "participation in the administration of the new *federal* regime is to be guided by federal-agency regulations," and the commissions are required to "regulat[e] in accordance with federal policy." *Id.* The 1996 Act "transferred broad authority from state regulators to federal regulators," while leaving only "corners in which the states ha[ve] a role." *Indiana Bell*, 359 F.3d at 497.

In sum, as the Eighth Circuit has explained in language directly relevant here, "[t]he new regime [under the 1996 Act] for regulating competition in this industry is federal in nature and while Congress has chosen to retain a significant role for the state commissions, *the scope of that role is measured by federal, not state, law*." *Southwestern Bell Tel. Co. v. Connect Communications Corp.*, 225 F.3d 942, 947 (8th Cir. 2000) (citation omitted; emphasis added); *see also MCI Telecomms. Corp. v. Illinois Bell Tel. Co.*, 222 F.3d 323, 344 (7th Cir. 2000) (under the 1996 Act, state commissions act as "'deputized' federal regulator[s]").

Given that the federal statute expressly confines states to implementing § 251 and that § 271 does not call for enforcement by state regulatory commissions (*see supra* pp. 10-14), there is no possibility that *state law* could be a separate source of federal authority. Such a theory simply makes no sense, which is why the Eastern District of Missouri, and other federal courts, have expressly rejected the analysis of the one federal court decision that relied upon such a theory and that Momentum highlights here. *See Verizon New England Inc. v. Maine Pub. Utils. Comm'n*, 403 F. Supp. 2d 96 (D. Me. 2005), *appeal docketed*, Docket No. 06-2151 (1st Cir. Aug. 7, 2006). As the Missouri federal court explained, the Maine court's conclusion "is contrary to the FCC's rulings and the decisions of most state commissions, and fails to adequately acknowledge the [1996] Act's transfer of the regulation of local telecommunications competition from the states to the FCC," including the fact that the FCC has "exclusive jurisdiction over the enforcement of [§ 271]." Missouri Decision, 2006 U.S. Dist. LEXIS 65536, at *31, *36.[20]

This reasoning applies with particular force under § 271, given that, even before Congress passed the 1996 Act, the states never had the authority to regulate the terms of long-distance entry. To the contrary, prior to the enactment of § 271 in the 1996 Act, authority to regulate long distance was vested exclusively in the federal courts under the 1982 decree that broke up AT&T.[21] That authority was then replaced by the 1996 Act,[22] and was never available

---

[20] Other federal district courts also expressly rejected the Maine decision. Florida Decision, 2006 U.S. Dist. LEXIS 73511, at *13 n.7 ("In this circuit, a state commission's authority in a § 251 arbitration is only to address issues arising under § 251."); Illinois Decision, 2006 U.S. Dist. LEXIS 70221, at *39 (citing Maine decision, but holding that "SBC has the better argument"); New Hampshire Decision, 2006 U.S. Dist. LEXIS 59339, at *31 n.30 (noting that the Maine "ruling has no bearing on this case, which turns on other issues").

[21] *See United States v. AT&T Corp.*, 552 F. Supp. 131, 225 (D.D.C. 1982) (holding that the court was "vest[ed] [with] authority" "to enforce the provisions and principles" of the decree); *see also United States v. Western Elec. Co.*, 900 F.2d 283, 289, 293-94 (D.C. Cir. 1990) (holding that whether a BOC satisfied "the legal standard" for providing long distance service is "a pure question of law subject to plenary review" in federal court).

to state governments.  Thus, in this context, there can be no inherent state law authority to determine terms and conditions of long-distance entry.

### C.    Momentum's State-Law Claim Is Preempted in Any Event

Even if a state commission could enforce § 271 in some fashion, it could not regulate *rates* thereunder in the way that Momentum desires.  The FCC has determined, and the D.C. Circuit has affirmed, that §§ 201 and 202 of the federal Communications Act establish the standard for assessing the rates at which BOCs provide access to § 271 elements.  *See UNE Remand Order* ¶ 470.  Under those statutes, "the *market price* should prevail" for 271 elements, "*as opposed to* a regulated rate." *Id.* ¶ 473 (emphases added).  Thus, a BOC may satisfy §§ 201 and 202 simply by "demonstrating that the rate for a section 271 network element is at or below the rate at which the BOC offers [any] comparable functions" under its federal tariffs, or "by showing that it has entered into arms-length agreements with other, similarly situated purchasing carriers to provide the element at that rate." *Triennial Review Order* ¶ 664.

The FCC's market-rate requirement – that is, a rate that is freely negotiated between BellSouth and CLECs – would be meaningless if a state commission such as the PSC purported to set a regulated rate upon which CLECs could insist.  Such a state commission determination would squarely conflict with and be preempted by the FCC's conclusion that rates under § 271 should be set by the market, not by a government regulator.  *See*, *e.g.*, *Geier v. American Honda Motor Co.*, 529 U.S. 861, 872, 881 (2000).[23]

---

[22] 1996 Act § 601(a) (codified at 47 U.S.C. § 152 note) ("[a]ny conduct or activity" that had been "subject to any restriction or obligation imposed by the [MFJ] shall" instead "be subject to the restrictions and obligations imposed by the Communications Act of 1934").

[23] The case cited by Momentum (at 4) merely points out that the 1996 Act did not "completely" preempt the entire field of telecommunications regulation, *see BellSouth Telecomms., Inc. v. NuVox Communications*, No. 1:04-CV-2790-WSD, 2006 WL 2617123, at *10 (N.D. Ga. Sept. 12, 2006), but that case does not have anything to do with a state's alleged

In this regard, although Momentum contends that there is no conflict between state law and federal law here, because both sets of law require "just and reasonable" rates, *see* Momentum Br. at 3; *id.* at 4 (same), 17 (same), it ignores the FCC's specific finding that, in this instance, a just and reasonable rate should be one established by market negotiation, not regulatory fiat. *See* Missouri Decision, 2006 U.S. Dist. LEXIS 65536, at *27 (rejecting Missouri commission argument that it "had authority to enforce the FCC's 'just and reasonable' pricing standard for § 271 UNEs").[24]

Independently, Momentum's attempt to seek regulated rates here is inherently in conflict with the FCC's decision to eliminate the anticompetitive UNE Platform, under which competitors could lease access to the entire telephone network in one fell swoop. *See BellSouth*, 425 F.3d at 970 (noting that the UNE Platform is a relic of "an earlier regulatory scheme now repudiated by the FCC"). As explained above, the FCC's *Order on Remand* established a "nationwide bar" on unbundled switching and UNE Platform obligations. *Order on Remand* ¶ 204. Competitors are therefore "not permit[ted]" to place new orders for unbundled switching and the UNE Platform as of the order's March 11, 2005 effective date. *Id.* ¶ 199. The FCC's order, which is binding on the PSC and this Court,[25] thus forecloses CLECs from using the UNE Platform to obtain any new customers after March 11, 2005. But this is exactly what Momentum has as its aim: the right to order § 271 switching at regulated rates pre-combined with other

---

authority to regulate under 47 U.S.C. § 271. Neither does *Michigan Bell Telephone Co. v. MCImetro Access Transmission Services, Inc.*, 323 F.3d 348 (6th Cir. 2003) (cited in Momentum Br. at 19).

[24] *See also* New Hampshire Decision, 2006 U.S. Dist. LEXIS 59339, at *34 n.33 ("The PUC's § 271 unbundling orders are invalid even if the PUC has the power to set § 271 UNE rates because it has used its purported power in a way that conflicts with federal law.").

[25] *See, e.g.*, *Vonage Holdings Corp. v. Minnesota Pub. Utils. Comm'n*, 394 F.3d 568, 569 (8th Cir. 2004).

facilities, effectively creating the UNE Platform once again, and thus conflicting with the federal regulatory scheme.

Although Momentum claims that its requested relief is justified because the "primary objective of the [1996 Act] has been to open the telecommunications markets to effective competition," Momentum Br. at 20, that is wrong for multiple reasons.  First, Momentum's demands are inconsistent with the FCC's chosen *method* of promoting competition, *i.e.*, using "market" rates rather than regulated rates.  Under established federal precedent, states are preempted from contradicting the federal regulatory method, even if the state purports to have the same aim in mind.  *See Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 155 (1982); *Geier*, 529 U.S. at 872, 881.  Second, and independently, Momentum's argument ignores the fact that the FCC has determined that the type of competition the 1996 Act intends to promote is "genuine, facilities-based competition," *Order on Remand* ¶ 218, *not* reliance on access to ILEC facilities at regulated rates.  Indeed, it was largely because the UNE Platform hindered such genuine competition that the FCC has banned it.  *See id.* Momentum's desired result is directly contrary to the FCC's expert judgment, and the method of "competition" on which it seeks to rely is precisely what the FCC and the federal courts have concluded is contrary to federal law and policy.  *See USTA II*, 359 F.3d at 576 ("[T]he purpose of the [1996] Act is not to provide the widest possible unbundling, or to guarantee competitors access to ILEC network elements at the lowest price that government may lawfully mandate.  Rather, its purpose is to stimulate competition – preferably genuine, facilities-based competition."); *BellSouth*, 425 F.3d at 969 (citing approvingly the FCC's finding that "continued use of the [UNE Platform] was contrary to the public interest, because it 'hindered . . . genuine, facilities-based competition'") (quoting *Order on Remand* ¶ 218).

Momentum next attempts to rely on one of the 1996 Act's savings clauses – 47 U.S.C. § 251(d)(3) – which provides that state commissions still have authority over "access and interconnection obligations" of local telephone companies as long as the obligations are "'consistent with'" the Act and do not "'substantially prevent implementation'" of the Act. *See* Momentum Br. at 4 (quoting 47 U.S.C. § 251(d)(3)). As an initial matter, § 251(d)(3) preserves state regulations *only* if they are both "consistent" with federal law and do "not substantially prevent implementation of the requirements of this section and the purposes of this part." 47 U.S.C. § 251(d)(3). But Momentum is seeking a state commission order that *would* be "inconsistent" with and *would* "substantially prevent implementation" of the FCC's regulatory scheme, because, as noted above, the FCC has determined that "market rates" should apply under § 271. For that reason, the Missouri federal district court actually relied on § 251(d)(3) in holding that the Missouri commission was preempted from setting rates under § 271. *See* Missouri Decision, 2006 U.S. Dist. LEXIS 65536, at *40 (holding that the state order "conflicts with substantive restrictions the FCC has placed on UNE access, and accordingly is preempted. *See* 47 U.S.C. §§ 251(d)(3), 261(b)-(c) (precluding state commission actions that are not 'consistent' with federal law).").

Finally, Momentum claims that it would be "absurd" as a practical matter "to seek the FCC's intervention on setting rates for each Section 271 element for each BOC-CLEC pair for each of the 50 states." Momentum Br. at 21. "Those decisions are better left . . . to state commissions that are already experienced in the setting of rates for network elements within their jurisdictions." *Id.* But Momentum is battling a straw-man. Given that the FCC has already ruled that § 271 rates should be set by the "market" rather than by regulation, *see UNE Remand Order* ¶ 473, neither the FCC nor anyone else needs to regulate § 271 rates for every "BOC-

24

CLEC pair" in the country. If there are particular issues that require the FCC's intervention, however, competitors are free to file complaints at the federal agency (as Momentum previously did, before it withdrew it), and the federal agency must resolve them in 90 days.

### D.    Alabama Law Does Not Authorize Momentum's Requested Relief

While Momentum claims that the PSC could rely on Alabama law in order to regulate rates under § 271, Alabama law already explicitly forbids such relief. The PSC cannot "require . . . carriers to unbundle in a manner that *exceeds in degree or differs in kind* from the unbundling requirements of the Federal Communications Commission." Ala. Code § 37-2A-4(b) (2005) (emphasis added).[26] As explained above, the FCC has determined that "market rates" should apply to elements provided under that section. *See UNE Remand Order* ¶ 473. Accordingly, even apart from the fact that federal law preempts state law, Alabama law itself would not provide the authority to contradict the FCC's judgments here.

### CONCLUSION

The Court should grant BellSouth's motion for summary judgment, and it should deny Momentum's complaint for a declaratory judgment.

Respectfully submitted,

s/ Francis B. Semmes_____

FRANCIS B. SEMMES (SEM002)

OF COUNSEL:
BELLSOUTH TELECOMMUNICATIONS, INC.
Suite 28A2
600 No. 19th Street
Birmingham, AL 35203
(205) 714-0556

---

[26] Thus, Momentum's citations to other Alabama statutes or precedents are irrelevant. *See* Momentum Br. at 17.

OF COUNSEL:
Steiner, Crum & Byars, P.C.
Post Office Box 668
Montgomery, AL 36101
(334) 832-8800

s/ Walter R. Byars_____
WALTER R. BYARS (BYA002)

OF COUNSEL:
Kellogg, Huber, Hansen, Todd,
  Evans & Figel, P.L.L.C.
Suite 400
1615 M Street, N.W.
Washington, D.C. 20036
(202) 326-7975

s/Sean A. Lev_____
SEAN A. LEV (D.C. Bar # 449936)

Attorneys for Intervenor Bellsouth
Telecommunications, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon the following listed persons by CM/ECF electronic filing, this 24th day of October, 2006.

George Scott Morris
Alabama Public Service Commission
100 N. Union Street
Suite 836
Montgomery, AL  36103

George H. Nolan
Henry M. Walker
Jonathan D. Rose
Boult, Cummings, Conners & Berry, PLC
1600 Division Street
Suite 700
P.O. Box 340025
Nashville, TN  37205

James H. McLemore
Capell Howard PC
PO Box 2069
Montgomery, AL  36102-2069

s/ Walter R. Byars
_____
WALTER R. BYARS (BYA002)