# STATUTORY ADDENDUM

47 U.S.C. § 251.................................................................................................Add. 1

47 U.S.C. § 252.................................................................................................Add. 8

47 U.S.C. § 271.................................................................................................Add. 15

**47 U.S.C. § 251.  Interconnection**

**(a) General duty of telecommunications carriers**

Each telecommunications carrier has the duty—

    **(1)** to interconnect directly or indirectly with the facilities and equipment of other telecommunications carriers; and

    **(2)** not to install network features, functions, or capabilities that do not comply with the guidelines and standards established pursuant to section 255 or 256 of this title.

**(b) Obligations of all local exchange carriers**

Each local exchange carrier has the following duties:

    **(1) Resale**

    The duty not to prohibit, and not to impose unreasonable or discriminatory conditions or limitations on, the resale of its telecommunications services.

    **(2) Number portability**

    The duty to provide, to the extent technically feasible, number portability in accordance with requirements prescribed by the Commission.

    **(3) Dialing parity**

    The duty to provide dialing parity to competing providers of telephone exchange service and telephone toll service, and the duty to permit all such providers to have nondiscriminatory access to telephone numbers, operator services, directory assistance, and directory listing, with no unreasonable dialing delays.

    **(4) Access to rights-of-way**

    The duty to afford access to the poles, ducts, conduits, and rights-of-way of such carrier to competing providers of telecommunications services on rates, terms, and conditions that are consistent with section 224 of this title.

    **(5) Reciprocal compensation**

    The duty to establish reciprocal compensation arrangements for the transport and termination of telecommunications.

**(c) Additional obligations of incumbent local exchange carriers**

In addition to the duties contained in subsection (b), each incumbent local exchange carrier has the following duties:

**(1) Duty to negotiate**

The duty to negotiate in good faith in accordance with section 252 the particular terms and conditions of agreements to fulfill the duties described in paragraphs (1) through (5) of subsection (b) and this subsection.  The requesting telecommunications carrier also has the duty to negotiate in good faith the terms and conditions of such agreements.

**(2) Interconnection**

The duty to provide, for the facilities and equipment of any requesting telecommunications carrier, interconnection with the local exchange carrier's network—

**(A)** for the transmission and routing of telephone exchange service and exchange access;

**(B)** at any technically feasible point within the carrier's network;

**(C)** that is at least equal in quality to that provided by the local exchange carrier to itself or to any subsidiary, affiliate, or any other party to which the carrier provides interconnection; and

**(D)** on rates, terms, and conditions that are just, reasonable, and nondiscriminatory, in accordance with the terms and conditions of the agreement and the requirements of this section and section 252 of this title.

**(3) Unbundled access**

The duty to provide, to any requesting telecommunications carrier for the provision of a telecommunications service, nondiscriminatory access to network elements on an unbundled basis at any technically feasible point on rates, terms, and conditions that are just, reasonable, and nondiscriminatory in accordance with the terms and conditions of the agreement and the requirements of this section and section 252 of this title.  An incumbent local exchange carrier shall provide such unbundled network elements in a manner that allows requesting carriers to combine such elements in order to provide such telecommunications service.

**(4) Resale**

The duty—

**(A)** to offer for resale at wholesale rates any telecommunications service that the carrier provides at retail to subscribers who are not telecommunications carriers; and

**(B)** not to prohibit, and not to impose unreasonable or discriminatory conditions or limitations on, the resale of such telecommunications service, except that a State commission may, consistent with regulations prescribed by the Commission under this section, prohibit a reseller that obtains at wholesale rates a telecommunications service that is available at retail only to a category of subscribers from offering such service to a different category of subscribers.

**(5) Notice of changes**

The duty to provide reasonable public notice of changes in the information necessary for the transmission and routing of services using that local exchange carrier's facilities or networks, as well as of any other changes that would affect the interoperability of those facilities and networks.

**(6) Collocation**

The duty to provide, on rates, terms, and conditions that are just, reasonable, and nondiscriminatory, for physical collocation of equipment necessary for interconnection or access to unbundled network elements at the premises of the local exchange carrier, except that the carrier may provide for virtual collocation if the local exchange carrier demonstrates to the State commission that physical collocation is not practical for technical reasons or because of space limitations.

**(d) Implementation**

**(1) In general**

Within 6 months after the date of enactment of the Telecommunications Act of 1996, the Commission shall complete all actions necessary to establish regulations to implement the requirements of this section.

**(2) Access standards**

In determining what network elements should be made available for purposes of subsection (c)(3) of this section, the Commission shall consider, at a minimum, whether—

**(A)** access to such network elements as are proprietary in nature is necessary; and

Add. 3

**(B)** the failure to provide access to such network elements would impair the ability of the telecommunications carrier seeking access to provide the services that it seeks to offer.

### (3) Preservation of State access regulations

In prescribing and enforcing regulations to implement the requirements of this section, the Commission shall not preclude the enforcement of any regulation, order, or policy of a State commission that—

**(A)** establishes access and interconnection obligations of local exchange carriers;

**(B)** is consistent with the requirements of this section; and

**(C)** does not substantially prevent implementation of the requirements of this section and the purposes of this part.

### (e) Numbering administration.

#### (1) Commission authority and jurisdiction.

The Commission shall create or designate one or more impartial entities to administer telecommunications numbering and to make such numbers available on an equitable basis. The Commission shall have exclusive jurisdiction over those portions of the North American Numbering Plan that pertain to the United States. Nothing in this paragraph shall preclude the Commission from delegating to State commissions or other entities all or any portion of such jurisdiction.

#### (2) Costs.

The cost of establishing telecommunications numbering administration arrangements and number portability shall be borne by all telecommunications carriers on a competitively neutral basis as determined by the Commission.

#### (3) Universal emergency telephone number.

The Commission and any agency or entity to which the Commission has delegated authority under this subsection shall designate 9-1-1 as the universal emergency telephone number within the United States for reporting an emergency to appropriate authorities and requesting assistance. The designation shall apply to both wireline and wireless telephone service. In making the designation, the Commission (and any such agency or entity) shall provide appropriate transition periods for areas in which 9-1-1 is not in use as an emergency telephone number on October 26, 1999.

**(f) Exemptions, suspensions, and modifications**

    **(1) Exemption for certain rural telephone companies**

        **(A) Exemption**

        Subsection (c) of this section shall not apply to a rural telephone company until (i) such company has received a bona fide request for interconnection, services, or network elements, and (ii) the State commission determines (under subparagraph (B)) that such request is not unduly economically burdensome, is technically feasible, and is consistent with section 254 of this title (other than subsections (b)(7) and (c)(1)(D) thereof).

        **(B) State termination of exemption and implementation schedule**

        The party making a bona fide request of a rural telephone company for interconnection, services, or network elements shall submit a notice of its request to the State commission.  The State commission shall conduct an inquiry for the purpose of determining whether to terminate the exemption under subparagraph (A).  Within 120 days after the State commission receives notice of the request, the State commission shall terminate the exemption if the request is not unduly economically burdensome, is technically feasible, and is consistent with section 254 of this title (other than subsections (b)(7) and (c)(1)(D) thereof).  Upon termination of the exemption, a State commission shall establish an implementation schedule for compliance with the request that is consistent in time and manner with Commission regulations.

        **(C) Limitation on exemption**

        The exemption provided by this paragraph shall not apply with respect to a request under subsection (c) from a cable operator providing video programming, and seeking to provide any telecommunications service, in the area in which the rural telephone company provides video programming.  The limitation contained in this subparagraph shall not apply to a rural telephone company that is providing video programming February 8, 1996.

    **(2) Suspensions and modifications for rural carriers**

  A local exchange carrier with fewer than 2 percent of the Nation's subscriber lines installed in the aggregate nationwide may petition a State commission for a suspension or modification of the application of a requirement or requirements of subsection (b) or (c) of this section to telephone exchange service facilities specified in such petition.  The State commission shall grant such petition to the extent that, and for such duration as, the State commission determines that such suspension or modification—

**(A)** is necessary—

**(i)** to avoid a significant adverse economic impact on users of telecommunications services generally;

**(ii)** to avoid imposing a requirement that is unduly economically burdensome; or

**(iii)** to avoid imposing a requirement that is technically infeasible; and

**(B)** is consistent with the public interest, convenience, and necessity.

The State commission shall act upon any petition filed under this paragraph within 180 days after receiving such petition. Pending such action, the State commission may suspend enforcement of the requirement or requirements to which the petition applies with respect to the petitioning carrier or carriers.

**(g) Continued enforcement of exchange access and interconnection requirements**

On and after February 8, 1996, each local exchange carrier, to the extent that it provides wireline services, shall provide exchange access, information access, and exchange services for such access to interexchange carriers and information service providers in accordance with the same equal access and nondiscriminatory interconnection restrictions and obligations (including receipt of compensation) that apply to such carrier on the date immediately preceding February 8, 1996 under any court order, consent decree, or regulation, order, or policy of the Commission, until such restrictions and obligations are explicitly superseded by regulations prescribed by the Commission after February 8, 1996. During the period beginning on February 8, 1996 and until such restrictions and obligations are so superseded, such restrictions and obligations shall be enforceable in the same manner as regulations of the Commission.

**(h) Definition of incumbent local exchange carrier**

**(1) Definition**

For purposes of this section, the term "incumbent local exchange carrier" means, with respect to an area, the local exchange carrier that—

**(A)** on February 8, 1996, provided telephone exchange service in such area; and

**(B) (i)** on February 8, 1996, was deemed to be a member of the exchange carrier association pursuant to section 69.601(b) of the Commission's regulations (47 C.F.R. 69.601(b)); or

**(ii)** is a person or entity that, on or after February 8, 1996, became a successor or assign of a member described in clause (i).

**(2) Treatment of comparable carriers as incumbents**

The Commission may, by rule, provide for the treatment of a local exchange carrier (or class or category thereof) as an incumbent local exchange carrier for purposes of this section if—

**(A)** such carrier occupies a position in the market for telephone exchange service within an area that is comparable to the position occupied by a carrier described in paragraph (1);

**(B)** such carrier has substantially replaced an incumbent local exchange carrier described in paragraph (1); and

**(C)** such treatment is consistent with the public interest, convenience, and necessity and the purposes of this section.

**(i) Savings provision**

Nothing in this section shall be construed to limit or otherwise affect the Commission's authority under section 201 of this title.

**47 U.S.C. § 252.  Procedures for negotiation, arbitration, and approval of agreements**

**(a) Agreements arrived at through negotiation**

**(1) Voluntary negotiations**

Upon receiving a request for interconnection, services, or network elements pursuant to section 251 of this title, an incumbent local exchange carrier may negotiate and enter into a binding agreement with the requesting telecommunications carrier or carriers without regard to the standards set forth in subsections (b) and (c) of section 251 of this title.  The agreement shall include a detailed schedule of itemized charges for interconnection and each service or network element included in the agreement.  The agreement, including any interconnection agreement negotiated before February 8, 1996, shall be submitted to the State commission under subsection (e) of this section.

**(2) Mediation**

Any party negotiating an agreement under this section may, at any point in the negotiation, ask a State commission to participate in the negotiation and to mediate any differences arising in the course of the negotiation.

**(b) Agreements arrived at through compulsory arbitration**

**(1) Arbitration**

During the period from the 135th to the 160th day (inclusive) after the date on which an incumbent local exchange carrier receives a request for negotiation under this section, the carrier or any other party to the negotiation may petition a State commission to arbitrate any open issues.

**(2) Duty of petitioner**

**(A)** A party that petitions a State commission under paragraph (1) shall, at the same time as it submits the petition, provide the State commission all relevant documentation concerning—

**(i)** the unresolved issues;

**(ii)** the position of each of the parties with respect to those issues; and

**(iii)** any other issue discussed and resolved by the parties.

**(B)** A party petitioning a State commission under paragraph (1) shall provide a copy of the petition and any documentation to the other party or parties not later than the day on which the State commission receives the petition.

**(3) Opportunity to respond**

 A non-petitioning party to a negotiation under this section may respond to the other party's petition and provide such additional information as it wishes within 25 days after the State commission receives the petition.

**(4) Action by State commission**

 **(A)** The State commission shall limit its consideration of any petition under paragraph (1) (and any response thereto) to the issues set forth in the petition and in the response, if any, filed under paragraph (3).

 **(B)** The State commission may require the petitioning party and the responding party to provide such information as may be necessary for the State commission to reach a decision on the unresolved issues.  If any party refuses or fails unreasonably to respond on a timely basis to any reasonable request from the State commission, then the State commission may proceed on the basis of the best information available to it from whatever source derived.

 **(C)** The State commission shall resolve each issue set forth in the petition and the response, if any, by imposing appropriate conditions as required to implement subsection (c) upon the parties to the agreement, and shall conclude the resolution of any unresolved issues not later than 9 months after the date on which the local exchange carrier received the request under this section.

**(5) Refusal to negotiate**

 The refusal of any other party to the negotiation to participate further in the negotiations, to cooperate with the State commission in carrying out its function as an arbitrator, or to continue to negotiate in good faith in the presence, or with the assistance, of the State commission shall be considered a failure to negotiate in good faith.

**(c) Standards for arbitration**

 In resolving by arbitration under subsection (b) of this section any open issues and imposing conditions upon the parties to the agreement, a State commission shall—

 **(1)** ensure that such resolution and conditions meet the requirements of section 251 of this title, including the regulations prescribed by the Commission pursuant to section 251 of this title;

 **(2)** establish any rates for interconnection, services, or network elements according to subsection (d); and

 **(3)** provide a schedule for implementation of the terms and conditions by the parties to the agreement.

**(d) Pricing standards**

**(1) Interconnection and network element charges**

Determinations by a State commission of the just and reasonable rate for the interconnection of facilities and equipment for purposes of subsection (c)(2) of section 251 of this title, and the just and reasonable rate for network elements for purposes of subsection (c)(3) of such section—

**(A)** shall be—

**(i)** based on the cost (determined without reference to a rate-of-return or other rate-based proceeding) of providing the interconnection or network element (whichever is applicable), and

**(ii)** nondiscriminatory, and

**(B)** may include a reasonable profit.

**(2) Charges for transport and termination of traffic**

**(A) In general**

For the purposes of compliance by an incumbent local exchange carrier with section 251(b)(5) of this title, a State commission shall not consider the terms and conditions for reciprocal compensation to be just and reasonable unless—

**(i)** such terms and conditions provide for the mutual and reciprocal recovery by each carrier of costs associated with the transport and termination on each carrier's network facilities of calls that originate on the network facilities of the other carrier; and

**(ii)** such terms and conditions determine such costs on the basis of a reasonable approximation of the additional costs of terminating such calls.

**(B) Rules of construction**

This paragraph shall not be construed—

**(i)** to preclude arrangements that afford the mutual recovery of costs through the offsetting of reciprocal obligations, including arrangements that waive mutual recovery (such as bill-and-keep arrangements); or

**(ii)** to authorize the Commission or any State commission to engage in any rate regulation proceeding to establish with particularity the additional

Add. 10

costs of transporting or terminating calls, or to require carriers to maintain records with respect to the additional costs of such calls.

**(3) Wholesale prices for telecommunications services**

For the purposes of section 251(c)(4) of this title, a State commission shall determine wholesale rates on the basis of retail rates charged to subscribers for the telecommunications service requested, excluding the portion thereof attributable to any marketing, billing, collection, and other costs that will be avoided by the local exchange carrier.

**(e) Approval by State commission**

**(1) Approval required**

Any interconnection agreement adopted by negotiation or arbitration shall be submitted for approval to the State commission. A State commission to which an agreement is submitted shall approve or reject the agreement, with written findings as to any deficiencies.

**(2) Grounds for rejection**

The State commission may only reject—

**(A)** an agreement (or any portion thereof) adopted by negotiation under subsection (a) if it finds that—

**(i)** the agreement (or portion thereof) discriminates against a telecommunications carrier not a party to the agreement; or

**(ii)** the implementation of such agreement or portion is not consistent with the public interest, convenience, and necessity; or

**(B)** an agreement (or any portion thereof) adopted by arbitration under subsection (b) if it finds that the agreement does not meet the requirements of section 251 of this title, including the regulations prescribed by the Commission pursuant to section 251 of this title, or the standards set forth in subsection (d) of this section.

**(3) Preservation of authority**

Notwithstanding paragraph (2), but subject to section 253 of this title, nothing in this section shall prohibit a State commission from establishing or enforcing other requirements of State law in its review of an agreement, including requiring compliance with intrastate telecommunications service quality standards or requirements.

**(4) Schedule for decision**

    If the State commission does not act to approve or reject the agreement within 90 days after submission by the parties of an agreement adopted by negotiation under subsection (a) of this section, or within 30 days after submission by the parties of an agreement adopted by arbitration under subsection (b) of this section, the agreement shall be deemed approved. No State court shall have jurisdiction to review the action of a State commission in approving or rejecting an agreement under this section.

**(5) Commission to act if State will not act**

    If a State commission fails to act to carry out its responsibility under this section in any proceeding or other matter under this section, then the Commission shall issue an order preempting the State commission's jurisdiction of that proceeding or matter within 90 days after being notified (or taking notice) of such failure, and shall assume the responsibility of the State commission under this section with respect to the proceeding or matter and act for the State commission.

**(6) Review of State commission actions**

    In a case in which a State fails to act as described in paragraph (5), the proceeding by the Commission under such paragraph and any judicial review of the Commission's actions shall be the exclusive remedies for a State commission's failure to act. In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section.

**(f) Statements of generally available terms**

**(1) In general**

    A Bell operating company may prepare and file with a State commission a statement of the terms and conditions that such company generally offers within that State to comply with the requirements of section 251 of this title and the regulations thereunder and the standards applicable under this section.

**(2) State commission review**

    A State commission may not approve such statement unless such statement complies with subsection (d) of this section and section 251 of this title and the regulations thereunder. Except as provided in section 253 of this title, nothing in this section shall prohibit a State commission from establishing or enforcing other requirements of State law in its review of such statement, including requiring compliance with intrastate telecommunications service quality standards or requirements.

**(3) Schedule for review**

The State commission to which a statement is submitted shall, not later than 60 days after the date of such submission—

**(A)** complete the review of such statement under paragraph (2) (including any reconsideration thereof), unless the submitting carrier agrees to an extension of the period for such review; or

**(B)** permit such statement to take effect.

**(4) Authority to continue review**

Paragraph (3) shall not preclude the State commission from continuing to review a statement that has been permitted to take effect under subparagraph (B) of such paragraph or from approving or disapproving such statement under paragraph (2).

**(5) Duty to negotiate not affected**

The submission or approval of a statement under this subsection shall not relieve a Bell operating company of its duty to negotiate the terms and conditions of an agreement under section 251 of this title.

**(g) Consolidation of State proceedings**

Where not inconsistent with the requirements of this Act, a State commission may, to the extent practical, consolidate proceedings under sections 214(e), 251(f), 253 of this title, and this section in order to reduce administrative burdens on telecommunications carriers, other parties to the proceedings, and the State commission in carrying out its responsibilities under this Act.

**(h) Filing required**

A State commission shall make a copy of each agreement approved under subsection (e) of this section and each statement approved under subsection (f) of this section available for public inspection and copying within 10 days after the agreement or statement is approved.  The State commission may charge a reasonable and nondiscriminatory fee to the parties to the agreement or to the party filing the statement to cover the costs of approving and filing such agreement or statement.

**(i) Availability to other telecommunications carriers**

A local exchange carrier shall make available any interconnection, service, or network element provided under an agreement approved under this section to which it is a party to any other requesting telecommunications carrier upon the same terms and conditions as those provided in the agreement.

**(j) "Incumbent local exchange carrier" defined**

For purposes of this section, the term "incumbent local exchange carrier" has the meaning provided in section 251(h) of this title.

**47 U.S.C. § 271.  Bell operating company entry into interLATA services**

**(a) General limitation**

   Neither a Bell operating company, nor any affiliate of a Bell operating company, may provide interLATA services except as provided in this section.

**(b) InterLATA services to which this section applies**

   **(1) In-region services**

      A Bell operating company, or any affiliate of that Bell operating company, may provide interLATA services originating in any of its in-region States (as defined in subsection (i) of this section) if the Commission approves the application of such company for such State under subsection (d)(3) of this section.

   **(2) Out-of-region services**

      A Bell operating company, or any affiliate of that Bell operating company, may provide interLATA services originating outside its in-region States after February 8, 1996, subject to subsection (j) of this section.

   **(3) Incidental interLATA services**

      A Bell operating company, or any affiliate of a Bell operating company, may provide incidental interLATA services (as defined in subsection (g) of this section) originating in any State after February 8, 1996.

   **(4) Termination**

      Nothing in this section prohibits a Bell operating company or any of its affiliates from providing termination for interLATA services, subject to subsection (j) of this section.

**(c)  Requirements for providing certain in-region interLATA services**

   **(1) Agreement or statement**

      A Bell operating company meets the requirements of this paragraph if it meets the requirements of subparagraph (A) or subparagraph (B) of this paragraph for each State for which the authorization is sought.

**(A) Presence of a facilities-based competitor**

  A Bell operating company meets the requirements of this subparagraph if it has entered into one or more binding agreements that have been approved under section 252 of this title specifying the terms and conditions under which the Bell operating company is providing access and interconnection to its network facilities for the network facilities of one or more unaffiliated competing providers of telephone exchange service (as defined in section 153(47)(A) of this title, but excluding exchange access) to residential and business subscribers.  For the purpose of this subparagraph, such telephone exchange service may be offered by such competing providers either exclusively over their own telephone exchange service facilities in combination with the resale of the telecommunications services of another carrier.  For the purpose of this subparagraph, services provided pursuant to subpart K of part 22 of the Commission's regulations (47 C.F.R. 22.901 et seq.) shall not be considered to be telephone exchange services.

**(B) Failure to request access**

  A Bell operating company meets the requirements of this subparagraph if, after 10 months after February 8, 1996, no such provider has requested the access and interconnection described in subparagraph (A) before the date which is 3 months before the date the company makes its application under subsection (d)(1) of this section, and a statement of the terms and conditions that the company generally offers to provide such access and interconnection has been approved or permitted to take effect by the State commission under section 252(f) of this title.  For purposed of this subparagraph, a Bell operating company shall be considered not to have received any request for access and interconnection if the State commission of such State certifies that the only provider or providers making such a request have (i) failed to negotiate in good faith as required by section 252 of this title, or (ii) violated the terms of an agreement approved under section 252 of this title by the provider's failure to comply, within a reasonable period of time, with the implementation schedule contained in such an agreement.

**(2) Specific interconnection agreements**

**(A) Agreement required**

  A Bell operating company meets the requirements of this paragraph if, within the State for which the authorization is sought—

    **(i)(I)** such company is providing access and interconnection pursuant to one or more agreements described in paragraph (1)(A), or

    **(II)** such company is generally offering access and interconnection pursuant to a statement described in paragraph (1)(B), and

**(ii)** such access and interconnection meets the requirements of subparagraph (B) of this paragraph.

**(B) Competitive checklist**

Access or interconnection provided or generally offered by a Bell operating company to other telecommunications carriers meets the requirements of this subparagraph if such access and interconnection includes each of the following:

**(i)** Interconnection in accordance with the requirements of sections 251(c)(2) and 252(d)(1) of this title.

**(ii)** Nondiscriminatory access to network elements in accordance with the requirements of sections 251(c)(3) and 252(d)(1) of this title.

**(iii)** Nondiscriminatory access to the poles, ducts, conduits, and rights-of-way owned or controlled by the Bell operating company at just and reasonable rates in accordance with the requirements of section 224 of this title.

**(iv)** Local loop transmission from the central office to the customer's premises, unbundled fro local switching or other services.

**(v)** Local transport from the trunk side of a wireline local exchange carrier switch unbundled from switching or other services.

**(vi)** Nondiscriminatory access to—

    **(I)** 911 and E911 services;

    **(II)** directory assistance services to allow the other carrier's customers to obtain telephone numbers; and

    **(III)** operator call completion services.

**(viii)** White pages directory listings for customers of the other carrier's telephone exchange service.

**(ix)** Until the date by which telecommunications numbering administration guidelines, plan, or rules are established, nondiscriminatory access to telephone numbers for assignment to the other carrier's telephone exchange service customers. After that date, compliance with such guidelines, plan, or rules.

**(x)** Nondiscriminatory access to databases and associated signaling necessary for call routing and completion.

**(xi)** Until the date by which the Commission issues regulations pursuant to section 251 of this title to require number portability, interim telecommunications number portability through remote call forwarding, direct inward dialing trunks, or other comparable arrangements, with as little impairment of functioning, quality, reliability, and convenience as possible. After that date, full compliance with such regulations.

**(xii)** Nondiscriminatory access to such services or information as are necessary to allow the requesting carrier to implement local dialing parity in accordance with the requirements of section 251(b)(3) of this title.

**(xiii)** Reciprocal compensation arrangements in accordance with the requirements of section 252(d)(2) of this title.

**(xiv)** Telecommunications services are available for resale in accordance with the requirements of sections 251(c)(4) and 252(d)(3) of this title.

**(d) Administrative provisions**

**(1) Application to Commission**

On and after February 8, 1996, a Bell operating company or its affiliate may apply to the Commission for authorization to provide interLATA services originating in any in-region State. The application shall identify each State for which the authorization is sought.

**(2) Consultation**

**(A) Consultation with the Attorney General**

The Commission shall notify the Attorney General promptly of any application under paragraph (1). Before making any determination under this subsection, the Commission shall consult with the Attorney General, and if the Attorney General submits any comments in writing, such comments shall be included in the record of the Commission's decision. In consulting with and submitting comments to the Commission under this paragraph, the Attorney General shall provide to the Commission an evaluation of the application using any standard the Attorney General considers appropriate. The Commission shall give substantial weight to the Attorney General's evaluation, but such evaluation shall not have any preclusive effect on any Commission decision under paragraph (3).

**(B) Consultation with State commissions**

Before making any determination under this subsection, the Commission shall consult with the State commission of any State that is the subject of the application in order to verify the compliance of the Bell operating company with the requirements of subsection (c) of this section.

**(3) Determination**

Not later than 90 days after receiving an application under paragraph (1), the Commission shall issue a written determination approving or denying the authorization requested in the application for each State. The Commission shall not approve the authorization requested in an application submitted under paragraph (1) unless it finds that—

**(A)** the petitioning Bell operating company has met the requirements of subsection (c)(1) of this section and—

**(i)** with respect to access and interconnection provided pursuant to subsection (c)(1)(A) of this section, has fully implemented the competitive checklist in subsection (c)(2)(B) of this section; or

**(ii)** with respect to access and interconnection generally offered pursuant to a statement under subsection (c)(1)(B) of this section, such statement offers all of the items included in the competitive checklist in subsection (c)(2)(B) of this section;

**(B)** the requested authorization will be carried out in accordance with the requirements of section 272 of this title; and

**(C)** the requested authorization is consistent with the public interest, convenience, and necessity.

The Commission shall state the basis for its approval or denial of the application.

**(4) Limitation on Commission**

The Commission may not, by rule or otherwise, limit or extend the terms used in the competitive checklist set forth in subsection (c)(2)(B) of this section.

**(5) Publication**

Not later than 10 days after issuing a determination under paragraph (3), the Commission shall publish in the Federal Register a brief description of the determination.

**(6) Enforcement of conditions**

**(A) Commission authority**

If at any time after the approval of an application under paragraph (3), the Commission determines that a Bell operating company has ceased to meet any of the conditions required for such approval, the Commission may, after notice and opportunity for a hearing—

**(i)** issue an order to such company to correct the deficiency;

**(ii)** impose a penalty on such company pursuant to subchapter V of this chapter; or

**(iii)** suspend or revoke such approval.

**(B) Receipt and review of complaints**

The Commission shall establish procedures for the review of complaints concerning failures by Bell operating companies to meet conditions required for approval under paragraph (3). Unless the parties otherwise agree, the Commission shall act on such complaint within 90 days.

**(e) Limitations**

**(1) Joint marketing of local and long distance services**

Until a Bell operating company is authorized pursuant to subsection (d) of this section to provide interLATA services in an in-region State, or until 36 months have passed since February 8, 1996, whichever is earlier, a telecommunications carrier that serves greater than 5 percent of the Nation's presubscribed access lines may not jointly market in such State telephone exchange service obtained from such company pursuant to section 251(c)(4) of this title with interLATA services offered by that telecommunications carrier.

**(2) IntraLATA toll dialing parity**

**(A) Provision required**

A Bell operating company granted authority to provide interLATA services under subsection (d) of this section shall provide intraLATA toll dialing parity throughout that State coincident with its exercise of that authority.

### (B) Limitation

Except for single-LATA States and States that have issued an order by December 19, 1995, requiring a Bell operating company to implement intraLATA toll dialing parity, a State may not require a Bell operating company to implement intraLATA toll dialing parity in that State before a Bell operating company has been granted authority under this section to provide interLATA services originating in that State or before 3 years after February 8, 1996, whichever is earlier.  Nothing in this subparagraph precludes a State from issuing an order requiring intraLATA toll dialing parity in that State prior to either such date so long as such order does not take effect until after the earlier of either such dates.

## (f) Exception for previously authorized activities

Neither subsection (a) of this section nor section 273 of this title shall prohibit a Bell operating company or affiliate from engaging, at any time after February 8, 1996, in any activity to the extent authorized by, and subject to the terms and conditions contained in an order entered by the United States District Court for the District of Columbia pursuant to section VII or VII(C) of the AT&T Consent Decree if such order was entered on or before February 8, 1996, to the extent such order is not reversed or vacated on appeal.  Nothing in this subsection shall be construed to limit, or to impose terms or conditions on, an activity in which a Bell operating company is otherwise authorized to engage under any other provision of this section.

## (g) Definition of incidental interLATA services

For purposes of this section, the term "incidental interLATA services" means the interLATA provision by a Bell operating company or its affiliate –

(1)(A) of audio programming, video programming, or other programming services to subscribers to such services of such company or affiliate;

(B) of the capability for interaction by such subscribers to select or respond to such audio programming, video programming, or other programming services;

(C) to distributors of audio programming or video programming that such company or affiliate owns or controls, or is licensed by the copyright owner of such programming (or by an assignee of such owner) to distribute; or

(D) of alarm monitoring services;

(2) of two-way interactive video services or Internet services over dedicated facilities to or for elementary and secondary schools as defined in section 254(h)(5) of this title;

(3) of commercial mobile services in accordance with section 332(c) of this title and with the regulations prescribed by the Commission pursuant to paragraph (8) of such section;

**(4)** of a service that permits a customer that is located in one LATA to retrieve stored information from, or file information for storage in, information storage facilities of such company that are located in another LATA;

**(5)** of signaling information used in connection with the provision of telephone exchange services or exchange access by a local exchange carrier; or

**(6)** of network control signaling information to, and receipt of such signaling information from, common carriers offering interLATA services at any location within the area in which such Bell operating company provides telephone exchange services or exchange access.

## (h) Limitations

The provisions of subsection (g) of this section are intended to be narrowly construed. The interLATA services provided under subparagraph (A), (B), or (C) of subsection (g)(1) of this section are limited to those interLATA transmission incidental to the provision by a Bell operating company or its affiliate of video, audio, and other programming services that the company or its affiliate is engaged in providing to the public. The Commission shall ensure that the provision of services authorized under subsection (g) of this section by a Bell operating company or its affiliate will not adversely affect telephone exchange service ratepayers or competition in any telecommunications market.

## (i) Additional definitions

As used in this section—

### (1) In-region State

The term "in-region State" means a State in which a Bell operating company or any of its affiliates was authorized to provide wireline telephone exchange service pursuant to the reorganization plan approved under the AT&T Consent Decree, as in effect on the day before February 8, 1996.

### (2) Audio programming services

The term "audio programming services" means programming provided by, or generally considered to be comparable to programming provided by a radio broadcast station.

### (3) Video programming services; other programming services

The terms "video programming service" and "other programming services" have the same meanings as such terms have under section 522 of this title.

**(j) Certain service applications treated as in-region service applications**

For purposes of this section, a Bell operating company application to provide 800 service, private line service, or their equivalents that –

       **(1)** terminate in an in-region State of that Bell operating company, and

       **(2)** allow the called party to determine the interLATA carrier,

shall be considered an in-region service subject to the requirements of subsection (b)(1) of this section.