# U.S. West Petitions to Consolidate LATAS in Minnesota and Arizona, 14 F.C.C.R. 14392, at ¶1 (1999)

14 F.C.C.R. 14392, 14 FCC Rcd. 14392, 17 Communications Reg. (P&F) 139,       Page 1
1999 WL 674804 (F.C.C.)

(Cite as: 14 F.C.C.R. 14392, 14 FCC Rcd. 14392, 17 Communications Reg. (P&F) 139, 1999 WL 674804 (F.C.C.))

14 F.C.C.R. 14392, 14 FCC Rcd. 14392, 17 Communications Reg. (P&F) 139, 1999 WL 674804 (F.C.C.)

Federal Communications Commission (F.C.C.)
Memorandum Opinion and Order

IN THE MATTER OF APPLICATION FOR REVIEW AND PETITION FOR RECONSIDERATION OR CLARIFICATION OF DECLARATORY RULING REGARDING U S WEST PETITIONS TO CONSOLIDATE LATAS IN MINNESOTA AND ARIZONA
NSD-L-97-6
FCC 99-222

Adopted: August 13, 1999
Released: September 1, 1999

*14392 By the Commission:
I. INTRODUCTION

1. On April 21, 1997, the Common Carrier Bureau (Bureau) released the *LATA Modification Order*,FN[FN1] in which the Bureau ruled that the Federal Communications Commission (FCC or Commission) has exclusive authority, pursuant to section 3(25)(b) of the Communications Act,FN[FN2] to modify Local Access Transport Area (LATA) boundaries,FN[FN3] and did not delegate that power to any other entity. On May 20, 1997, U S WEST Communications, Inc. (U S WEST) filed a petition for reconsideration or clarification with the Bureau of the *LATA Modification Order*.FN[FN4] The U S WEST petition has been referred to us by the Bureau.FN[FN5] On May *14393 21, 1997, the Arizona Corporation Commission (ACC) filed an application for review or stay of the *LATA Modification Order*.FN[FN6]

2. On May 14, 1999, AT&T Corp. (AT&T) filed a motion for a standstill order prohibiting U S WEST from (a) providing or offering to provide to customers in Arizona any interLATA service not described in §§ 271(b)(2) or (b)(3), as defined with reference to the LATA boundaries that were established by the Modification of Final Judgment (MFJ), unless and until the requisite authority therefor has been expressly granted by the Commission; and (b) taking any actions to procure or request an order from the ACC purporting to remove or revise LATA boundaries in Arizona in a manner prohibited by the Telecommunications Act of 1996 and the prior order in this proceeding.FN[FN7]

3. Because the *LATA Modification Order* is sufficiently clear that no clarification is necessary, we deny U S WEST's petition. Further, because the Communications Act grants the Commission exclusive jurisdiction to approve changes to any LATA boundaries, section 2(b) of the Act is not implicated. We thus affirm the Bureau's conclusion and deny the ACC's application. Although we will not be addressing the AT&T motion for a standstill order today, our conclusions herein also reject arguments made by U S WEST in its opposition to the AT&T motion that the ACC has any authority to establish or modify intrastate LATA boundaries and should resolve any questions that U S WEST may have concerning whether it can provide service across currently recognized LATA boundaries without first seeking a LATA boundary modification from this Commission.

II. BACKGROUND

4. The Bureau released the *LATA Modification Order* in response to a petition for declaratory ruling filed by the Competition Policy Institute (CPI) and the Minnesota Department of Public Service (MDPS) on March 4, 1997.FN[FN8] The CPI/MDPS petition requested that the Bureau issue a declaratory ruling that the Commission in the *Local Competition Second Report and *14394 Order*FN[FN9] did not delegate to the states authority to approve the establishment or modification of LATA boundaries, and that this authority remains with the Commission. CPI and MDPS requested that the Bureau rule on this issue because U S WEST had filed petitions with the ACC and the Minnesota Public Utilities Commission (MPUC), asking that those commissions make the LATAs in their states coextensive with state boundaries.FN[FN10]

5. In responding to the CPI/MDPS petition, U S

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:06-cv-00577-WKW-TFM    Document 35-4    Filed 11/29/2006    Page 3 of 13

14 F.C.C.R. 14392, 14 FCC Rcd. 14392, 17 Communications Reg. (P&F) 139, Page 2
1999 WL 674804 (F.C.C.)
(Cite as: 14 F.C.C.R. 14392, 14 FCC Rcd. 14392, 17 Communications Reg. (P&F) 139, 1999 WL 674804 (F.C.C.))

WEST argued, *inter alia*, that the determination of an intrastate LATA boundary is the type of wholly intrastate matter over which section 2(b) of the Communications Act[FN11] precludes Commission jurisdiction.[FN12] The ACC agreed with U S WEST that under section 2(b) of the Act, the modification of intrastate LATA boundaries is a matter reserved to state jurisdiction, and argued that as a result the ACC is the appropriate governmental entity to make a decision regarding all intrastate telecommunications matters in Arizona, including the LATA modification petition filed by U S WEST.[FN13]

6. The Bureau, in the *LATA Modification Order*, first rejected the argument made by U S WEST and the ACC that section 2(b) limits Commission jurisdiction over LATA boundaries.[FN14] The Bureau explained that LATAs are a purely federal creation and never have been administered by the states. Rather, the U.S. District Court for the District of Columbia (U.S. District Court) divided all territory in the continental United States served by the BOCs into LATAs as part of its approval of the AT&T Consent Decree, which resolved a lawsuit brought under federal *14395 antitrust law.[FN15] Under the AT&T Consent Decree, BOCs were permitted to provide local and toll service within each LATA (i.e., intraLATA service), but were prohibited from providing service across LATA boundaries (i.e., interLATA service). All interLATA traffic was to be carried by interexchange carriers. The U.S. District Court acted as the sole forum for matters concerning LATA boundaries, and held that the decree preempted all inconsistent state law.[FN16]

7. The Bureau concluded that Congress, in the Telecommunications Act of 1996 (1996 Act),[FN17] shifted authority over LATA boundaries from the U.S. District Court to the Commission. The Bureau pointed out that section 601(a) of the 1996 Act makes "[a]ny conduct or activity" formerly subject to the AT&T Consent Decree subject to the Act.[FN18] Section 251(g), in turn, explicitly delegates to the Commission sole authority to administer the "equal access and nondiscriminatory interconnection restrictions and obligations" that applied under the AT&T Consent Decree,[FN19] of which exclusive authority over LATA boundary establishment

or modification is an essential component.[FN20] The Bureau noted that section 3(25) of the Act[FN21] defines a LATA as a "contiguous geographic area ... established or modified by a Bell operating company ... *and approved by the [Federal Communications] Commission.*"[FN22] Accordingly, the Bureau concluded that the 1996 Act explicitly conferred exclusive jurisdiction over LATA boundaries on the Commission, that no construction of the statute was necessary, and that as a result, section 2(b) does not limit the Commission's authority to modify LATA boundaries.[FN23]

*14396 8. The Bureau further explained that the Commission had not delegated authority over the administration of LATA boundaries to state commissions. The Bureau stated that in the *Local Competition Second Report and Order* the Commission had adopted rules to implement section 251(b)(3) of the Act[FN24] that allowed states to implement dialing parity on the basis of either state or LATA boundaries,[FN25] but in that Order had not delegated authority to modify LATA boundaries to the states.[FN26] According to the Bureau, the Commission anticipated that the significance of LATA boundaries would decrease once the BOCs complied with the section 271 checklist, had begun to offer in-region interLATA service, and eventually, no longer needed to comply with the requirement that they provide interLATA service through a separate affiliate.[FN27] The Bureau noted that the *Local Competition Second Report and Order* thus permitted states to take the ongoing significance of LATA boundaries into consideration, and have the flexibility to require that toll dialing parity be implemented on the basis of state boundaries rather than on a LATA-by-LATA basis where the state determines that to do so would be pro-competitive and otherwise in the public interest.[FN28] The Bureau then held that, by allowing the states such flexibility, the Commission in no way delegated any authority over the modification of LATA boundaries to the states.[FN29]

*14397 9. The Bureau concluded that the Act prohibited the Commission from delegating its authority over LATA boundaries to the states until a BOC had satisfied the requirements of section 271.[FN30]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:06-cv-00577-WKW-TFM    Document 35-4    Filed 11/29/2006    Page 4 of 13

14 F.C.C.R. 14392, 14 FCC Rcd. 14392, 17 Communications Reg. (P&F) 139,                                                                 Page 3
1999 WL 674804 (F.C.C.)
(Cite as: 14 F.C.C.R. 14392, 14 FCC Rcd. 14392, 17 Communications Reg. (P&F) 139, 1999 WL 674804 (F.C.C.))

The Bureau initially noted that section 271[FN31] prohibits a BOC from providing interLATA services until it has met a fourteen-point checklist to open its intraLATA markets to competition and the Commission approves the BOC's application to provide interLATA service.[FN32] Further, section 272(a) prohibits a BOC from providing in-region interLATA service directly.[FN33] Rather, a BOC, once it obtains section 272 approval, must provide such services through a separate affiliate meeting the requirements of section 272(b).[FN34] Under section 272(f)(1), the provisions of section 272 (other than those in subsection (e)) sunset with respect to a particular BOC three years after the BOC receives section 271 authority, unless the Commission extends the 3-year period by rule or order.[FN35] Finally, the Bureau noted that section 10(d) of the Act[FN36] explicitly prohibits the Commission from taking any action that would constitute a forbearance of its authority to ensure that section 271's requirements are fully implemented.[FN37] The Bureau reasoned that, by allowing states to modify LATA boundaries in the manner proposed by U S WEST, the Commission would be allowing the states to transform what had been an interLATA call into an intraLATA call, thus allowing a BOC to provide interLATA service without satisfying the section 271 checklist. Such a result, the Bureau concluded, would be the very type of forbearance prohibited by section 10(d).[FN38]

10. In sum, the Bureau found that (1) Congress vested exclusive authority in this Commission to define LATA boundaries; (2) the Commission in its *Local Competition Second *14398 Report and Order* did not delegate this authority to the states; and (3) such authority, if delegated to the states, would impermissibly circumvent section 271.

III. ACC'S APPLICATION FOR REVIEW OR STAY

A. Background

11. The ACC contends that we should review the Bureau's order because it addresses a question of law not previously resolved by the Commission, thus meeting one of the criteria that our rules of practice specify must be met to warrant Commission review of any action taken pursuant to delegated authority.[FN39] According to the ACC, the CPI/MDPS petition and the subsequent Bureau order present "the novel question of interpretation of section 271(d) of the 1996 Act in conjunction with section[s] 2(b) and 10(d) of the Act."[FN40] The ACC asserts that section 271(d) "delegates the authority to permit BOCs to provide interLATA services to the FCC," and "[p]ursuant to section 10(d) of the Act, the FCC may not forbear from applying the requirements of section 271 of the 1996 Act until it determines that those requirements have been fully implemented," but that section 2(b) "specifically reserves jurisdiction over regulation of intrastate telecommunication services to the state."[FN41] In other words, the ACC's argument is based on the contention, rejected by the Bureau, that because 2(b) of the Act precludes Commission jurisdiction over purely intrastate communications, it "preserves" to Arizona the authority to define intrastate LATA boundaries.[FN42]

12. Alternatively, the ACC requests that we stay the Bureau's Order on the ground that the issue of whether states have the right to modify LATA boundaries should not be decided until after a BOC has met the requirements of the section 271 competitive checklist. ACC states that it has opened dockets to monitor U S WEST's compliance with section 271 and to receive public comment on U S WEST's request to modify LATA boundaries within Arizona.[FN43]

*14399 13. AT&T, CPI, MDPS, TCG, and TRA concur with the Bureau's conclusion that the Commission possesses exclusive authority over LATA boundaries, and that the Commission did not delegate that authority to the states.[FN44]

B. Discussion

14. For the reasons stated below, we affirm the Bureau's conclusion in the *LATA Modification Order* that Commission jurisdiction over LATA boundaries is the result of explicit grants of authority by Congress in the 1996 Act, and thus is not subject to section 2(b) of the Act.[FN45] We also find that the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:06-cv-00577-WKW-TFM   Document 35-4   Filed 11/29/2006   Page 5 of 13

14 F.C.C.R. 14392, 14 FCC Rcd. 14392, 17 Communications Reg. (P&F) 139, Page 4
1999 WL 674804 (F.C.C.)
(Cite as: 14 F.C.C.R. 14392, 14 FCC Rcd. 14392, 17 Communications Reg. (P&F) 139, 1999 WL 674804 (F.C.C.))

Commission's exclusive jurisdiction over the administration of LATA boundaries is the most reasonable conclusion that can be drawn from the structured statutory scheme that Congress created in the 1996 Act.FN[FN46]

15. First, the 1996 Act and the Supreme Court's conclusion in *Louisiana Public Service Commission v. F.C.C.*FN[FN47] do not support the ACC's argument that section 2(b) "preserves" to the ACC the authority to define intrastate LATA boundaries once the ACC determines that U S WEST has complied with the section 271 competitive checklist. The ACC misstates the issue when it argues that the Bureau's Order presents a novel question concerning the interpretation of section 2(b) in conjunction with sections 271(d) and 10(d). In *Louisiana Public Service Commission v. F.C.C.*, the Supreme Court ruled that to overcome the intrastate proscription of section 2(b), Congress must either modify section 2(b) or grant the Commission additional intrastate authority.FN[FN48] As the Bureau correctly concluded in the *LATA Modification Order*, Congress did grant authority over LATA boundaries, whether interstate or intrastate, to the Commission. Although the ACC, like all state commissions, plays a significant role in evaluating a BOC's compliance with the 271 checklist,FN[FN49] the ACC argument that this role extends to the modification of LATA boundaries is incorrect. Congress vested exclusive jurisdiction over LATA boundaries in the Commission.

*14400 16. As the Bureau correctly found, LATAs were part of a consent decree, the MFJ, approved by a federal court in the context of a federal antitrust suit. Under the MFJ, the states had no jurisdiction over the creation or administration of LATA boundaries. The Bureau also correctly concluded that Congress, in the 1996 Act, explicitly granted authority to the Commission to approve the establishment or modification of LATA boundaries, both intrastate and interstate. In section 601, Congress directed that "any conduct or activity" previously subject to the AT&T Consent Decree was now subject to the "restrictions and obligations" of the Act, as amended.FN[FN50] In section 3(25)(b), Congress explicitly included LATAs as one such "conduct or activity" subject to the "restrictions and obligations of the Act" by defining a LATA as a geographic area "approved by the Commission."FN[FN51] The Act's explicit grant of jurisdiction to the Commission to approve any change to a LATA boundary could not be more clear.

17. Further, the Bureau correctly concluded that exclusive Commission authority to approve any changes to LATA boundaries is consistent with the 1996 Act overall. In section 251(g), Congress delegated to the Commission sole authority to administer the "equal access and nondiscriminatory interconnection restrictions and obligations" that applied under the AT&T Consent Decree.FN[FN52] Further, in section 271, Congress granted exclusive authority to the Commission to approve interLATA service by BOCs.FN[FN53] Pursuant to section 10(d) of the Act,FN[FN54] the Commission must exercise this authority by determining that the requirements of section 271 are fully implemented before the Commission may forbear from applying any of the requirements of section 271. Notwithstanding U S WEST's arguments,FN[FN55] it would be inconsistent with Congress's grant of sole authority to the Commission to administer the equal access regime and section 271 to interpret the 1996 Act as allowing any other entity the authority to redefine or eliminate LATA boundaries. Congress has thus clearly granted the Commission additional authority to approve modifications of LATA boundaries, whether interstate or intrastate, thus belying any argument that section 2(b) grants any authority over LATA boundaries to the states.FN[FN56]

*14401 18. U S WEST's recent argument that Commission jurisdiction over LATA boundaries in section 3(25) is not exclusive and that nothing precludes state commissions from altering instate LATA boundaries does not alter our conclusion.FN[FN57] As we discuss above, historically, LATAs are a purely federal construct, over which the states had no authority. Following the enactment of the 1996 Act, jurisdiction over LATAs was transferred to the Commission in section 3(25), which establishes a statutory formula by which LATA boundaries are to be defined. The section states that a LATA is (A) that which was established before the enactment of the 1996 Act, or (B) that which is established or modi-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:06-cv-00577-WKW-TFM    Document 35-4    Filed 11/29/2006    Page 6 of 13

14 F.C.C.R. 14392, 14 FCC Rcd. 14392, 17 Communications Reg. (P&F) 139, Page 5
1999 WL 674804 (F.C.C.)
(Cite as: 14 F.C.C.R. 14392, 14 FCC Rcd. 14392, 17 Communications Reg. (P&F) 139, 1999 WL 674804 (F.C.C.))

fied by a BOC after the enactment of the 1996 Act and approved by the Commission. Thus LATAs are what the MFJ court said they were or what the Commission approves. The Act does not provide for any state jurisdiction over LATAs whatsoever. U S WEST argues, however, that section 3(25) somehow allocates some jurisdiction over LATA boundaries to the states because the section is silent regarding state commission authority to modify LATA boundaries. According to U S WEST, because section 3(25) does not explicitly prohibit a state from modifying an intrastate LATA boundary, the Act implicitly allows a state to do so. As we discuss in the previous paragraph, the argument that jurisdiction over LATA boundary administration is "shared" by the states is inconsistent with section 3(25) and the exclusive authority that Congress intended that the Commission exercise over the section 271 process. Further, as the Supreme Court recently held in *AT&T Corp. v. Iowa Utilities Bd.*,[FN58] the 1996 Act's silence regarding state jurisdiction, rather than implicitly *14402 allocating jurisdiction to the states, assures that Commission jurisdiction is not superseded,[FN59] and that FCC jurisdiction " always follows where the Act applies."[FN60] Thus, as the Bureau correctly concluded, and as we affirm today, in the 1996 Act, Congress transferred sole authority over LATA boundaries to the Commission.[FN61]

19. We also affirm the Bureau's conclusion that the Commission, in the *Local Competition Second Report and Order*, did not delegate its exclusive authority over LATA boundaries to the states. As the Bureau correctly observed, the Commission has never explicitly delegated its authority over LATA boundaries. There is no mention anywhere in the *Local Competition Second Report and Order* of any delegation of Commission authority over LATA boundaries to the states. Further, the Bureau correctly concluded that section 10(d) of the Act precludes the possibility that there was an implicit delegation of Commission authority. We note initially that we do not agree with the Bureau's conclusion in dicta that delegation of the FCC's exclusive authority over LATA boundaries would automatically violate section 10(d).[FN62] The section 10(d) mandate that the Commission determine that the requirements of section 271 be fully implemented is not so rigid that any delegation by the Commission of its exclusive authority over LATA boundaries would be a *per se* violation of section 10(d). Nonetheless, the Bureau is correct that the Commission would not have implicitly delegated its authority because the Commission would have had to take steps to ensure that such a delegation would not violate section 10(d). In order to make this determination, the Commission would have solicited comment on the issue, or at a minimum, discussed the issue in detail in the *Local Competition Second Report and Order*. No such solicitation or discussion took place. Thus, the Bureau correctly concluded that the Commission, in the *Local Competition Second Report and Order*, neither explicitly nor implicitly, delegated its authority over LATA boundaries to the states.

20. The Bureau thus correctly rejected the argument presented by ACC and U S WEST that Commission jurisdiction over LATA boundaries is limited by section 2(b), and that the Commission delegated its authority over LATA boundaries to the states. As the Bureau found, Congress vested exclusive authority to define LATA boundaries with the FCC, and the Commission in the *Local Competition Second Report and Order* did not delegate this authority to the states. The ACC Application is thus denied because it fails to meet the requirements for review of an order issued under delegated authority.

*14403 IV. U S WEST'S PETITION FOR RECONSIDERATION OR CLARIFICATION

A. Background

21. In paragraph 23 of the *LATA Modification Order*, the Bureau concluded that the Commission, by allowing state commissions to implement dialing parity on the basis of state boundaries, had delegated no authority over LATA boundaries to the states. Instead, the Bureau reasoned, the Commission was anticipating that the significance of LATA boundaries would decrease once the BOCs complied with the Section 271 checklist, began to offer in-region interLATA service, and eventually no longer needed to comply with the Section 272 requirement that they provide interLATA service through a separate affiliate.[FN63] The Bureau then stated

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:06-cv-00577-WKW-TFM    Document 35-4    Filed 11/29/2006    Page 7 of 13

14 F.C.C.R. 14392, 14 FCC Rcd. 14392, 17 Communications Reg. (P&F) 139,                                        Page 6
1999 WL 674804 (F.C.C.)
(Cite as: 14 F.C.C.R. 14392, 14 FCC Rcd. 14392, 17 Communications Reg. (P&F) 139, 1999 WL 674804 (F.C.C.))

At that time, as the Commission explained in paragraph 37 of the *Second Report and Order*, the states would have the flexibility to implement in-region dialing parity on the basis of state or LATA boundaries after taking into account the current relevance of LATA boundaries.FN[FN64]

22. In its petition, U S WEST asks whether the Bureau, by stating in paragraph 23 of the *LATA Modification Order*, that states would have the flexibility to implement toll dialing parity on the basis of state boundaries "at that time," was referring to the expiration of the three-year period during which section 272 of the Act requires BOCs to provide interLATA services through a separate affiliate, and had concluded that the Commission had tolled a state's ability to implement dialing parity on the basis of state boundaries until then.FN[FN65] U S WEST argues that tolling a state's authority to implement intrastate dialing parity until after those three years would impair that state's ability to implement policies that affect intrastate services and are procompetitive and in the public interest.FN[FN66] CPI, MDPS, AT&T, MCI, TCG, and TRA filed comments in response to the U S WEST petition.

*14404 23. Even though intraLATA toll dialing parity has been implemented nationwide,FN[FN67] the U S WEST Petition does not present a moot issue. States that currently administer intraLATA toll dialing parity on a LATA-by-LATA basis may wish to move to a statewide toll dialing parity structure in the future. In a state that has implemented toll dialing parity on a LATA-by-LATA basis, customers are able to choose the carrier they wish to carry toll calls within each LATA in the state in the same way they now choose an interLATA carrier. If a state were to implement toll dialing parity on the basis of state boundaries, the state would discard the intraLATA/interLATA dichotomy in favor of an intraste/interstate dichotomy, and customers would make one choice for a toll provide (both intraLATA and interLATA) within the state.

24. The significance of U S WEST's concern is that if a state implements toll dialing parity on a statewide basis, a BOC may only offer full toll service within that state after it has been granted authority under section 271 to provide interLATA service, a service that section 272 of the Act requires the BOC to supply through a separate affiliate for three years. If the Commission has tolled a state's authority to implement statewide dialing parity until the end of that three-year period, the BOC could not offer statewide toll services during that time.FN[FN68] Thus, if a state were to implement toll dialing parity on the basis of LATA boundaries, BOC customers would choose from among at least two providers of intraLATA "1+" toll service.FN[FN69] Because the state had implemented toll dialing parity on a LATA-by-LATA basis, none of these toll calls would cross LATA boundaries. As a result, either the BOC or the BOC's interLATA affiliate (if the BOC had been granted interLATA authority pursuant to section 271) could be one of the providers from which the customer could choose. If, on the other hand, a state were to implement toll dialing parity on the basis of state borders (an event that has yet to occur), then customers could choose to have all their "1+" intrastate toll traffic automatically routed to the carrier of the customer's choice. If the BOC had not been granted section 271 authority, it could not be one of those choices because it could not supply intrastate toll traffic that would cross LATA boundaries. If the BOC had been granted authority under section 271 to offer interLATA service, however, the BOC's interLATA affiliate could carry intrastate interLATA toll traffic and thus be a presubscription choice during the three-year section 272 period.

*14405 B. Discussion

25. For the reasons stated below, we deny the U S WEST petition. As CPI and MDPS correctly observe,FN[FN70] a state may implement toll dialing parityFN[FN71] based on either LATA boundaries or state boundaries, whichever it determines to be both procompetitive and in the public interest. There is no language in either the *Local Competition Second Report and Order* or the *LATA Modification Order* that tolls a state's authority to implement dialing parity on the basis of state borders until the sunset of the separate affiliate requirement of section 272 of the Act.

26. U S WEST's concern that the Commission

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:06-cv-00577-WKW-TFM    Document 35-4    Filed 11/29/2006    Page 8 of 13

14 F.C.C.R. 14392, 14 FCC Rcd. 14392, 17 Communications Reg. (P&F) 139, Page 7
1999 WL 674804 (F.C.C.)
(Cite as: 14 F.C.C.R. 14392, 14 FCC Rcd. 14392, 17 Communications Reg. (P&F) 139, 1999 WL 674804 (F.C.C.))

tolled state authority to implement dialing parity on the basis of state boundaries is based on a misinterpretation of the discussion in paragraph 23 of the *LATA Modification Order*. The phrase, "at that time," in the LATA Modification Order does not limit a state's ability to implement dialing parity. It merely refers to the time when a state would most likely take advantage of the flexibility that it has to implement toll dialing parity on the basis of state boundaries. Further, the *Local Competition Second Report and Order* does not require a state to delay implementation of statewide toll dialing parity until the end of the three-year separate affiliate period, but rather assumes that a state may implement statewide toll dialing parity during the section 272 period. The Commission included the section 272 separate affiliate requirement as one of the factors that "states should be able to take ... into account, where applicable, and have the flexibility to require that toll dialing parity implementation be based on state boundaries ...."FN[FN72] States can only "take into account" the relevance of the section 272 separate affiliate requirements for the period during which the requirements apply to a particular BOC. Thus, it is implicit in the *Local Competition Second Report and Order* that states may implement toll dialing parity based on state boundaries while the section 272 separate affiliate requirements apply to a particular BOC.

27. We also agree with CPI and MDPS that we should dispel any potential ambiguities regarding Commission authority by reaffirming our exclusive authority to modify LATA boundaries, our jurisdiction over the section 271 application process, and by affirming that BOCs must abide by the section 272 separate affiliate requirement no matter which way a state may implement toll dialing parity.FN[FN73]

*14406 28. As the Bureau observed in the *LATA Modification Order*, the Commission, in the *Local Competition Second Report and Order* allowed the states to implement toll dialing parity on the basis of state boundaries, but explicitly recognized the continuing significance of current LATA boundaries should states decide to implement dialing parity on the basis of state borders. Paragraph five of the *Local Competition Second Report and Order* states in relevant part:

[t]he toll dialing parity requirement we adopt is defined by LATA boundaries given that the Bell Operating Companies' (BOCs') operations are likely to be shaped by LATA boundary restrictions for a period of unforeseeable duration. Given that implementation of the 1996 Act *over time* may diminish the significance of LATA boundaries, however, we permit states to redefine *the toll dialing parity requirement* based on state, rather than LATA, boundaries where a state deems such a requirement to be procompetitive and otherwise in the public interest.FN[FN74]

29. Thus, although a state is free to implement dialing parity based on state borders, until a LATA modification is approved by the Commission pursuant to section 3(25) of the Act,FN[FN75] LATA boundaries would continue to remain in place. As we discuss above, this would affect the manner in which a BOC would be able to provide toll dialing parity. Whether, and under what circumstances, either of the scenarios discussed in paragraph 23 would be "procompetitive and in the public interest" is for each state, in the first instance, to decide. As the Commission stated in the *Local Competition Second Report and Order*, because of variations that exist among LATA boundaries and toll traffic within, and among, the various states, each state should have the opportunity to determine whether customers should be able to presubscribe to carriers for intrastate toll service and for interstate toll service in lieu of the intraLATA and interLATA toll presubscription dichotomy.FN[FN76]

30. Further, as the Bureau correctly held in the *LATA Modification Order*, states' discretion to implement toll dialing parity on the basis of state boundaries is not a grant of authority to the states to authorize a BOC to provide intrastate interLATA service. Section 271 of the Act grants that authority solely to the Commission. Finally, notwithstanding the manner in which a state chooses to implement toll dialing parity, each BOC is required to comply with the separate affiliate requirements of section 272 before the BOC may be granted in-region interLATA authority under section 271.

*14407 31. Because the *Local Competition Second*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:06-cv-00577-WKW-TFM    Document 35-4    Filed 11/29/2006    Page 9 of 13

14 F.C.C.R. 14392, 14 FCC Rcd. 14392, 17 Communications Reg. (P&F) 139,                                Page 8
1999 WL 674804 (F.C.C.)
(Cite as: 14 F.C.C.R. 14392, 14 FCC Rcd. 14392, 17 Communications Reg. (P&F) 139, 1999 WL 674804 (F.C.C.))

*Report and Order* and the *LATA Modification Order* do not prohibit state commissions from exercising their authority to implement toll dialing parity on the basis of state boundaries until after sunset of the three-year section 272 separate subsidiary requirement, we reject the AT&T, MCI, TCG, and TRA arguments to the contrary.[FN77]

## V. CONCLUSION

32. The Commission possesses exclusive authority to approve all LATA boundary modifications, whether interstate or intrastate, and the Commission has not, explicitly or implicitly, delegated that authority to the states. Neither the *LATA Modification Order* nor any aspect of the *Local Competition Second Report and Order* limits the time during which a state may implement toll dialing parity on the basis of state or LATA boundaries. During the three-year section 272 separate affiliate period, states may implement toll dialing parity based on state boundaries. Absent a LATA boundary modification approved by this Commission, however, LATA boundaries will remain in effect in any state that so implements dialing parity. Finally, a BOC must comply with the separate affiliate provisions of section 272 no matter how a state implements toll dialing parity. We therefore deny ACC's application for review or stay and deny U S WEST's petition for reconsideration or clarification.

## VI. ORDERING CLAUSES

33. Accordingly, IT IS ORDERED, pursuant to sections 1.115(g) and 1.106(j) of the Commission's rules, 47 C.F.R. §§ 1.115(g), 1.106(j), respectively, that the Application for Review filed by Arizona Corporation Commission IS DENIED and the Petition for Reconsideration or Clarification filed by U S WEST IS DENIED.

FEDERAL COMMUNICATIONS COMMISSION

Magalie Roman Salas
Secretary

FN1. Matter of Petition for Declaratory Ruling Regarding US West Petitions to Consolidate LATAs in Minnesota and Arizona, Order, DA 97-767, 12 FCC Rcd 4738 (Com. Car. Bur. 1997) (*LATA Modification Order*).

FN2. 47 U.S.C. § 153(25)(b).

FN3. LATA boundaries define the geographic area within which Bell Operating Companies (BOCs) may provide service. *See id.* § 153(25)(a). We use the term "BOC" as that term is defined in 47 U.S.C. § 153(4).

FN4. U S WEST's petition was filed under our rules of practice governing petitions for reconsideration. 47 C.F.R. § 1.106. Although the U S WEST petition is captioned a petition for reconsideration or clarification, as we discuss below, U S WEST only asks for clarification of the *LATA Modification Order*.

FN5. *See* 47 C.F.R. § 1.106(a)(1).

FN6. ACC's application is filed under our rules of practice governing review of action taken pursuant to delegated authority. *See* 47 C.F.R. § 1.115. A list of parties that filed comments and reply comments to the ACC and U S WEST is attached as an appendix to this order.

FN7. On May 21, 1999, Sprint Corporation (Sprint) filed comments in support of AT&T's motion. On May 24, 1999, Qwest Communications Corporation (Qwest) filed comments in support of AT&T's motion and U S WEST filed comments in opposition to AT&T's motion.

FN8. The CPI/MDPS petition was filed under the Commission's rules of practice at 47 C.F.R. § 1.2.

FN9. Implementation of the Local Competition Provisions of the Telecommunications Act of 1996, CC Docket No. 96-98, *Second Report and Order and Memorandum Opinion and Order*, 11 FCC Rcd 19392 (1996) (*Local Competition Second Report and Order*), vacated in part, People of the State of California v. FCC, 124 F.3d 934 (8th Cir. 1997), rev., AT&T Corp. v. Iowa Util. Bd., 119 S. Ct. 721 (Jan. 25, 1999).

FN10. As CPI/MDPS noted, U S WEST had argued before the Arizona and Minnesota state com-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:06-cv-00577-WKW-TFM    Document 35-4    Filed 11/29/2006    Page 10 of 13

14 F.C.C.R. 14392, 14 FCC Rcd. 14392, 17 Communications Reg. (P&F) 139, Page 9
1999 WL 674804 (F.C.C.)
(Cite as: 14 F.C.C.R. 14392, 14 FCC Rcd. 14392, 17 Communications Reg. (P&F) 139, 1999 WL 674804 (F.C.C.))

missions that the Commission in the *Local Competition Second Report and Order* had delegated to the states authority to modify LATA boundaries in the manner requested by U S WEST. CPI/MDPS petition at 4-6.

FN11. 47 U.S.C. § 152(b). In pertinent part, section 2(b) states that:
> [N]othing in this Act shall be construed to apply or to give the Commission jurisdiction with respect to (1) charges, classifications, practices, services, facilities, or regulations for or in connection with intrastate communication.

FN12. U S WEST Comments at 11.

FN13. ACC Comments at pages 3-5.

FN14. *LATA Modification Order*, 12 FCC Rcd at 4746-48.

FN15. *Id*. at 4746 (citing *United States v. American Telephone and Telegraph Co.*, 552 F. Supp. 131 (D.D.C. 1982), aff'd sub nom. *Maryland v. United States*, 460 U.S. 1001 (1983)). The 1996 Act defines "AT&T Consent Decree" as including the Modification of Final Judgment (MFJ) under which the BOCs were divested from AT&T as well as all subsequent judgments or orders related to the MFJ. 47 U.S.C. § 153(3).

FN16. *LATA Modification Order*, 12 FCC Rcd at 4746-47, citing *United States v. Western Electric*, 569 F. Supp. 990, 993-94 (D.D.C. 1983).

FN17. Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (1996 Act) (codified at 47 U.S.C. §§ 151 *et seq*.). Hereinafter, all citations to the 1996 Act will be to the 1996 Act as it is codified in the United States Code. The 1996 Act amended the Communications Act of 1934. We will refer to the Communications Act of 1934, as amended, as "the Communications Act" or "the Act."

FN18. 47 U.S.C. § 152 (nt).

FN19. *Id*. § 251(g).

FN20. *LATA Modification Order*, 12 FCC Rcd at 4748.

FN21. 47 U.S.C. § 153(25).

FN22. *LATA Modification Order*, 12 FCC Rcd at 4748 (emphasis added in order).

FN23. *Id*. at 4746-48.

FN24. 47 U.S.C. § 251(b)(3).

FN25. *LATA Modification Order*, 12 FCC Rcd at 4749-50. Under section 251(b)(3):
> Each local exchange carrier has ... the duty to provide dialing parity to competing providers of telephone exchange service and telephone toll service, and the duty to permit all such providers to have nondiscriminatory access to telephone numbers, operator services, directory assistance, and directory listing, with no unreasonable dialing delays.

47 U.S.C. § 251(b)(3). The Act defines "dialing parity" to mean that:
> a person that is not an affiliate of a local exchange carrier is able to provide telecommunications services in such a manner that customers have the ability to route automatically, without the use of any access code, their telecommunications to the telecommunications service provider of the customer's designation from among 2 or more telecommunications service providers (including such local exchange carrier).

47 U.S.C. § 153(15).

FN26. *LATA Modification Order*, 12 FCC Rcd at 4749.

FN27. *Id*. at 4749-50. The section 272 separate affiliate requirement for BOC provision of interLATA services sunsets three years after the date the BOC is authorized to provide interLATA service. 47 U.S.C. § 272(f)(1).

FN28. *LATA Modification Order*, 12 FCC Rcd at 4750.

FN29. *Id*.

FN30. *Id*. at 4751-52.

FN31. 47 U.S.C. § 271.

FN32. 47 U.S.C. § 271(c)(2)(b) sets out fourteen

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:06-cv-00577-WKW-TFM    Document 35-4    Filed 11/29/2006    Page 11 of 13

14 F.C.C.R. 14392, 14 FCC Rcd. 14392, 17 Communications Reg. (P&F) 139,                                                    Page 10
1999 WL 674804 (F.C.C.)
(Cite as: 14 F.C.C.R. 14392, 14 FCC Rcd. 14392, 17 Communications Reg. (P&F) 139, 1999 WL 674804 (F.C.C.))

requirements that must be met before incumbent BOCs may provide in-region interLATA services. 47 U.S.C. § 271(d)(1) permits BOCs to apply to the Commission for interLATA service authority. 47 U.S.C. § 271(d)(3)(C) provides for the Commission to approve or deny the applications.

FN33. 47 U.S.C. § 272(a).

FN34. *Id.* § 272(b).

FN35. *Id.* § 271(f)(1).

FN36. *Id.* § 160(d).

FN37. *LATA Modification Order*, 12 FCC Rcd at 4751.

FN38. *Id.*

FN39. 47 C.F.R. § 1.115(b)(2)(ii).

FN40. ACC Application at 4.

FN41. *Id.* at 3-4.

FN42. *Id.*

FN43. *Id.* at 5.

FN44. *See, e.g.*, AT&T Comments at 5-7.

FN45. *LATA Modification Order*, 12 FCC Rcd at 4646.

FN46. In light of our decision today affirming the Bureau's conclusion in the *LATA Modification Order*, we deny the ACC's request for a stay of the *LATA Modification Order* as moot. Similarly, our affirmance of the Bureau's conclusion renders moot the ACC's assertion that the Bureau acted outside of its delegated authority.

FN47. 476 U.S. 355 (1986).

FN48. *Id.* at 368-69.

FN49. *See* 47 U.S.C. § 271(d)(2)(B).

FN50. 47 U.S.C. § 152 nt.

FN51. *Id.* § 153(25)(b).

FN52. *Id.* § 251(g).

FN53. *Id.* § 271.

FN54. *Id.* § 10(d).

FN55. U S WEST Opposition at 9-11.

FN56. Our conclusion is not changed by U S WEST's recent argument in its opposition to the AT&T Motion. *See* U S WEST Opposition at 7-9. The cases cited by U S WEST are inapposite, and actually support our conclusion that exclusive Commission jurisdiction over LATA boundaries is consistent with section 2(b). In both *People of State of Cal. v. F.C.C.*, 905 F.2d 1217 (9th Cir. 1990), and *National Ass'n of Regulatory Utility Com'r v. F.C.C.*, 880 F.2d 422 (D.C. Cir. 1989), the issue was whether section 2(b) precluded the Commission from preempting state regulation where the states arguably had some initial authority. As the Bureau correctly concluded in the *LATA Modification Order*, the states have never had any authority over LATA boundaries, either under the MFJ or the Act. Thus, exclusive Commission authority over intrastate LATA boundaries does not operate as a preemption of state authority and section 2(b) does not apply.

Even if these cases had some applicability, however, both support the Commission's exclusive jurisdiction over intrastate LATA boundaries. In both *California v. F.C.C.* and *NARUC v. F.C.C.*, the courts supported the FCC's ability to preempt state regulation where the state regulation negates a valid federal policy. *See California*, 905 F.2d at 1243-44, and *NARUC v. F.C.C.*, 880 F.2d at 429-30. Such a valid federal policy exists in the 1996 amendments to the Act. As the Bureau correctly concluded in the *LATA Modification Order*,

> Section 271 of the Act creates a structured statutory scheme for the entry of the BOCs into the interLATA market and sets strict requirements that must be met before a BOC may enter into that market. Central to these Section 271 requirements is that the Commission -- not the states -- approve BOC entry into the interLATA market after the Commission consults with state commissions and the Department of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:06-cv-00577-WKW-TFM    Document 35-4    Filed 11/29/2006    Page 12 of 13

14 F.C.C.R. 14392, 14 FCC Rcd. 14392, 17 Communications Reg. (P&F) 139, Page 11
1999 WL 674804 (F.C.C.)
(Cite as: 14 F.C.C.R. 14392, 14 FCC Rcd. 14392, 17 Communications Reg. (P&F) 139, 1999 WL 674804 (F.C.C.))

*LATA Modification Order*, 12 FCC Rcd at 4751. It would be entirely inconsistent with this structured statutory scheme for BOCs to be allowed to circumvent the 271 process by providing de facto interLATA service after a state commission had modified, or eliminated, intrastate LATA boundaries.

FN57. U S WEST Opposition at 10.

FN58. *AT&T Corp. v. Iowa Utilities Bd.*, 119 S. Ct. 721 (1999).

FN59. *Id.* at 733.

FN60. *Id.* at 731.

FN61. *See* 47 U.S.C. §§ 601(a), 153(25)(b), 251(g).

FN62. *Id.* § 160(d).

FN63. *LATA Modification Order*, 12 FCC Rcd at 4750. Section 272(a) of the Act, 47 U.S.C. § 272(a), requires that a BOC, once it is authorized to provide interLATA service, must provide that service through a separate affiliate. Section 272(f) of the Act, 47 U.S.C. § 272(f), provides that the separate affiliate requirement for BOC interLATA service shall sunset after three years, unless the Commission extends the three year period by rule or order.

FN64. *LATA Modification Order*, 12 FCC Rcd at 4750.

FN65. U S WEST Petition at 4-5 and 7.

FN66. *Id.* at 6.

FN67. *See* Implementation of the Local Competition Provisions of the Telecommunications Act of 1996, and Petition of Southwestern Bell Telephone Company, Pacific Bell, and Nevada Bell for Expedited Declaratory Ruling on Interstate IntraLATA Toll Dialing Parity or, in the Alternative, Various Other Relief, *Order*, CC Docket No. 96-98, NSD File No. L-98-121, FCC 99-54 (rel. March 23, 1999) (*March 23 Order*).

FN68. As we discuss below, whether or not a state decides to implement toll dialing parity on a LATA-by-LATA or statewide basis, LATA boundaries will remain in place until a BOC has successfully sought a modification of those boundaries under section 3(25) of the Act. 47 U.S.C. § 3(25).

FN69. *See id.* § 153(15).

FN70. CPI/MDPS Comments at 2-3.

FN71. As we indicate in note 25, *supra*, our use of the term "dialing parity" does not refer to service provision, but rather refers to the term as it is defined in section 3(15) of the Act.

FN72. *Local Competition Second Report and Order*, 11 FCC Rcd at 19414, ¶ 37.

FN73. CPI/MDPS Comments at 5-8.

FN74. *Local Competition Second Report and Order*, 11 FCC Rcd at 19400, ¶ 5 (emphasis added).

FN75. *See* 47 U.S.C. § 3(25)(B).

FN76. *Local Competition Second Report and Order*, 11 FCC Rcd at 19414.

FN77. *See, e.g.*, MCI Comments at 3-4 (the only way that a state can ensure that implementing dialing parity based on state boundaries is in the public interest is to refrain from doing so until after sunset of the separate affiliate requirement); TCG Comments at 3 (U S WEST's requested clarification would permit states to ignore LATA boundaries); TRA Comments at 2 (U S WEST's clarification would abrogate the section 272 separate affiliate requirements).

*14408 APPENDIX A

Parties Filing Comments on ACC's Application for Review

AT&T Corporation (AT&T)

The Competition Policy Institute and Minnesota Department of Public Service (CPI and MDPS)

The Telecommunications Resellers Association (TRA)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

14 F.C.C.R. 14392, 14 FCC Rcd. 14392, 17 Communications Reg. (P&F) 139, 1999 WL 674804 (F.C.C.)
(Cite as: 14 F.C.C.R. 14392, 14 FCC Rcd. 14392, 17 Communications Reg. (P&F) 139, 1999 WL 674804 (F.C.C.))

Page 12

Teleport Communications Group Inc. (TCG)

Parties Filing Comments on U S WEST's Petition for Reconsideration or Clarification

AT&T Corporation (AT&T)

The Competition Policy Institute and Minnesota Department of Public Service (CPI and MDPS)

MCI Telecommunications Corporation (MCI)

The Telecommunications Resellers Association (TRA)

Teleport Communications Group Inc. (TCG)

14 F.C.C.R. 14392, 14 FCC Rcd. 14392, 17 Communications Reg. (P&F) 139, 1999 WL 674804 (F.C.C.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.