**Kentucky 271 Order,**
**2006 Ky. PUC LEXIS 680**

LEXSEE

In the Matter of: BELLSOUTH TELECOMMUNICATIONS, INC.'S NOTICE OF
INTENT TO DISCONNECT SOUTHEAST TELEPHONE, INC. FOR NON-PAYMENT
AND
SOUTHEAST TELEPHONE, INC., COMPLAINANT
VS.
BELLSOUTH TELECOMMUNICATIONS, INC., DEFENDANT

CASE NO. 2005-00519; CASE NO. 2005-00533

Kentucky Public Service Commission

2006 Ky. PUC LEXIS 680

August 16, 2006

**CORE TERMS:** interconnection, switching, transport, injunctive relief, resale, dispute resolution, disconnect, network, loop, customers, billing, notice, disconnection, non-payment, termination, obligated, commingle, negotiate, ordering, interim, paying, pendency, aggrieved party, inappropriate, contractual, commingling, negotiations, negotiated, impairment, eliminated

**OPINION:**

ORDER

On December 6, 2005, BellSouth Telecommunications, Inc. ("BellSouth") advised the Commission in writing of its intent to disconnect SouthEast Telephone, Inc. ("SouthEast") for alleged non-payment. In its letter, BellSouth indicated that SouthEast is paying for its services at a level consistent with unbundled network element ("UNE") total element long run incremental cost ("TELRIC") rates rather than at resale rates. BellSouth's notice of disconnection was filed pursuant to its "emergency service continuity tariff" and was docketed as Case No. 2005-00519.

On December 13, 2005, SouthEast filed a formal complaint and request for emergency injunctive relief against BellSouth. The Commission docketed this case as Case No. 2005-00533. SouthEast asked that BellSouth continue to provision SouthEast during the pendency of the complaint and that BellSouth not be permitted to disconnect SouthEast's interconnection arrangements or interrupt service to SouthEast customers. SouthEast asserted that BellSouth must continue to meet obligations as described in their current interconnection agreement pending resolution of the question of what constitutes BellSouth's obligations pursuant to 47 U.S.C. § 271.

By Order entered December 16, 2005, the Commission required BellSouth to continue providing any functions or services which are the subject of this dispute during the pendency of these proceedings and ordered that Case No. 2005-00519 be held in abeyance pending the outcome of Case No. 2005-00533. The Order also set a briefing schedule.

On January 17, 2006, in response to SouthEast's complaint, BellSouth filed its answer and brief supporting its previously filed notice of intent to disconnect. On January 25, 2006, SouthEast filed its reply brief.

SouthEast has provided services to its customers primarily by purchasing network elements from BellSouth, generally the UNE-platform ("UNE-P"), which includes the loop, switching, and transport elements that are used to provide local service to both residential and business customers. SouthEast purchased access to these elements pursuant to its interconnection agreement with BellSouth. The Federal Communications Commission ("FCC") issued an order on February 4, 2005 that in part held that incumbent local exchange carriers ("ILECs") were no longer obligated to offer UNE-P pursuant to Section 251. n1 SouthEast points out that the TRRO did not address or make any changes to the continuing obligations of BellSouth or other Regional Bell Operating Companies to offer switching and shared transport elements specified in Sections 271(c)(2)(B)(v) and (vi). n2

Page 1

n1 Triennial Review Remand Order, Unbundled Access to Network Elements, Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carrier, FCC 04-290 (Feb. 4, 2005) ("TRRO").

n2 SouthEast Complaint at P 11.

BellSouth announced on February 11, 2005 that it would stop accepting orders for UNE-P upon the effective date of the TRRO, March 11, 2005. n3 The Commission issued an Order requiring BellSouth to continue to provide UNE-P pursuant to interconnection agreements in place and to negotiate with competitive local exchange carriers ("CLECs") the effect of changes of law on their interconnection agreements. n4 BellSouth appealed the Commission's Order to the U.S. District Court for the Eastern District of Kentucky and, on April 22, 2005, that court issued an order enjoining the Commission's Order from taking effect. n5 On April 27, 2005, BellSouth ceased to process orders for UNE-P from CLECs, including SouthEast. n6

n3 BellSouth Carrier Notification Letter SN91085039. By BellSouth Carrier Notification Letter SN91085061, the date was extended from March 11, 2005 to April 17, 2005.

n4 Case No. 2004-00427, Petition of BellSouth Telecommunications, Inc. To Establish Generic Docket To Consider Amendments To Interconnection Agreements Resulting From Changes of Law, Order dated March 10, 2005.

n5 BellSouth Telecommunications, Inc. v. Cinergy Communications Co., Civil Action No. 3:05-CV-16-JMH, Memorandum Opinion and Order (E.D. Ky., April 22, 2005). See also Memorandum Opinion and Order (E.D. Ky., March 20, 2006).

n6 BellSouth's Brief in support of its notice to disconnect service for non-payment at 4. Also BellSouth Carrier Notification Letter SN1085094.

SouthEast claims to have negotiated with BellSouth from early 2005 through October 2005 regarding terms under which SouthEast may obtain loop, switching, and transport elements pursuant to Section 271. The parties were unable to agree on terms. SouthEast attempted to place orders for UNE-P on several occasions, but BellSouth's ordering system would not allow the orders to be placed. SouthEast alleged that the only way to continue to provide service for its customers was to place orders for services via resale. n7

n7 SouthEast Complaint at P 14.

SouthEast has provided two rationales for placing orders in BellSouth's resale system while paying only the UNE-P charge. The first rationale is that SouthEast believes BellSouth is obligated, pursuant to Section 271, to continue providing access to switching and transport elements. SouthEast asserts that BellSouth has generally not negotiated in good faith. Until such good faith negotiations occur, SouthEast feels justified in paying the UNE-P rate.

SouthEast also contends that a provision in the interconnection agreement between itself and BellSouth provides for the parties to continue to carry out the obligations of the interconnection agreement when a dispute is ongoing. n8 This provision was adopted by SouthEast from another BellSouth agreement. The Commission's approval of this adoption has been upheld. n9 SouthEast alleges that BellSouth, by not accepting orders for UNE-P, failed to carry out its obligations under the interconnection agreement. SouthEast views this situation as a billing dispute.

n8 The language in the agreement reads: "Except as otherwise specified in this Agreement, if any dispute arises as to the interpretation of any provision of this Agreement, the aggrieved party shall petition the Commission for a resolution of the dispute. For issues which the Commission does not have authority, the parties may

Page 2

avail themselves of any available legal remedies in the appropriate forum. However, each party reserves any rights it may have to seek judicial review of any ruling made by the Commission concerning this agreement. Furthermore, the Parties agree to carry on their respective obligations under this agreement, while any dispute resolution is pending."

n9 BellSouth Telecommunications, Inc. v. SouthEast Telephone, Inc., et al., Civil Action No. 3:04-CV-84-JH, Memorandum Opinion and Order (E.D. Ky. September 16, 2005). Appeal is pending at the Sixth Circuit.

SOUTHEAST'S COMPLAINT

In the first count of its complaint, SouthEast asserts that Section 271 of the Telecommunications Act requires BellSouth to continue providing the switching and transport elements to SouthEast at "just and reasonable" rates, terms, and conditions, even though those elements are no longer required "unbundled network elements" under the Section 251 "impairment" standard. n10 SouthEast also opines that Section 271 mandates that BellSouth negotiate in good faith and reach interconnection agreements regarding such elements, and empowers the Commission to enforce those continuing obligations. n11

n10 SouthEast Complaint at 23.

n11 Id.

SouthEast's second count of the complaint alleges that BellSouth's threatened disconnection of SouthEast is a violation of Section 251. SouthEast says that BellSouth is required to offer voice-grade loop elements under Section 251 and commingle them with Section 271 switching and transport elements and that the rejection of SouthEast's orders for such and the threat of termination are violations of Section 251. n12

n12 Id. at 33-36.

SouthEast's third count of the complaint alleges that BellSouth's threatened disconnection of SouthEast violates Sections 201 and 202 of the Act, which requires "just and reasonable" rates. SouthEast alleges that BellSouth's refusal to allow it to commingle the Section 271 switching and transport elements with Section 251 loops n13 constitutes a violation of "just and reasonable" rates.

n13 Id. at 38.

The fourth count of SouthEast's complaint alleges that BellSouth's conduct violates Section 252 of the Act and the parties' interconnection agreement. BellSouth is required to comply with the terms and conditions of the interconnection agreement according to SouthEast, and the agreement requires in part that in the event of "any dispute. . .as to the interpretation of any provision of this agreement, the aggrieved party shall petition the Commission for a resolution of the dispute." n14 The interconnection agreement also obligates both parties to "carry out their respective obligations under the agreement while any dispute resolution is pending." SouthEast claims that BellSouth failed to petition the Commission for resolution of this dispute and carry out its obligations under the interconnection agreement while the dispute was pending. n15 SouthEast asserts that this complaint involves a billing dispute regarding the payment of the difference between the amounts due for network elements and the amounts that were billed for resale services and that BellSouth did not follow proper procedures under the interconnection agreement to resolve the dispute. n16

n14 Id. at 45.

n15 Id.

n16 Id. at 46.

The fifth count of SouthEast's complaint alleges that BellSouth's actions violate provisions of Kentucky law. SouthEast alleges that BellSouth has violated KRS 278.030, KRS 278.260, and KRS 278.530. KRS 278.030(2) requires BellSouth to "furnish adequate, efficient and reasonable service" and to "establish reasonable rules governing the conduct of its business and the conditions under which it shall be required to render service." KRS 278.030(3) requires BellSouth to "employ in the conduct of its business suitable and reasonable classifications of its service, patrons and rates." SouthEast alleges that BellSouth's conduct is unjust, unreasonable, and discriminatory. n17

n17 Id. at 52.

SouthEast also alleges that BellSouth's conduct is a violation of KRS 278.260, which gives the Commission the power to issue orders in cases where "any regulation, measurement, practice or act affecting or relating to the service of the utility or any service in connection therewith is unreasonable, unsafe, insufficient or unjustly discriminatory, or [when] any service is inadequate or cannot be obtained." n18 And SouthEast alleges that BellSouth refuses to permit SouthEast to connect its exchange or lines with BellSouth on reasonable terms, rates, or conditions in accordance with KRS 278.530(1). n19

n18 Id. at 53.

n19 Id. at 54.

BELLSOUTH'S RESPONSE

In BellSouth's answer, its first defense is that the complaint fails to state an action upon which relief can be granted. Its second defense generally denies the allegations of the complaint. Its third defense is that the Public Service Commission lacks the jurisdiction to grant injunctive relief, which must be sought from the Franklin Circuit Court or other court of competent jurisdiction pursuant to KRS 278.390. And its fourth defense is that the Public Service Commission lacks jurisdiction to enforce BellSouth's Section 271 obligations.

BellSouth states in its brief that the facts of the case are undisputed. BellSouth argues that SouthEast is obligated to pay for the services it ordered. SouthEast ordered resale services, BellSouth provided those services, and SouthEast has refused to pay for those services. BellSouth argues that, under these circumstances, this is a breach of contract and it has the right to terminate service for non-payment. n20 Also, SouthEast's request that BellSouth be required to continue to provide new orders at UNE-P rates is contrary to the injunction issued by the U.S. District Court for the Eastern District of Kentucky. BellSouth argues that there can be no new UNE-P orders for switching, n21 as the FCC has eliminated this arrangement.

n20 BellSouth Brief at 4-5.

n21 Id. at 6.

BellSouth also argues that the failure to pay an accurate bill does not constitute a valid billing dispute. Even though SouthEast claims it was trying to obtain UNE-P pursuant to Section 271 of the Act, it does not have any provision in its

current interconnection agreement that would allow ordering such an arrangement. n22 BellSouth asserts that whether or not SouthEast has a right to receive UNE-P pursuant to Section 271 is a legal issue pending in Case No. 2004-00427, in which SouthEast is a participant. n23 Notwithstanding this fact, SouthEast has ordered resale services and has disputed the billing of the services because they were not billed at a UNE-P rate.

n22 Id. at 6-7.

n23 Id. at 6.

BellSouth also argues that the parties' dispute resolution provision does not absolve SouthEast from its obligations to pay for services rendered. BellSouth argues that SouthEast has erroneously stated that "BellSouth is obligated to continue the interconnection agreement contractual pricing of the port/loop combinations (formerly known as UNE-P) until a dispute resolution is reached." BellSouth's position is that the District Court's order of injunction relieved it of any obligation to provide UNE-P pursuant to its interconnection agreement. n24

n24 Id. at 9.

BellSouth also argues that SouthEast's interconnection agreement does not contain any commingling provisions and, accordingly, there is no contractual basis for SouthEast to request BellSouth to commingle certain elements. Again, this issue is pending before the Commission in Case No. 2004-00427. Furthermore, BellSouth argues that the parties have not executed an amendment to their interconnection agreement that would allow for such commingling. n25

n25 Id. at 10-11.

Finally, BellSouth states that SouthEast has failed to establish that the Commission can grant the injunctive relief it seeks. Citing KRS 278.390, BellSouth states that exclusive jurisdiction to grant injunctive relief is vested in the courts.

ADDITIONAL REQUESTS

On June 30, 2006 and on July 5, 2006, SouthEast made requests to this Commission for injunctive relief regarding what it termed BellSouth's "renewed threat to terminate SouthEast's service." SouthEast asserts that this new notice for termination is inconsistent with the existing Commission Order that BellSouth not discontinue providing any functions or services to SouthEast. n26

n26 December 16, 2005 Order in this proceeding.

On July 11, 2006, BellSouth responded to the request for injunctive relief. BellSouth asserts that its notices of termination were based on a matter not subject to these proceedings. It did withdraw its intention to disconnect SouthEast's access to its ordering systems.

DECISION

The Commission has considered all of the arguments of the parties and concludes that the matter is ripe for decision. First, we turn to the issue of the effect of the dispute resolution provision which SouthEast adopted from a currently effective agreement into its agreement with BellSouth. By the plain and ordinary language of this provision, BellSouth must continue to carry on its obligations under the interconnection agreement while any dispute resolution is pending.

However, the TRRO n27 has eliminated the requirement that BellSouth provide switching pursuant to Section 251, thereby also eliminating the requirement that BellSouth provide SouthEast with UNE-P. SouthEast argues that the TRRO does not extend to the Section 271 requirements for Bell Operating Companies to provide switching and trans-

port elements. We agree. Since switching has been discontinued under Section 251's impairment standard, it is inappropriate for SouthEast to continue receiving UNE-P. However, BellSouth must provide access to switching and transport elements for SouthEast pursuant to Section 271.

       n27 TRRO at P 199.

The Commission previously determined that Section 271 elements constitute wholesale service that must be made available on a commingled basis with Section 251 UNEs. n28 Though BellSouth argues that Section 271 elements are matters for only federal jurisdiction, this Commission disagrees. The issue raised by this complaint is whether BellSouth must make the port-loop-switch elements available to SouthEast at an appropriate rate pursuant to Section 271. No authority has been cited for the proposition that this Commission has no jurisdiction over the availability of Section 271 elements. Accordingly, BellSouth must provide to SouthEast UNE combinations required pursuant to Section 251 and FCC orders in concert with the elements required pursuant to Section 271.

       n28 Case No. 2004-00044, Joint Petition For Arbitration of NewSouth Communications Corp., NuVox Communications, Inc., KMC Telecom V, Inc., KMC Telecom III LLC, and Xspedius Communications, LLC on Behalf of Its Operating Subsidiaries Xspedius Management Co. Switched Services, LLC, Xspedius Management Co. of Lexington, LLC, and Xspedius Management Co. of Louisville, LLC of an Interconnection Agreement With BellSouth Telecommunications, Inc. Pursuant To Section 252(B) of the Communications Act of 1934, as Amended, Order dated March 14, 2006 at 7-12.

The Commission finds that the appropriate price would be greater than Section 251 TELRIC rates paid by SouthEast and less than the tariffed rates minus the wholesale discount as proposed by BellSouth. We note that the FCC adopted an interim price for network elements of TELRIC plus $ 1. n29 We find that this would be an appropriate rate for the services ordered by SouthEast from April 27, 2005, the time that BellSouth ceased providing UNE-P, until the parties can agree on a new rate or until the Commission can establish one. SouthEast ordered services for which the rate was in dispute. Accordingly, if SouthEast or BellSouth believes that the rate of TELRIC plus $ 1 is inappropriate, it needs to provide justification to the Commission for rates that it believes are appropriate. The Commission encourages the parties to continue negotiating an appropriate prospective rate. The parties should provide detailed updates of their continued negotiations.

       n29 The FCC's rate of TELRIC plus $ 1 on an interim basis was recently upheld by Covad Communications Company v. FCC, 450 F.3d 528 at 549-550 (C.A.D.C., June 16, 2006).

IT IS THEREFORE ORDERED that:

1. Within 20 days of the date of this Order, SouthEast shall submit a statement to the Commission that it has paid to BellSouth the additional dollar per line per month ordered herein for services purchased from BellSouth through the resale system.

2. The interim rate of TELRIC plus $ 1 shall remain in place until the parties have had adequate opportunity to negotiate a different rate or until the Commission has established a rate.

3. Given the Commission's determinations herein, funds in dispute need not be placed in escrow at this time.

4. SouthEast's request for injunctive relief is denied as moot.

5. BellSouth's request to terminate service (Case No. 2005-00519) is dismissed without prejudice.

Done at Frankfort, Kentucky, this 16th day of August, 2006.

By the Commission