<u>**Minnesota 271 Order**</u>,
**2006 Minn. PUC LEXIS 48, at \*5-14**

LEXSEE 2006 MINN. PUC LEXIS 48

In the Matter of a Potential Proceeding to Investigate the Wholesale Rates Charged by Qwest

DOCKET NO. P-421/CI-05-1996

Minnesota Public Utilities Commission

*2006 Minn. PUC LEXIS 48*

May 4, 2006, Issued

**PANEL:** [*1] LeRoy Koppendrayer, Chair; Marshall Johnson, Commissioner; Ken Nickolai, Commissioner; Thomas Pugh, Commissioner; Phyllis A. Reha, Commissioner

**OPINION:** NOTICE AND ORDER FOR HEARING

**PROCEDURAL HISTORY**

On December 13, 2005, the Commission held final oral argument and deliberations on Qwest's petition for approval of a new Alternative Form of Regulation (AFOR) Plan. n1 Certain competitive local exchange carriers opposed the Plan's approval, unless the Commission, *inter alia*, required Qwest to participate in a separate proceeding to set just and reasonable rates for wholesale services.

> n1 *In the Matter of a Petition by Qwest Corporation for Approval of its Alternative Form of Regulation Plan*, Docket No. P-421/AR-05-1081.

On December 23, 2005, the Commission issued an Order approving the AFOR Plan, with modifications that did not include those recommended by the competitive local exchange carriers. The Commission concluded that wholesale pricing issues related to Qwest could be more effectively and appropriately [*2] addressed in a separate proceeding.

On January 9, 2006, the Commission issued an Order To Show Cause in this docket, directing Qwest to explain why the Commission should not open a contested case proceeding to investigate whether Qwest's wholesale rates for intrastate services are just and reasonable.

On February 8, 2006, Qwest filed initial comments. Qwest argued that the instant docket should be closed because:

> 1) the Commission has no authority to set prices under *47 U.S.C. § 271*;
>
> 2) Qwest provides the services at tariffed rates;
>
> 3) other providers provide the services at issue at similar prices;
>
> 4) only a minuscule portion of the market is affected by the services at issue; and
>
> 5) the Federal Communications Commission (FCC) has determined that certain wire centers are no

Case 2:06-cv-00577-WKW-TFM    Document 35-11    Filed 11/29/2006    Page 3 of 11

Page 2
2006 Minn. PUC LEXIS 48, *2

longer "impaired" and the Minnesota Commission should not attempt to reverse that determination.

On February 15, 2006, Qwest filed additional comments.

On February 24. 2006, Eschelon Telecom, Inc. (Eschelon), a competitive local exchange carrier (CLEC), filed discovery requests on Qwest.

On March 6, 2006, Qwest responded by letter, indicating that it [*3] would not respond to discovery at this time because the Commission had not yet determined whether to commence a proceeding nor referred the matter to the Office of Administrative Hearings (OAH) for a contested case proceeding.

On March 9, 2006, Eschelon, filed a notice of motion and motion to compel discovery, and for extension of time to reply to initial comments of Qwest.

On March 10, 2006, the Commission issued a notice soliciting comments on Eschelon's motion and froze the time line for filing reply comments.

On March 10, 2006, Qwest filed a reply in opposition to Eschelon's motions to compel and for extension of time.

On March 20, 2006, the Department filed comments on Eschelon's motion to compel discovery. On March 20, 2006, the following CLECs filed comments, nominally as the "CLEC Coalition":

. McLeodUSA Telecommunications Service, Inc. POPP.com, Inc.

. DIECA Communications, Inc. d/b/a Covad Communications Company

. TDS Metrocom

. XO Communications of Minnesota, Inc.

On March 29, 2006, the Department of Commerce (the Department) filed reply comments. The Department argued that the Commission has the responsibility to ensure that prices for wholesale services [*4] at issue are just and reasonable and the Commission's ability to set rates under state law is not precluded by federal law.

On March 31, 2006, the CLEC Coalition members, together with Eschelon and Integra Telecom of Minnesota, Inc. ("Joint CLECs"), filed reply comments. The Joint CLECs concurred with the Department that the Commission has jurisdiction over the wholesale services at issue herein.

The matter came before the Commission on April 11, 2006.

### FINDINGS AND CONCLUSIONS

**I. Jurisdiction and Referral for Contested Case Proceedings**

Qwest argued that the Commission should not investigate its intrastate wholesale rates and should close this docket, based on two claims:

> (1) *No jurisdiction* -- Congress and the FCC have preempted the Commission's authority over rates for intrastate wholesale services, facilities, and service elements required under *47 U.S.C. § 271,* which the Commission itself has acknowledged in an earlier order; and

Case 2:06-cv-00577-WKW-TFM   Document 35-11   Filed 11/29/2006   Page 4 of 11

Page 3
2006 Minn. PUC LEXIS 48, *4

> (2) *No need* -- Qwest's intrastate wholesale rates are fair and reasonable and pose no threat to the continuing development and viability of local competition in Minnesota.

The Commission [*5] rejects both claims for the reasons set forth below.

### A. The Preemption Claim

Qwest claims that the Commission lacks authority over its rates for intrastate wholesale services and facilities required under *47 U.S.C. § 271* (§ 271), stating that "in passing the Act [the federal Telecommunications Act of 1996], Congress left the regulation of local telephone service largely in the hands of the FCC, carving out for the states only limited authority pursuant to a small number of express grants in the Act." n2

  n2 Qwest Corporation's Initial Comments, p. 5.

Qwest argues that, even if state law requires reasonable prices, the FCC has exclusive jurisdiction over prices of § 271 elements and services, and that state commission authority over these has been preempted.

The Commission rejects this overly broad view of preemption. State and federal authorities have concurrent jurisdiction over incumbent local exchange carriers' (ILECs') prices, unless a state pricing scheme is specifically [*6] preempted. Here, state regulation has not been preempted, and the Commission finds that it has jurisdiction over the prices of wholesale elements and services required by § 271. First, the complaint and investigation in this docket do not necessarily concern the exclusive setting of rates under federal standards under *47 U.S.C. § 271*. Instead, this docket is also concerned with setting rates under Minnesota law applicable to Qwest's Minnesota rates. In its January 9, 2006, Order to Show Cause in this docket, the Commission stated, "It is therefore important to ensure that rates for wholesale services and facilities newly exempted from cost-based rate regulation under *47 U.S.C. § 251* continue to meet the just and reasonable' standard *set by state and federal law*" (emphasis added).

Second, Qwest takes an overly broad view of the doctrine of preemption. Preemption is "not to be lightly presumed," n3 especially in the context of telecommunications, where concurrent federal/state jurisdiction is the norm, not the exception.

  n3 *Qwest Corporation v. Minnesota Public Utilities Commission, 380 F.3d 367, 372, 374*, citing *Calif. Fed. Sav. and Loan Ass'n. v. Guerra, 479 U.S. 272, 281*.

[*7]

### 1. Federal Preemption Law

Qwest claims that Congress generally has preempted all state law regarding telephone pricing, and that the only state laws that remain enforceable are those that have been expressly preserved. The Commission rejects this notion. As stated, there is a general presumption of concurrent state and federal regulatory authority over telecommunications. n4

  n4 *See, e.g., Medtronic Inc. v. Lohr, 518 U.S. 470, 485 (1996)*.

Case 2:06-cv-00577-WKW-TFM   Document 35-11   Filed 11/29/2006   Page 5 of 11

Page 4
2006 Minn. PUC LEXIS 48, *7

The Commission finds that its jurisdiction over the area of Qwest's wholesale pricing is not preempted by any of the three primary forms of federal preemption: express; field; or conflict.

### (a) Express Preemption

Express preemption, which occurs where Congress has expressly stated in the text of a federal law that authority over a matter is given to federal authorities, to the exclusion of the states, clearly is inapplicable to this matter. First, *47 U.S.C. § 271* contains no express provision for rates nor [*8] any directive regarding authority to make rates. Second, while the FCC has asserted its authority to regulate prices of the § 271 elements and services, it does not appear to have asserted that its authority is exclusive, or indicated that the states do not have concurrent authority to set rates for § 271 elements and services. In fact, the question of whether states may set rates for services required by § 271 has been pending, unanswered, for several years before the FCC. n5

> n5 *Emergency, Petition of BellSouth for Declaratory, Ruling and Preemption of State Action*, WC Docket No. 04-245 (July 1, 2004).

### (b) Field Preemption

Nor does the Commission find the doctrine of field preemption applicable to this matter. Field preemption occurs where Congress has not expressly stated that authority is given solely to a federal agency, but in enacting a regulatory scheme, the federal statutes and regulations are considered to be so comprehensive as to have fully occupied the regulated field.

Here, the field of intrastate [*9] rate making has not been fully occupied by federal law. In enacting the Telecommunications Act of 1996, Congress did not preempt all state regulation of telephone carriers. Instead, Congress expressly preserved the states' ability to enforce laws that furthered Congress's goals of fostering local competition and state commission authority to enforce state regulations, orders and policies regarding the operation of local telecommunications markets "as long as state commission regulations are consistent with the Act." n6

> n6 *Michigan Bell Telephone Company v. MCIMetro Access Transmission Services, Inc., 323 F.3d, 348, 359 (6th Cir. 2003), rehearing and rehearing en banc denied* (June 5, 2003).

### (c) Conflict Preemption

Finally, the Commission does not find the theory of conflict preemption applicable to this matter. In conflict preemption, compliance with both federal and state regulation is a physical impossibility, *i.e.*, state law is an obstacle to the achievement of the purposes [*10] and objectives of Congress.

First, having "fair and reasonable" prices for wholesale elements and services under Minnesota law does not appear to make having "just and reasonable" prices under federal law impossible; instead the federal and state price standards appear to have the common objective of reasonable prices. Nor is there any apparent conflict between the federal and state pricing rules for wholesale elements and services, each requiring that the prices be fair (or just) and reasonable.

Further, the primary objective of the Telecommunications Act of 1996 has been to open telecommunications markets to effective competition. n7 To do so, the methods that Congress has chosen are, *inter alia*, to require LECs to open their networks, interconnect with competitors upon request, and establish fair, reasonable, non-discriminatory rates for § 271 elements. None of these objectives suggest an intent to preempt and displace state standards requiring fair, reasonable,

Case 2:06-cv-00577-WKW-TFM    Document 35-11    Filed 11/29/2006    Page 6 of 11

Page 5
2006 Minn. PUC LEXIS 48, *10

and non-discriminatory rates.

> n7 *See, e.g. Iowa Utilities Board v. Federal Communications Commission, 120 F.3d at 791-792* (8th Cir.).

[*11]
Finally, and importantly, there are no FCC decisions stating that state pricing of § 271 elements and services are preempted. The FCC's silence cannot be construed to demonstrate a Congressional intent to preempt state pricing regulations of § 271 elements and services.

### 2. This Commission May Determine Whether Qwest's Rates are Fair and Reasonable Under Minnesota Law

As the Eighth Circuit noted in rejecting the claim that this Commission was preempted from exercising jurisdiction over intrastate access services provided under Qwest's federal tariffs, "the jurisdictional separations process, therefore, is one part of a larger regulatory process for rate regulation. As we see it, neither the jurisdictional separations process, nor the larger regulatory framework in which it exists, is generally designed to confer *exclusive* regulatory power." n8 (emphasis added).

> n8 *Qwest Corporation v. Minnesota Public Utilities Commission, 380 F.3d 367, 372 (8th Cir. 2004).*

State law clearly [*12] grants this Commission authority over the rates for wholesale services and elements. n9 The Commission has carefully examined Qwest's claim that these state statutes have been preempted, applying the preemption analysis it used in the case upheld by the Eighth Circuit, and the Commission concurs with the Department and the Joint CLECs that it has jurisdiction over Qwest's rates for intrastate wholesale services, including those offered under *47 U.S.C. § 271.* n10

> n9 *Minn. Stat. §§ 237.011, 237.06, 237.16.*
>
> n10 That analysis is set forth in *In the Matter of the Complaint of AT&T Communications of the Midwest. Inc. Against U S WEST Communications, Inc. Regarding Access Service*, Docket No. P-421/C-99-1183, Order Finding Jurisdiction, Rejecting Claims for Relief, and Opening Investigation (August 15, 2000).

Further, the Commission rejects Qwest's claim that it [*13] has previously determined that it lacks jurisdiction over the issue(s) before it in this case. Qwest cites the Commission's decision in an arbitration proceeding between Qwest and Covad Communications, in which the Commission accepted an Administrative Law Judge's recommendations, which were based in part on the Judge's conclusion that the FCC "has retained authority to determine the scope of access obligations pursuant to section 271." n11 The scope of access obligations is not the issue here, and the Commission rejects the claim that it has previously addressed and decided the jurisdictional issue raised by Qwest in this case. n12

> n11 Qwest Corporation's Initial Comments, pp. 6-7.
>
> n12 In the *Covad/Qwest ICA Arbitration*, the Commission merely acknowledged that it would not

Case 2:06-cv-00577-WKW-TFM    Document 35-11    Filed 11/29/2006    Page 7 of 11

Page 6
2006 Minn. PUC LEXIS 48, *13

> require non-251 elements to be in an ICA. The Commission did not address at all in that arbitration the separate issue of the Commission's authority to set "fair and reasonable" prices under state law.

Finally, should jurisdictional issues [*14] arise as the case proceeds, the Administrative Law Judge will ensure that those issues are properly developed and preserved, since subject matter jurisdiction is a bedrock issue that can be raised at any point in the proceeding.

For all these reasons, the Commission rejects Qwest's claim that the Commission lacks jurisdiction over this case.

### B. The "No Need" Claim

Qwest's second claim -- that there is no need to investigate its intrastate wholesale rates for services and facilities provided under *47 U.S.C. § 271* because the rates are reasonable, there are multiple competitors providing similar services and facilities, and local competition will not be adversely affected by the rates for these services and facilities -- rests on contested material facts and goes to the merits of the case.

Under Minnesota law, the Commission has the authority to investigate these matters. Specifically, *Minn. Stat. § 237.081*, subd. 1 provides that, whenever the Commission believes that an investigation of any matter relating to any telephone service should for any reason be made, the Commission may on its own motion [*15] investigate the service or matter. Because the Department and the complaint of the CLECs raised significant questions regarding Qwest's wholesale rates for intrastate services, matters clearly within the Commission's jurisdiction and concerning the fairness and reasonableness of prices required by Minnesota law to be fair and reasonable, the Commission has the authority to investigate.

The Commission concludes that there is good cause to investigate these matters. These issues cannot be effectively resolved without the evidentiary proceedings for which this case is being referred to the Office of Administrative Hearings.

For all these reasons, the Commission concludes that it should proceed with the investigation proposed in its Order to Show Cause.

### C. Referral for Contested Case Proceeding

The Commission finds that it cannot resolve the issues raised in this matter on the basis of the record before it. Those issues turn on specific facts that are best developed in formal evidentiary hearings. The Commission will therefore refer the matter to the Office of Administrative Hearings for contested case proceedings.

## II. Issues to be Addressed

The issues in this case center [*16] around whether Qwest's wholesale rates for intrastate services are just and reasonable, and, if it not, what remedial action the Commission should take.

The competitive local exchange carriers who participated in the AFOR proceeding argued that almost all of Qwest's competitors in the local service market rely on some portion of Qwest's network to reach their customers. They further argued that unless competitive carriers have reasonably priced access to wholesale services and facilities, local competition in Minnesota will be vastly diminished, if not destroyed.

The local exchange carriers alleged that recent federal decisions have released Qwest, as to certain "unimpaired" wire

Case 2:06-cv-00577-WKW-TFM   Document 35-11   Filed 11/29/2006   Page 8 of 11

Page 7
2006 Minn. PUC LEXIS 48, *16

centers, from its earlier obligation under *47 U.S.C. § 251* to charge only cost-based rates set by this Commission for wholesale services and facilities. Instead, as to these unimpaired wire centers, state and federal law require rates for wholesale elements and services to be just and reasonable. This standard is subject to interpretation, and is allegedly being interpreted by Qwest to support pending wholesale rate increases ranging from 54% to 350%.

There are also [*17] pending discovery issues. In its March 9, 2006, motion to compel discovery, Eschelon requested Qwest to respond to 21 information requests, addressing the factual assertions contained in Qwest's February 8, 2006, initial comments. The information requests refer to assertions made by Qwest and seek specific information regarding the pricing of DS1 and DS3 loops and transport facilities, location of wire centers, and similar matters.

The parties shall address the above issues in the course of contested case proceedings. They may also raise and address other issues relevant to the Order to Show Cause.

### III. Procedural Outline

#### A. Administrative Law Judge

The Administrative Law Judge assigned to this case is Steve M. Mihalchick. His address and telephone number are as follows: Office of Administrative Hearings, Suite 1700, 100 Washington Square, Minneapolis, Minnesota 55401-2138; (612) 349-2544.

#### B. Hearing Procedure

*. Controlling Statutes and Rules*

Hearings in this matter will be conducted in accordance with the Administrative Procedure Act, *Minn. Stat. §§ 14.57-14.62*; the rules of the Office [*18] of Administrative Hearings, *Minn. Rules, parts 1400.5100* to *1400.8400*; and, to the extent that they are not superseded by those rules, the Commission's Rules of Practice and Procedure, *Minn. Rules, parts 7829.0100* to *7829.3200*.

Copies of these rules and statutes may be purchased from the Print Communications Division of the Department of Administration, 660 Olive Street, St. Paul, Minnesota 55155; (651) 297-3000. These rules and statutes also appear on the State of Minnesota's website at www.revisor.leg.state.mn.us.

The Office of Administrative Hearings conducts contested case proceedings in accordance with the Minnesota Rules of Professional Conduct and the Professionalism Aspirations adopted by the Minnesota State Bar Association.

*. Right to Counsel and to Present Evidence*

In these proceedings, parties may be represented by counsel, may appear on their own behalf, or may be represented by another person of their choice, unless otherwise prohibited as the unauthorized practice of law. They have [*19] the right to present evidence, conduct cross-examination, and make written and oral argument. Under *Minn. Rules, part 1400.7000*, they may obtain subpoenas to compel the attendance of witnesses and the production of documents.

Parties should bring to the hearing all documents, records, and witnesses necessary to support their positions.

*. Discovery and Informal Disposition*

Any questions regarding discovery under *Minn. Rules, parts 1400.6700* to *1400.6800* or informal disposition under *Minn. Rules, part 1400.5900* should be directed to Ganesh Krishnan, Public Utilities Rates Analyst, Minnesota Public Utilities Commission, 121 Seventh Place East, Suite 350, St. Paul, Minnesota 55101-2147, (651) 201-2215; or Jeanne

Cochran, Assistant Attorney General, 1100 NCL Tower, 445 Minnesota Street, St. Paul, Minnesota 55101, (651) 296-2106.

. *Protecting Not-Public Data*

State agencies are required by law to keep some data not public. Parties must advise the Administrative Law Judge if not-public data is offered [*20] into the record. They should take note that any not-public data admitted into evidence may become public unless a party objects and requests relief under *Minn. Stat. § 14.60*, subd. 2.

. *Accommodations for Disabilities; Interpreter Services*

At the request of any individual, this agency will make accommodations to ensure that the hearing in this case is accessible. The agency will appoint a qualified interpreter if necessary. Persons must promptly notify the Administrative Law Judge if an interpreter is needed.

. *Scheduling Issues*

The times, dates, and places of evidentiary hearings in this matter will be set by order of the Administrative Law Judge after consultation with the Commission and the parties.

. *Notice of Appearance*

Any party intending to appear at the hearing must file a notice of appearance (Attachment A) with the Administrative Law Judge within 20 days of the date of this Notice and Order for Hearing.

. *Sanctions for Non-compliance*

Failure to appear at a prehearing conference, a settlement conference, or the hearing, or failure to comply with any order of the Administrative Law Judge, may result in facts or issues [*21] being resolved against the party who fails to appear or comply.

### C. Parties and Intervention

The current parties to this case are Qwest and the Department of Commerce. Other persons wishing to become formal parties shall promptly file petitions to intervene with the Administrative Law Judge. They shall serve copies of such petitions on all current parties and on the Commission. *Minn. Rules, part 1400.6200*.

### D. Prehearing Conference

A pre-hearing conference has been scheduled for May 23, 2006, at 10:30 a.m. It will take place at the Large Conference Room, Public Utilities Commission, 121 Seventh Place East, Suite 350, St. Paul, MN 55101-2147.

Parties and persons intending to intervene in the matter should attend the conference, prepared to discuss time frames and scheduling. Other matters which may be discussed include the locations and dates of hearings, discovery procedures, settlement prospects, and similar issues. Potential parties are invited to attend the pre-hearing conference and to file their petitions to intervene as soon as possible.

### IV. Application of Ethics in Government Act

The lobbying provisions of the [*22] Ethics in Government Act, *Minn. Stat. §§ 10A.01* et seq., may apply to this case. Persons appearing in this proceeding may be subject to registration, reporting, and other requirements set forth in that

Case 2:06-cv-00577-WKW-TFM   Document 35-11   Filed 11/29/2006   Page 10 of 11

Page 9
2006 Minn. PUC LEXIS 48, *22

Act. All persons appearing in this case are urged to refer to the Act and to contact the Campaign Finance and Public Disclosure Board, telephone number (651) 296-5148, with any questions.

**V. Ex Parte Communications**

Restrictions on ex parte communications with Commissioners and reporting requirements regarding such communications with Commission staff apply to this proceeding from the date of this Order. Those restrictions and reporting requirements are set forth at *Minn. Rules, parts 7845.7300-7845.7400*, which all parties are urged to consult.

### ORDER

1. The Commission hereby refers the issues raised in it Order to Show Cause to the Office of Administrative Hearings for contested case proceedings, as set forth above.

2. The Commission hereby refers the issues raised in Eschelon's March 9, 2006, motion to compel discovery [*23] to the Office of Administrative Hearings for resolution in the contested case proceedings.

3. This Order shall become effective immediately.

> BY ORDER OF THE COMMISSION
>
> ATTACHMENT
>
> ATTACHMENT A
>
> BEFORE THE MINNESOTA OFFICE OF ADMINISTRATIVE HEARINGS
>
> 100 Washington Square, Suite 1700
>
> Minneapolis, Minnesota 55401-2138
>
> FOR THE MINNESOTA PUBLIC UTILITIES COMMISSION
>
> 121 Seventh Place East Suite 350
>
> St. Paul, Minnesota 55101-2147

**NOTICE OF APPEARANCE**

Name, Address and Telephone Number of Administrative Law Judge:

Steve M. Mihalchick, Office of Administrative Hearings, Suite, 1700, 100 Washington Square, Minneapolis, Minnesota 55401; (612) 349-2544

TO THE ADMINISTRATIVE LAW JUDGE:

You are advised that the party named below will appear at the above hearing.

NAME OF PARTY:

ADDRESS:

TELEPHONE NUMBER AND E-MAIL ADDRESS:

PARTY'S ATTORNEY OR OTHER REPRESENTATIVE:

OFFICE ADDRESS:

TELEPHONE NUMBER AND E-MAIL ADDRESS:

SIGNATURE OF PARTY OR ATTORNEY:

DATE: