**<u>Pennsylvania 271 Order</u>,**
**16 F.C.C.R. 17419, at ¶5 (2001)**
*(Excerpt)*

Westlaw.

16 F.C.C.R. 17419, 16 FCC Rcd. 17419, 2001 WL 1097019 (F.C.C.)    Page 1
(Cite as: 16 F.C.C.R. 17419, 16 FCC Rcd. 17419, 2001 WL 1097019 (F.C.C.))

16 F.C.C.R. 17419, 16 FCC Rcd. 17419, 2001 WL 1097019 (F.C.C.)

Federal Communications Commission (F.C.C.) Memorandum Opinion and Order

**\*\*1** IN THE MATTER OF APPLICATION OF VERIZON PENNSYLVANIA INC., VERIZON LONG DISTANCE, VERIZON ENTERPRISE SOLUTIONS, VERIZON GLOBAL NETWORKS INC., AND VERIZON SELECT SERVICES INC. FOR AUTHORIZATION TO PROVIDE IN-REGION, INTERLATA SERVICES IN PENNSYLVANIA
CC Docket No. 01-138
FCC 01-269

Adopted: September 19, 2001
Released: September 19, 2001

\*17419 By the Commission: Commissioner Copps dissenting and issuing a statement.\*17420 I. INTRODUCTION

1. On June 21, 2001, Verizon Pennsylvania Inc., Verizon Long Distance, Verizon Enterprise Solutions, Verizon Global Networks Inc., and Verizon Select Services Inc. (Verizon) filed this application pursuant to section 271 of the Communications Act of 1934, as amended,[FN1] for authority to provide in-region, interLATA service originating in the state of Pennsylvania. We grant the application in this Order based on our conclusion that Verizon has taken the statutorily required steps to open its local exchange markets in Pennsylvania to competition.

2. According to Verizon, competing carriers in Pennsylvania serve approximately one million lines, one-third of which are residential, using all three entry paths available under the Act.[FN2] Across the state, competitors serve more than 600,000 lines solely over their own facilities; more than 385,000 lines through unbundled network elements; and more than 160,000 lines through resale. In addition, Verizon asserts that competitors exchange approximately two billion minutes of traffic each month with Verizon over local interconnection facilities that are more than three-fourths the size of Verizon's own local interoffice network. Verizon also states that competitors have access to more than 90 percent of Verizon's access lines in Pennsylvania through approximately 2,000 collocation arrangements.[FN3]

3. In granting this application, we recognize the hard work of the Pennsylvania Public Utility Commission (Pennsylvania Commission) in laying the foundation for approval of this application. The Pennsylvania Commission conducted extensive proceedings concerning Verizon's section 271 compliance, which were open to participation by all interested parties. In addition, the Pennsylvania Commission adopted a broad range of performance measures and standards as well as a Performance Assurance Plan (PAP) designed to create a financial incentive \*17421 for post-entry compliance with section 271.[FN4] Moreover, the Pennsylvania Commission will continue its oversight of Verizon's performance through ongoing state proceedings.[FN5] As the Commission has recognized, state proceedings demonstrating a commitment to advancing the pro-competitive purposes of the Act serve a vitally important role in the section 271 process.[FN6]

II. BACKGROUND

4. In the 1996 amendments to the Communications Act, Congress required that the Bell Operating Companies (BOCs) demonstrate compliance with certain market-opening requirements contained in section 271 of the Act before providing in-region, interLATA long distance service.[FN7] Congress provided for Commission review of BOC applications to provide such service in consultation with the affected state and the Attorney General.[FN8]

**\*\*2** 5. On January 8, 2001, Verizon filed a preliminary application for section 271 approval with the Pennsylvania Commission (the Compliance Filing).[FN9] A majority of the Pennsylvania Commission conditionally approved Verizon's Compliance Filing on June 6, 2001.[FN10] Specifically, the Pennsylvania Commission found that Verizon demonstrated compliance with the statutory requirements of section 271 in most respects, but that further action would be \*17422 necessary to demonstrate that the local exchange and access markets in Pennsylvania were fully and irreversibly open to competition.[FN11] Verizon filed a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:06-cv-00577-WKW-TFM    Document 35-16    Filed 11/29/2006    Page 3 of 3

16 F.C.C.R. 17419, 16 FCC Rcd. 17419, 2001 WL 1097019 (F.C.C.)　　　　　　　　　　　　　　　　　　　　　　Page 2
(Cite as: 16 F.C.C.R. 17419, 16 FCC Rcd. 17419, 2001 WL 1097019 (F.C.C.))

letter with the Pennsylvania Commission on June 7, 2001 accepting the terms of the June 6, 2001 conditional approval.FN[FN12] Verizon thereafter filed its application for section 271 authority in Pennsylvania with this Commission on June 21, 2001.FN[FN13] Comments concerning the instant application were filed on July 11, 2001, and reply comments were filed on August 6, 2001.FN[FN14] The Pennsylvania Commission filed both comments and a reply in this proceeding, supporting Verizon's application in both instances.FN[FN15]

6. The Department of Justice does not oppose Verizon's section 271 application for Pennsylvania, but states that it is unable fully to endorse it due to concerns about Verizon's wholesale billing systems.FN[FN16] The Department of Justice also states, however, that local markets in Pennsylvania show a substantial amount of competitive entry, and does not foreclose the possibility that this Commission may be able to approve Verizon's application.FN[FN17] The evaluation explains that, due to the timing of the application, "Verizon has not been able to demonstrate that its billing system modifications have fully resolved its billing problems in actual commercial operations."FN[FN18] The Department of Justice recognizes that the Commission may gather additional information on this issue during the pendency of this proceeding, and "may therefore be able to assure itself that Verizon's billing problems have been resolved."FN[FN19] As discussed below, in reviewing this application, we do consider additional information regarding Verizon's billing *17423 performance that was not available to the Department of Justice at the time it prepared its evaluation.

7. In reviewing this application, which was filed on June 21, 2001, we examine performance data as reported in carrier-to-carrier reports reflecting service in the period from February through June 2001. We examine Verizon's June performance data for the purpose of confirming acceptable performance or a trend of improvement shown in earlier months' data. We also examine data reflecting Verizon's June billing performance to verify that the billing system fixes implemented by Verizon in June were effective. Although as a general rule we do not rely on factual evidence that post-dates the application in assessing checklist compliance,FN[FN20] the Commission has previously considered performance that covered a time period slightly beyond the comment filing date,FN[FN21] and we believe it is appropriate to do so here. Verizon's application was submitted a few days after Verizon implemented changes to its billing process to address problems with electronic bills. Neither the June carrier-to-carrier performance data nor the data reflecting Verizon's June billing performance, however, could be generated until the end of the calendar month. We believe it is reasonable, therefore, to consider both Verizon's June carrier-to-carrier and billing data and do not believe that any party to this proceeding is prejudiced by such consideration.

**3 8. We also note that the Act does not require Verizon to make a showing of checklist compliance with respect to the former GTE operating company it acquired in Pennsylvania in order to obtain section 271 authorization for this state.FN[FN22] Section 271(c) establishes the checklist requirements that a BOC must meet in order to provide in-region interLATA services.FN[FN23] Section 271(c) applies only to BOCs themselves, and not to BOC affiliates.FN[FN24] The Act defines "Bell *17424 operating company" to include 20 companies specifically named in the statute, and "any successor or assign of such company that provides wireline telephone exchange service," but expressly excludes "an affiliate of such company" other than one of the specifically named companies or their successors or assigns.FN[FN25] Although the former GTE operating company became an affiliate of Verizon as a result of the parent company merger, it is neither a BOC nor a successor or assign of Verizon. Thus, we find that Verizon is not required to show checklist compliance for GTE North, the former GTE LEC, to receive section 271 authorization for the state of Pennsylvania.

### III. CHECKLIST COMPLIANCE

#### A. Primary Issues In Dispute

9. In a number of prior orders, the Commission discussed in considerable detail the analytical framework and particular legal showing required to establish checklist compliance.FN[FN26] In this Order, we rely upon the legal and analytical precedent established in those prior orders. Additionally, as in the *Verizon Connecticut Order*, we include comprehensive appendices containing performance data and the statutory framework for approving section 271 applications.FN[FN27]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.