<u>**Maine 271 Order**</u>,
**17 F.C.C.R. 11659, at ¶65 (2002)**
*(Excerpt)*

Westlaw.

2002 WL 1339069 (F.C.C.), 17 F.C.C.R. 11,659, 17 FCC Rcd. 11,659
**(Cite as: 2002 WL 1339069 (F.C.C.), 17 F.C.C.R. 11659)**

C

Federal Communications Commission (F.C.C.)

Memorandum Opinion and Order

*1 IN THE MATTER OF APPLICATION BY VERIZON NEW ENGLAND INC., BELL ATLANTIC COMMUNICATIONS, INC. (D/B/A VERIZON LONG DISTANCE), NYNEX LONG DISTANCE COMPANY (D/B/A VERIZON ENTERPRISE SOLUTIONS), VERIZON GLOBAL NETWORKS INC., AND VERIZON SELECT SERVICES INC., FOR AUTHORIZATION TO PROVIDE IN-REGION, INTERLATA SERVICES IN MAINE
CC Docket No. 02 - 61

FCC 02-187
Adopted: June 18, 2002
Released: June 19, 2002

**11659 By the Commission:

**11660 I. INTRODUCTION

1. On March 21, 2002, Verizon New England Inc., Bell Atlantic Communications, Inc. (d/b/a Verizon Long Distance), NYNEX Long Distance Company (d/b/a Verizon Enterprise Solutions), Verizon Global Networks Inc., and Verizon Select Services Inc. (Verizon) filed this application pursuant to section 271 of the Communications Act of 1934, as amended, [FN1] for authority to provide in-region, interLATA service originating in the State of Maine. We grant the application in this Order based on our conclusion that Verizon has taken the statutorily required steps to open its local exchange markets in Maine to competition.

2. This application demonstrates that even in very rural states, competition in the market for local telecommunications can develop under the appropriate market and regulatory circumstances. According to Verizon, competing carriers in Maine serve approximately 50,600 lines using all three entry paths available under the Act (resale, unbundled network elements, and competitor-owned facilities). [FN2] Across the state, competitors serve approximately 38,800 lines through resale and approximately 11,800 lines using unbundled network elements or their own facilities. [FN3]

3. We wish to recognize the effort and dedication of the Maine Public Utilities Commission (Maine Commission). In smaller, more rural states, the section 271 process taxes the resources of the state commissions, even more heavily than in other states. Yet, by diligently **11661 and actively conducting proceedings beginning in 1997 to set TELRIC prices, to implement performance measures, to develop a Performance Assurance Plan (PAP), and to evaluate Verizon's compliance with section 271 of the Act, the Maine Commission laid the necessary foundation for our review and approval. We are confident that the Maine Commission's efforts, culminating in the grant of this application, will reward Maine consumers by making increased competi-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Verizon's region, the Maine Commission will establish a "rapid response" process which will be used to resolve disagreements among competing carriers. [FN271]

*19 63. As in prior section 271 orders, our conclusions are based on a review of several key elements in the PAP: total liability at risk; the definitions of the performance measurements and standards; the structure of the plan; the self-executing nature of remedies in the plan; the plan's data validation and audit procedures; and the plan's accounting requirements. [FN272] We find generally that the Maine PAP satisfies our analysis in each of these respects. We also note that Verizon acknowledges the Maine Commission's ability to redistribute the money available among all aspects of the Plan during the year. [FN273] In addition, we take comfort in the Maine Commission's expressed intent to continue to examine issues related to the PAP and to update or change the PAP as needed. [FN274] No commenter has raised any issues relating to the PAP in the record before us.

VII. SECTION 271(d)(6) ENFORCEMENT AUTHORITY

64. Section 271(d)(6) of the Act requires Verizon to continue to satisfy the "conditions required for ... approval" of its section 271 application after the Commission approves its application. [FN275] Thus, the Commission has a responsibility not only to ensure that Verizon is in compliance with section 271 today, but also that it remains in compliance in the future. As the Commission has already described the post-approval enforcement framework and **11700 its section 271(d)(6) enforcement powers in detail in prior orders, it is unnecessary to do so again here. [FN276]

65. **Working** in **concert** with the **Maine Commission**, we intend to monitor closely Verizon's post-approval compliance for Maine to ensure that Verizon does not "cease[] to meet any of the conditions required for [section 271] approval." [FN277] We stand ready to exercise our various statutory enforcement powers quickly and decisively in appropriate circumstances to ensure that the local market remains open in Maine. We are prepared to use our authority under section 271(d)(6) if evidence shows market opening conditions have not been maintained.

66. We require Verizon to report to the Commission all Maine carrier-to-carrier performance metric results and Performance Assurance Plan monthly reports beginning with the first full month after the effective date of this Order, and for each month thereafter for one year unless extended by the Commission. These results and reports will allow us to review, on an ongoing basis, Verizon's performance to ensure continued compliance with the statutory requirements. We are confident that cooperative state and federal oversight and enforcement can address any backsliding that may arise with respect to Verizon's entry into the Maine long distance market. [FN278]

VIII. CONCLUSION

*20 67. For the reasons discussed above, we grant Verizon's application for authorization under section 271 of the Act to provide in-region, interLATA services in the State of Maine.

**11701 IX. ORDERING CLAUSES

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.