<u>**New York 271 Order**</u>,
**15 F.C.C.R. 3953, at ¶452 (1999)**
*(Excerpt)*

15 F.C.C.R. 3953, 15 FCC Rcd. 3953, 19 Communications Reg. (P&F) 1, 1999 WL 1243135 (F.C.C.)

Page 1

(Cite as: 15 F.C.C.R. 3953, 15 FCC Rcd. 3953, 19 Communications Reg. (P&F) 1, 1999 WL 1243135 (F.C.C.))

15 F.C.C.R. 3953, 15 FCC Rcd. 3953, 19 Communications Reg. (P&F) 1, 1999 WL 1243135 (F.C.C.)

Federal Communications Commission (F.C.C.) Memorandum Opinion and Order

**1 IN THE MATTER OF APPLICATION BY BELL ATLANTIC NEW YORK FOR AUTHORIZATION UNDER SECTION 271 OF THE COMMUNICATIONS ACT TO PROVIDE IN-REGION, INTERLATA SERVICE IN THE STATE OF NEW YORK
CC Docket No. 99-295
FCC 99-404

Adopted: December 21, 1999
Released: December 22, 1999

*3953 By the Commission: Chairman Kennard and Commissioners Ness and Powell issuing separate statements; Commissioner Furchtgott-Roth concurring and issuing a statement.*3955 **I. INTRODUCTION AND OVERVIEW**

1. In this Order, we grant Bell Atlantic's application to enter the interLATA long distance market in New York State based on our conclusion that Bell Atlantic has taken the statutorily required steps to open its local exchange and exchange access markets to competition. The market opening actions by the New York Commission and Bell Atlantic underlying our decision bring the telecommunications industry one step closer to realization of the full pro-competitive goals of the 1996 Telecommunications Act,FN[FN1] and promise substantial benefits for consumers in the form of lower rates and innovative service packages. Bell Atlantic filed the *3956 application addressed in this Order with the Commission on September 29, 1999. Fifty-seven parties filed comments on the application on October 18, 1999. Of these, more than twenty parties supported grant of the application. Twenty-five parties filed reply comments on November 8, 1999.FN[FN2]

2. Our decision today approving Bell Atlantic's application represents the culmination of extensive federal and state efforts implementing the Telecommunications Act of 1996. This action builds on the experience that this Commission has gained from reviewing prior section 271 applications and developing rules to implement section 251 of the Communications Act. Significantly, it also builds on the tireless efforts of the New York Commission, which has worked long and hard with Bell Atlantic and competitive local exchange companies (LECs) to ensure that local markets in New York are open to competition.

3. In enacting the telephony provisions of the 1996 Act, Congress envisioned fundamental pro-competitive changes in the then-existing telecommunications environment. To this end, Congress took the momentous step of requiring that the incumbent LECs open the traditionally non-competitive local exchange and exchange access markets to competition in order to foster the entry of alternative service providers. Once the Bell Operating Companies (BOCs) have opened their local markets to competition, the 1996 Act permits them to enter the in-region, interLATA toll market, thereby increasing competition in the long distance telecommunications market.

4. Unfortunately, implementation of this congressional vision of increased telecommunications competition has, in many instances, not proceeded swiftly or smoothly. For example, some of the section 271 applications that we have reviewed to date have fallen far short of the statutory requirements. Moreover, some carriers attacked sections 271-275 of the Act on constitutional grounds arguing that each constitutes an impermissible bill of attainder.FN[FN3] The court roundly rejected this challenge, stating that these provisions "are constitutionally sound."FN[FN4] We believe that the instant application represents a turning point in the process of implementing the 1996 Act, with a new focus by the BOCs on taking the steps necessary to open the local exchange and exchange access markets to competition.

**2 5. While this is the first section 271 application to receive Commission approval, our decision here reflects the fundamental principles adopted in our prior section 271 orders. Thus, we apply the general standards developed in prior orders in evaluating section 271 compliance - whether the BOC is providing service to competitors at parity with its retail offerings or, when there is no analogous retail activity, whether the BOC's performance would allow an efficient competitor a meaningful opportunity to compete. Based on our growing experience in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:06-cv-00577-WKW-TFM     Document 35-18     Filed 11/29/2006     Page 3 of 3

15 F.C.C.R. 3953, 15 FCC Rcd. 3953, 19 Communications Reg. (P&F) 1, 1999 WL 1243135 (F.C.C.)
(Cite as: 15 F.C.C.R. 3953, 15 FCC Rcd. 3953, 19 Communications Reg. (P&F) 1, 1999 WL 1243135 (F.C.C.))

Page 94

authorized to take should it determine that a BOC "has ceased to meet any of the conditions required for such approval."FN[FN1376] After "notice and an opportunity for hearing," the Commission "may":

(i) issue an order to such company to correct the deficiency;

(ii) impose a penalty on such company pursuant to title V;FN[FN1377] or

(iii) suspend or revoke such approval.FN[FN1378] As the Commission previously has determined, these substantial powers augment the agency's pre-existing enforcement powers, including its authority under sections 206-209 of the Communications Act.FN[FN1379]

448. *Suspension of Approval to Provide InterLATA Service.* Section 271(d)(6)(A)(iii) authorizes the Commission to suspend approval to provide interLATA service in the event we determine that a BOC has ceased to meet any of the conditions required for approval. This critically important power underscores Congress's concern that BOCs continue to comply with the statute post-entry. Given this evident congressional concern, we will not hesitate to use this power - and employ it quickly - in appropriate circumstances.

449. We take this opportunity to elaborate on how we intend to implement the "suspension" power under section 271(d)(6)(A)(iii). Specifically, we envision issuing an order similar in effect to the "stand-still" order the Commission issued recently in another context involving section 271.FN[FN1380] Such a stand-still order would not only prohibit a non-compliant BOC *4176 from enrolling additional subscribers for interLATA service, but also could prohibit the BOC from all marketing and promotion of interLATA service. This status would continue until the record is clear that the specified deficiency has been corrected for a sufficient length of time and the stand-still order is dissolved. Such an action involving Bell Atlantic in New York would thus freeze Bell Atlantic's interLATA subscriber base as of the date of the order.FN[FN1381]

**128 450. Swift action in this area will further Congress's goal to ensure that markets remain open post-entry. Section 271(d)(6)(A) authorizes the Commission to suspend interLATA approval "after notice and an opportunity for hearing." The Commission previously has determined that this language does not require formal, trial-type evidentiary proceedings before an administrative law judge.FN[FN1382] Section 271(d)(6)(A) does not contain the requisite "*on the record* after opportunity for an agency hearing" language which triggers trial-type evidentiary hearings under sections 553 and 554 of the Administrative Procedure Act (APA).FN[FN1383] Nor is there any reason to believe that Congress intended section 271(d)(6) to require trial-type hearings independently of the APA.FN[FN1384] We thus conclude that generally we may exercise the suspension power of section 271(d)(6)(A)(iii) without holding time-consuming formal, trial-type evidentiary hearings. Rather, we envision expeditious paper proceedings.

451. With respect to this application, any diminution in performance below levels deemed sufficient in this order may expose Bell Atlantic to possible enforcement action under section 271(d)(6), including suspension of authorization to provide service. For instance, our finding of checklist compliance with respect to collocation is predicated on Bell Atlantic's demonstration that it provisions collocation within the 76-day provisioning interval established by the New York Commission 95 percent of the time. We are prepared to institute suspension proceedings in the event of a decrease in this on-time provisioning rate that we believe demonstrates that Bell Atlantic is no longer in compliance with that checklist item. Although we do not attempt to catalogue here all possible ways in which Bell Atlantic may come out of compliance, we emphasize that we view suspension as a potential remedy in any instance where other disincentives have failed to deter decreased performance by Bell Atlantic.

452. *Complaints.* In addition to FCC-initiated enforcement actions (such as forfeitures, *4177 suspensions, and revocations), Congress provided for the expeditious review of complaints concerning failure by a BOC to meet the conditions required for section 271 approval.FN[FN1385] Such complaints may include requests for damages.FN[FN1386] The Commission will consider and resolve those complaints alleging violations of section 271 as well as the Commission's rules and orders implementing the statute. Complaints involving a BOC's alleged noncompliance with specific commitments the BOC may have made to a state commission, or specific performance monitoring and enforcement mechanisms imposed by a state commission, should be directed to that state commission rather than the FCC.FN[FN1387]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.