# EXHIBIT B

Case 2:06-cv-00577-WKW-TFM     Document 43-3     Filed 05/04/2007     Page 1 of 16

Decision No. C06-1481

**BEFORE THE PUBLIC UTILITIES COMMISSION OF THE STATE OF COLORADO**

DOCKET NO. 04M-111T

IN THE MATTER OF THE REVIEW OF CERTAIN WHOLESALE RATES OF QWEST CORPORATION.

ORDER DENYING APPLICATION FOR REHEARING,
REARGUMENT, OR RECONSIDERATION

Mailed Date: December 22, 2006
Adopted Date: December 6, 2006

## I. BY THE COMMISSION

### A. Statement

1. This matter comes before the Commission for consideration of an application for rehearing, reargument, or reconsideration (RRR) of Commission Decision No. C06-1280, filed by Eschelon Telecom, Inc.; DIECA Communications, Inc., doing business as Covad Communications Company; Cbeyond Communications, LLC; and XO Communications Services, Inc. (collectively, Joint Applicants) on November 20, 2006.

2. The Joint Applicants request reconsideration of the Commission's decision that it does not have the authority under state or federal law to set rates for certain § 271 unbundled wholesale services offered by Qwest Corporation (Qwest). Now, being fully advised in the matter, we deny the Joint Applicants' RRR.

### B. Background

3. As part of the determination of Qwest's wholesale rates, the Commission adopted a phase hearing approach commencing in Docket No. 99A-577T. During the Phase I portion, the Commission decided as many of the pricing elements as possible. However, the Commission

found that in some instances, the record remained insufficient, or the circumstances were such that pricing determinations could not be made at that time. Additionally, the Commission further found that certain rates determined during Phase I would be interim only. Additional Commission decisions in the 99A-577T docket deferred certain rate and rate-related issues to a Phase II proceeding.

4.  To address the Phase II issues, we opened this docket. In order to determine how to proceed, we determined that the scope of this proceeding included three parts. Part 1, which is the threshold issue, is whether this Commission has jurisdiction to issue a decision regarding the proper category of wholesale rates competitive local exchange carriers (CLECs) are to be charged by Qwest, which is the matter at issue here.

5.  Briefs on the issue of Commission jurisdiction regarding Qwest's wholesale rates were filed by several parties including Qwest, Commission Staff, the Colorado Office of Consumer Counsel, and several CLECs. In addressing the threshold issue of whether this Commission has jurisdiction to issue a decision regarding the proper category of wholesale rates CLECs are to be charged by Qwest, we found that the Commission does not have authority or jurisdiction to set Qwest's wholesale rates for those elements and services required to be unbundled solely under § 271 of the Telecommunications Act of 1996, Pub. L. 104-104, 110 Stat. 56 (Act).

6.  We held that *AT&T Corp v. Iowa Utilities Bd.*, 525 U.S. 366 (1999) was persuasive on the issue of preemption of state authority under the Act. Based on the findings of the Supreme Court there, we determined that an analysis of the Commission's authority must begin with the presumption that the Act is a federal regime, allowing state regulation insofar as explicitly provided in the Act.

7.  In reviewing the requirements of the Act, specifically, §§ 251, 252, and 271, we found that it was undisputed that §§ 251 and 252 allow for state pricing authority only over interconnection and network elements required under the same sections of the Act. However, we further held that nowhere in the Act is there any authority given to state commissions over pricing of § 271 elements. Additionally, we found the requirement under § 271 that Regional Bell Operating Companies (BOCs) such as Qwest comply with §§ 251 and 252 does not allow for state authority over § 271 elements. Rather, we found state commissions merely possess a limited consulting role under § 271, and any enforcement authority over § 271 requirements is given to the Federal Communications Commission (FCC) and not the states. While we recognized that the FCC, in the *Triennial Review Order* (TRO) and the Triennial Review Remand Order found that BOCs have an ongoing § 271 obligation, the authority to enforce that obligation lies with the FCC and not the states.

8.  We further determined that we may not attempt to employ Colorado state law to price § 271 elements, since § 271 contemplates an advisory role for state commissions and reliance on state law alone cannot alter this federal regulatory scheme. We found support for this position not only under *Iowa Utility Board, supra*, but also under *Indiana Bell Tel. Co. v. Indiana Utility Regulatory Commission*, 359 F.3d 493 (7th Cir. 2004)

9.  With regard to our continuing obligation to arbitrate interconnection agreement disputes, we found that such an obligation does not provide authority to price § 271 elements. To the extent there are disagreements regarding pricing over §§ 251 and 252 elements, we found that we may resolve them. However, any disputes arising over pricing of § 271 elements will have to be referred to the FCC for resolution.

### C. RRR Arguments

10. The Joint Applicants assert that reliance on *Iowa Utility Board* is misplaced. Joint Applicants specifically refer to the passage we quoted as follows: "the question in these cases is not whether the Federal Government has taken the regulation of local telecommunications competition away from the States. With regard to the matters addressed by the 1996 Act, it unquestionably has." *Id.* at 378 n.6. According to Joint Applicants, the Court was addressing the Eighth Circuit's invalidation of many of the FCC's local competition rules on the grounds that the FCC could not share in the exclusive state commission oversight of local competition – oversight described by the Eighth Circuit as a fence that is "hog tight, horse high, and bull strong, preventing the FCC from intruding on the states' intrastate turf." *Id.* at 375. Joint Applicants contend the Court made clear that under the Act, the FCC would have concurrent oversight over local competition. Joint Applicants further contend that the passage in question cannot be read to usurp state oversight authority regarding § 271 elements.

11. Joint Applicants also turn to the FCC's TRO for the proposition that the FCC has affirmed concurrent federal/state jurisdiction regarding states' authority to establish unbundling regulations pursuant to state law, as long as the state law does not conflict with the Act and its purposes, or substantially prevent the FCC's implementation.

12. Joint Applicants take issue with our reference to *Indiana Bell Telephone Company, Inc. v. Indiana Utility Regulatory Commission*, 359 F.3d 493 (7th Cir. 2004). Joint Applicants attempt to distinguish that case from the matter at hand by arguing that *Indiana Bell* focused not on the large issues of federal preemption, but on a narrow set of facts encountered by the Indiana Commission.

Before the Public Utilities Commission of the State of Colorado

Decision No. C06-1481　　　　　　　　　　　　　　　　　　　　　　　　DOCKET NO. 04M-111T

13.　　The key to the court's finding that § 271 contemplates an advisory role for state commissions, and reliance on state law alone cannot alter this federal regulatory scheme, according to the Joint Applicants, was that the Indiana Commission had, on its own, imposed a set of prospective baselines for interconnection agreements. As such, the Joint Applicants argue that the court's reasoning was based on the presumption that the Indiana Commission's order interferes with the requirements of the Act that interconnection agreements be negotiated between private parties, and only when that fails are the agreements subject to mediation by state agencies. The Joint Applicants conclude that the *Indiana Bell* set of facts do not add up to a general pronouncement on the state/federal preemption issues and do not apply to this proceeding.

14.　　The Joint Applicants also point to FCC directives that, according to the Joint Applicants, do not ascribe to any theory that state commissions have given up their authority over state wholesale rates under the Act. Joint Applicants note that the FCC has rejected direct entreaties by BOCs to step into the oversight role held by state commissions over interconnection rates and terms for network elements no longer unbundled pursuant to § 251. By the Joint Applicants' reckoning, the conclusion to be drawn from the FCC's consistent forbearance from preemption of state consideration of network elements offered under § 271 is clear that the FCC has chosen to leave open the field for concurrent state commission jurisdiction.

15.　　Finally, the Joint Applicants point out that the federal district court for the District of Colorado recently held that given the plain language of the statute, § 252 is not limited solely to interconnection agreements involving the specific duties and obligations set forth in §§ 251 (b) and (c). Joint Applicants cite the court's finding that "[t]he phrase 'pursuant to section 251' refers to both the general and specific duties set forth in § 251, including the duty of

5

telecommunication carriers to 'interconnect directly or indirectly with the facilities and equipment of other telecommunications carriers.'"[1]

16. According to Joint Applicants, the court specifically upheld the Commission's jurisdiction over switching under the more general language of the Act requiring interconnection, even though the element was no longer an unbundled element under § 251 and was available solely pursuant to § 271. This, according to the Joint Applicants, underscores the Commission's expansive authority over intrastate wholesale products and services, and supports the Commission's continuing authority over rates, terms, and conditions of elements required outside § 251.

## II.  FINDINGS AND CONCLUSIONS

17. We are not persuaded by the arguments put forth by the Joint Applicants, which are the same as those put forth in the last set of pleadings. As we indicated in our prior Decision, the analysis here must beg in with the presumption that the Act is a federal regime, allowing state regulation only insofar as explicitly provided by the Act. We find substantial support for this position in federal case law.

18. The Supreme Court in *Iowa Utility Bd.* addressed the line of federal case law decisions dealing with the presumption of non-preemption touted in Commissioner Page's dissent. Much has been made of whether the facts of the case are inapposite, but we believe the Supreme Court's discussion is plain with respect to the 1996 Telecommunications Act, and so repeat it here.

> Justice BREYER appeals to our cases which say that there is a " 'presumption against the pre-emption of state police power regulations,' " post, at 749, quoting from *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 518, 112 S.Ct. 2608,

---

[1] *Qwest Corporation v. Public Utilities Commission of Colorado*, 2006 WL 771223 (D.Colo. 2006).

> 120 L.Ed.2d 407 (1992), and that there must be " 'clear and manifest' showing of congressional intent to supplant traditional state police powers," post, at 750, quoting from *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). But the question in these cases is not whether the Federal Government has taken the regulation of local telecommunications competition away from the States. With regard to the matters addressed by the 1996 Act, it unquestionably has. The questions is whether the state commissions' participation in the administration of the new federal regime is to be guided by federal-agency regulations. If there is any "presumption" applicable to this question, it should arise from the fact that a federal program administered by 50 independent state agencies is surpassing strange.
>
> The appeals by both Justice THOMAS and Justice BREYER to what might loosely be called "States' rights" are most peculiar, since there is no doubt even under their view, that if the federal courts believe a state commission is not regulating in accordance with federal policy they may bring it to heel. This is, at bottom, a debate not about whether the States will be allowed to do their own thing, but about whether it will be the FCC or the federal courts that draw the lines to which they must hew. To be sure, the FCC's lines can be even more restrictive than those drawn by the courts but it is hard to spark a passionate "States' rights" debate over that detail.[2]

We believe the Supreme Court plainly determined the 1996 Act to be a federal regime, to be administered by the states only insofar as allowed by federal law. Efforts to expand state authority via citation to *Louisiana Public Service* and its progeny were rejected.

19. Following the same reasoning, the court in *Indiana Bell* found that the scope of a state commission's role in regulating local competition is measured by federal law, which requires it to follow the purposes and objectives of Congress.[3] While the facts of *Indiana Bell* are not the same as the case at hand, this does not explain away the Court's broad statements that § 271 "contemplates an advisory role for the [state commission]," and "[r]eliance on [state] law alone cannot alter this federal regulatory scheme."[4] Further, "Section 271 does not contemplate

---

[2] 525 U.S. at 378 n.6.
[3] 2003 WL 1903363 at *10; aff'd, 359 F.3d 493, 498 (7th Cir. 2004).
[4] *Id.*

substantive conduct on the part of state commissions."[5] and "[t]he [state commission's] authority to act according to state law, if such authority exists, is found in Section 252, not in 271."[6] Again, we find these statements unambiguous.

20.    Further support for our conclusion appears in *Southwestern Bell Tel. Co. v. Connect Communications Corp.*, 225 F.3d 942, 946-47 (8th Cir. 2000) (a state's role in the federal regime of regulating competition under the Act is measured by federal, not state law), and *Dieca Communications, Inc. v. Florida Public Service Comm'n*, 2006 WL 2873736 at *4 and *4 n.7 (N.D. Fla. Sept. 12, 2006) ("[A]ny complaint by Covad that BellSouth's failure to provide line sharing will violate § 271 is an issue for the FCC, not the Florida Commission").

21.    Against the backdrop of decisions from the U.S. Supreme Court and the Seventh and Eighth Circuits, as well as the Northern District Federal Court in Florida, we have a like number of sources of alleged better authority: the federal district courts of Maine and Colorado; the FCC; and Colorado state law. We addressed the Maine decision and state law in our last decision; we found the Maine court's reasoning unpersuasive, and explained the problem of attempting to bootstrap authority from state law given the Seventh Circuit's pronouncements. The argument pertaining to the FCC – it allegedly has "pointedly" declined to exert exclusive jurisdiction – is nothing more than: silence is affirmation. We are not persuaded that the FCC's inaction means anything, and we question the projection of its preferred meaning by the Joint Applicants based solely on this void. Finally, the Colorado federal court decision[7] referenced by the Joint Applicants was address in our previous decision, and in any case pertains to the general obligation to file interconnection agreements, not state commission pricing of § 271 elements.

---

[5] *Id.* at *11.
[6] *Id.* at *12.
[7] *Qwest Corporation v. Public Utilities Commission of Colorado*, 2006 WL 771223 (D. Colo. 2006).

Case 2:06-cv-00577-WKW-TFM   Document 43-3   Filed 05/04/2007   Page 10 of 16
Before the Public Utilities Commission of the State of Colorado
Decision No. C06-1481                                                                                           DOCKET NO. 04M-111T

22.  Weighing the totality of authority addressing the pricing of § 271 elements, we believe the hierarchy of federal case law tips toward preemption of state authority where none has been expressly given. In our last decision we noted this creates a schism of state authority between §§ 251-52 and 271 elements, but we are not at liberty to ignore federal law. The policy reasons given in the dissent to come to a different conclusion may be compelling, but state commission and even legislative policy cannot coax a different result.

23.  Therefore, we deny the Joint Applicants' RRR consistent with the discussion above.

## III.  ORDER

### A.  The Commission Orders That:

1.  The application for rehearing, reargument, or reconsideration of Commission Decision No. C06-1280 is denied consistent with the discussion above.

2.  This Order is effective upon its Mailed Date.

B.   ADOPTED IN COMMISSIONERS' WEEKLY MEETING
     December 6, 2006.



(S E A L)

ATTEST: A TRUE COPY

Doug Dean,
Director

THE PUBLIC UTILITIES COMMISSION
OF THE STATE OF COLORADO

GREGORY E. SOPKIN

CARL MILLER

Commissioners

COMMISSIONER POLLY PAGE
DISSENTING.

IV.   **COMMISSIONER POLLY PAGE DISSENTING**

1.   The majority holds that the analysis here must begin with the presumption that the Telecommunications Act of 1996, Pub. L. 104-104, 110 Stat. 56 (Act) is a federal regime, allowing state regulation only insofar as explicitly provided by the Act. As such, the majority concludes that because the Act does not provide explicit authority for states to set wholesale rates for delisted elements under § 271, this Commission is without authority in that regard. In contrast, it is my opinion that this Commission does have authority to set § 271 wholesale rates for unbundled network elements (UNEs) that have been delisted, and that the analysis to make such a finding is not whether the Act explicitly provides for such state authority, but rather,

whether the Act, or the Federal Communications Commission's (FCC) interpretation of the Act, preempts an otherwise valid state law providing for authority to set such wholesale rates. Accordingly, I respectfully dissent and would grant the rehearing, reargument, and reconsideration (RRR) of Eschelon Telecom, Inc.; DIECA Communications, Inc., doing business as Covad Communications Company; Cbeyond Communications, LLC; and XO Communications Services, Inc. (collectively, Joint Applicants), and find that this Commission has jurisdiction to determine wholesale rates for elements under § 271.

2.  The majority presumes that absent an express statement providing state authority within the Act, preemption will lie. However, I find it is well settled that Congress, when enacting federal law, must express a clear intent to preempt state law. In this regard, I agree with the arguments raised by the Joint Applicants. The Supreme Court, in *Louisiana Public Service Commission v. Federal Communications Commission*, 476 U.S. 355, 368-69 (1986) (citations omitted) set out a comprehensive test to determine whether preemption has occurred. According to the Court, preemption occurs when Congress, in enacting a federal statute, expresses a clear intent to preempt state law; when an actual conflict exists between federal and state law; where compliance with both the federal and state law is impossible; where there is a barrier to state regulation implicit in federal law; where the federal law comprehensively occupies an entire field of regulation leaving no room for a State to supplement federal law; or where a state law stands as an obstacle to accomplishment and execution of the full objectives of Congress. *Id.* In a subsequent case, the Court again articulated its preemption test in *CSX Transportation, Inc. v.*

*Easterwood*, 507 U.S. 658, 664 (1993), where it held that before preemption will occur, it must be the clear and manifest purpose of Congress.[8]

3. In the only case directly on point to this matter, the federal district court in Maine determined that "the authority of state commissions over rate-making and its applicable standards is not pre-empted by the express or implied content of § 271." *Verizon New England, Inc. v. Maine Public Utilities Commission*, 403 F.Supp.2d 96 (D.Me. 2005) (*Verizon I*). The court went on to find that although § 271 provides that an application submitted by a Regional Bell Operating Company to provide InterLATA services must be approved by the FCC pursuant to §§ 271(d)(1) and (b)(1), "neither that provision nor any other provision in the Act confers exclusive jurisdiction on the FCC with respect to rate-making for § 271 UNEs." *Id.* at 102. According to the court, "[t]here is simply no express consideration of rate-making or rate-making authority set out in § 271." *Id.*

4. In a companion case, *Verizon New England, Inc. v. Maine Public Utilities Commission*, 441 F.Supp.2d 147, 152 (D.Me. 2006) (*Verizon II*), the court noted that a Maine state law exists which grants broad authority to the Maine PUC "to make orders that are necessary to carry out the purpose of making modern telecommunications services more available and affordable to Maine residents upon terms that are just and reasonable." *Id.* Based on that state law, the court found that in order to support a preemption claim, Verizon was required to show that the Maine law was preempted by the Act, which, according to the court, Verizon was unable to do. *Id.*

---

[8] Consequently, I disagree with the majority's reliance on *Iowa Utilities Board* and *Indiana Bell*. I agree with the Joint Applicants that the underlying factual basis for those findings is not applicable to the matter at hand.

5.  Laws similar to the Maine state law exist in Colorado. For example, § 40-15-503(2)(b)(I), C.R.S., provides that in adopting rules to foster a robust competitive local exchange market, the Commission is to "adopt rules governing, and shall establish methods of paying for, without limitation, ... cost-based nondiscriminatory carrier interconnection to essential facilities or functions, which shall be unbundled ..." This Commission is additionally charged with regulating a utility's rates and charges, to prevent unjust discrimination and to ensure that all charges by a utility under our jurisdiction are "just and reasonable." *See*, § 40-3-101(1). C.R.S. As with *Verizon I* and *Verizon II* above, there has been no showing here that Colorado law is preempted by the terms of the Act or the FCC's scheme for § 271 unbundled elements.

6.  The Joint Applicants also argue that there is no indication by the FCC that it intends to fully occupy the responsibility of approving § 271 elements. The Joint Applicants point to the language of the FCC's *Triennial Review Order* and *Triennial Review Remand Order*, in which the FCC has affirmed concurrent federal and state jurisdiction in this area. The Joint Applicants point out that when given the opportunity to expressly declare that it has exclusive jurisdiction over § 271 elements, the FCC has pointedly declined to exert such exclusive authority.

7.  Based on this analysis, I disagree that this Commission is preempted from determining Qwest Corporation's (Qwest) wholesale rates for § 271 elements. Rather, I agree with the detailed analysis provided by the Joint Applicants on RRR that supports a finding that the Commission does indeed possess jurisdiction to set § 271 wholesale rates. While it is evident that the role of the States was diminished significantly under the terms of the Act, authority to set § 271 rates was not one of the areas preempted either under the express terms of the Act or any subsequent findings of the FCC.

8.  Further, on a policy level, I assert that the majority opinion leaves us with an absurd result. This Commission has ruled in past interconnection agreement dockets that telecommunications providers must file delisted § 271 elements for our approval. Likewise, we have determined in arbitration proceedings that Qwest must commingle § 271 elements with § 251 elements for purchase by wholesale customers. When those agreements are presented to us for approval or arbitration, how do we then rule on such items when the majority has decided that we have no jurisdiction? The majority's answer is that we cannot. The absurdity lies in the expectation that small competitive local exchange carriers (CLECs) must present their arguments to the FCC rather than the state commission, unfairly adding to the costs and time small CLECs must expend for resolution of these matters.

9. Therefore, I respectfully dissent and would reverse our previous Order and find this Commission does have jurisdiction over § 271 wholesale rates.

THE PUBLIC UTILITIES COMMISSION
OF THE STATE OF COLORADO

POLLY PAGE
_____
Commissioner

G:\ORDER\C06-1481_04M-111T.doc:SRS