# EXHIBIT 2

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**MOMENTUM TELECOM, INC.**                    **CIVIL ACTION**

**VERSUS**                                    **NUMBER 06-835-RET-DLD**

**LOUISIANA PUBLIC SERVICE**
**COMMISSION, ET AL**

### REPORT AND RECOMMENDATION

This matter comes before the Court on a motion to dismiss (*rec. doc. no.* 12) filed by defendant, the Louisiana Public Service Commission (the "LPSC") pursuant to Rule 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure, and on a motion to dismiss (*rec. doc. no.* 17) filed by defendant Bellsouth Telecommunications, Inc., pursuant to Rule 12(b)(1) and 12(b)(6). Both motions seek dismissal due to a lack of subject matter jurisdiction; the LPSC also seeks dismissal due to a lack of personal jurisdiction as a result of sovereign immunity under the Eleventh Amendment of the United States Constitution. The motions are opposed (*rec. doc. no.* 23).

### *Background*

This suit by plaintiff, Momentum Telecom, Inc., for declaratory judgment arises out of an Order issued by the LPSC on March 7, 2006, in which the LPSC "decline[d] to order BellSouth to include Section 271 elements in Section 252 agreements and further decline[d] to set rates for Section 271 elements." (BellSouth's brief, *rec. doc. no.* 18, p. 7). In response to a motion for reconsideration of that Order filed by a trade group of

competitive telecommunications carriers ("CompSouth"[1]) of which plaintiff is a member, the LPSC noted that the jurisdictional issues raised in the motion were currently pending before federal district courts in Georgia and Missouri. *Id.* at p. 8. The LPSC therefore voted on May 25, 2006, to hold CompSouth's motion for reconsideration in abeyance until there was further guidance from the federal courts or the FCC. *Id.*

As a result of that vote, and while further action by the LPSC was/is still pending, plaintiff filed a complaint for declaratory judgment in this Court that seeks an Order "Declaring that the PSC, acting pursuant to its powers under Louisiana state law and/or the Telecommunications Act of 1996, may set rates for Section 271 network elements and may require Bellsouth to include Section 271 network elements in its interconnection agreements." (*Rec. doc. no.* 1, p. 15.)

In response to the prematurity/lack of ripeness arguments raised by defendants in their motions to dismiss, plaintiff notified the LPSC that "Although Momentum, through CompSouth, remains a party to the Louisiana proceedings, Momentum has . . . withdrawn from the CompSouth motion to reconsider." (*Rec. doc. no.* 23, pp. 2, n.1, 13, and exhibit 4.)

**Statutory background of §§ 252 and 271 of the Federal Telecommunications Act**

Under the Telecommunications Act of 1996, 47 U.S.C. §§ 251 and 252 (the "Act"), Congress restructured local telephone markets so as to end the monopolies of the Bell operating companies ("BOCs"[2]) while also allowing them to enter into the long-distance

---

[1] CompSouth is the parties' abbreviated name for Competitive Carriers of the South, Inc. *Id.* at p. 6.

[2] Also known as the "Baby Bells" after the split-up of the original AT&T.

2

market in exchange for opening their local service monopolies to competition. *Southwestern Bell Telephone, L.P. v. Public Utility Commission of Texas*, 467 F.3d 418, 419 (5th Cir. 2006). In *Southwestern*, the Fifth Circuit explained how Sections 252 and 271 operate to achieve that result, and the respective duties of the FCC and state utility commissions in relation thereto:

> Before gaining access to the long-distance market, an incumbent local exchange carrier (ILEC") . . . must meet the requirements of a competitive checklist and submit an application demonstrating its ability to open its networks to competitors. *See* 47 U.S.C. § 271(c)(2)(B). Both the state commission and FCC review an ILEC's application. Under § 271(d)(2)(B) of the Act, the FCC consults with the state commission for a recommendation on whether to approve the ILEC's application, *but the FCC ultimately determines whether an ILEC meets the competitive requirements*. (Emphasis added.)
>
> During the application process, the ILEC may begin to enter into interconnection agreements with competitive local exchange carriers ("ILEC") through either negotiations or compulsory arbitration. 47 U.S.C. §§ 251, 252. The state commission must then approve or reject the interconnection agreements. 47 U.S.C. § 252(e)(1). Interconnection agreements set forth the terms and conditions for the ILEC and the CLEC to fulfill their respective statutory duties. After approval, the state commission monitors the ILEC and CLECs for compliance with specified performance measures.

*Id.*[3]

---

[3] *Accord, Dieca Communications, Inc. v. Florida Public Service Commission*, 447 F.Supp. 2d 1281, 1284, 1286 (N.D. Fla. 2006), a case decided in the 11th Circuit, of which Georgia is a part:

> Separate and apart from the duties imposed on all incumbent local exchange carriers under § 251, the Act prohibits BOCs from providing interLATA services, unless and until they obtain authorization from the FCC. *See* 47 U.S.C. § 271. The Act set forth specific prerequisites to any such authorization. Among the prerequisites is a 14-item checklist. *See* 47 U.S.C. § 271(c)(2)(B). The Act requires the FCC to consult with state commissions prior to making any determination on this but otherwise gives state commissions no role in the process. *See* 47 U.S.C.

3

In order to end the BOC monopolies, the Act requires ILECs to allow CLECs to lease certain elements of the ILECs' telephone networks.[4] 47 U.S.C. §§ 153(29), 251 (c)(3). The terms between the parties are set forth in what are referred to as Section 252 "interconnection agreements"; the Act requires ILECs and CLECs to negotiate in good faith the terms and conditions of those agreements. § 251(c)(1), 252.

If such negotiations are not successful, either the ILEC or the CLEC may request arbitration by a state's pertinent commission of any issues under § 251 (b) and (c) that they cannot resolve on their own. Once a full agreement is reached through negotiation or

---

§ 271(d)(2)(B). . . .

The Act requires the FCC to consult with the relevant state commission prior to making any determination on these matters (*i.e.*, compliance with Section 271) but otherwise assigns state commissions no role in the process. It thus is correct, precisely as the Florida Commission determined, that any complaint by Covad that BellSouth's failure to provide line sharing will violate § 271 is an issue for the FCC, not for the Florida Commission. . . .

In this circuit (*i.e.*, the Eleventh Circuit, which includes Georgia), a state commission's authority in a § 251 arbitration is only to address issues arising under § 251, *see MCI Telecomms. Corp. v. BellSouth Telecomms., Inc.*, 298 F.3d 1269, 1274 (11th Cir. 2002). . . .

The Florida Commission thus had it right. It has no authority to enforce § 271.

[4] The ILEC is not required to provided blanket access to all of its network elements; the FCC may require an ILEC to provide access to a particular element only if the FCC determines that the CLEC would, without such access, be impaired in its ability to provide local telephone service. 47 U.S.C. § 251(d)(2). A particular network element for which access has been provided is known as an "unbundled" network element, or "UNE". *AT&T Communications v. BellSouth Telecommunications, Inc.*, 238 F.3d 636, 640 (5th Cir. 2001). Network elements include such things as switches (devices for routing and connecting calls), loops (the wire and fiber that connects individual customer locations to the network), and transport (cables that connect the facilities that house switches). *See* BellSouth's brief, p. 4 (*rec. doc. no.* 18). Under § 252(d)(1), the rates that an ILEC can charge for UNEs must be based on cost. To determine that cost, the FCC implemented a pricing methodology known as "total element long-run incremental cost," or TELRIC. *See Local Competition Order*, n.5 11 F.C.C.R. at 15,844, P 672. A major difference between the unbundling obligations of § 251 and the checklist obligations under § 271 is the price a CLEC must pay for network elements; under § 271, network elements must be provided at a "just and reasonable rate" rather than at the low, cost-based TELRIC required by § 251. *See* Triennial Review Order ("TRO"), 18 F.C.C.R. R 17,389, P 664, n.8.

arbitration, it must be approved or rejected by the state commission based on whether it satisfies the criteria set out in §§ 251 and 252. *Id.*, § 252(e).[5] In the Fifth Circuit, a state commission cannot undercut the purposes of Sections 251 and 252 via its general rule-making authority. *Southwestern, supra,* 467 F.3d at 422.

As noted above, the Fifth Circuit also observed in *Southwestern* that under Section 271, an ILEC seeking to offer long distance services must satisfy a 14-point checklist of services and facilities that it must make available to CLECs operating in the same state. 467 F.3d at 419; *see also,* 47 U.S.C. § 271(c)(2)(B). Both plaintiff and BellSouth note in their briefs that the checklist includes elements such as "local switching". (*Rec. doc. no.* 23, p. 7; *rec. doc. no.* 18, p. 5.)[6] Plaintiff also states, and BellSouth appears to agree, that while the FCC has held that local switching is no longer a network element that has to be made available ("unbundled") by an ILEC to a CLEC under § 251, it still must be made available to a CLEC under § 271 as part of the 14-point checklist. *Id.* Defendants, however, disagree with plaintiff's follow-up conclusion[7] that § 271 elements, like § 251 elements, must therefore "be offered pursuant to interconnection agreements or tariffs,

---

[5] An ILEC or CLEC that disputes the commission's decision can then file suit in a federal district court. *Id.*, § 252(e)(6). Such challenges are reviewed under an arbitrary and capricious standard. *Southwestern, supra,* 467 F.3d at 421.

[6] *See also, Southwestern Bell v. Missouri PSC*, 2006 U.S. Dist. LEXIS 65536 (E.D. Mo. Sept. 14, 2006) ("The checklist items include: 'Local loop transmission from the central office to the customer's premises, unbundled from local switching or other services,' *id.*, § 271(c)(2)(B)(iv); '[l]ocal transport from the trunk side of a wireline local exchange carrier switch undbundled from switching or other services,' *id.*, § 271(c)(2)(B0(v); and '[l]ocal switching unbundled from transport, local loop transmission, or other services.' *Id.*, § 271(c)(2)(B)(vi).")

[7] Plaintiff notes in its brief (p. 8) that its conclusion is based on its following quote of Section 271(c)(1)(A): "A Bell operating company meets the requirements of this subparagraph if it has entered into one or more binding agreements that have been approved under section 252 of this title specifying the terms and conditions under which the Bell operating company is providing access and interconnection to its network facilities for the network facilities of one or more unaffiliated competing providers of telephone exchange service . . . to residential and business subscribers."

either or which must be submitted to and approved by a state commission under Section 252." (*Rec. doc. no.* 23, p. 8.)

### *Parties' Contentions*

The record shows that the essential issue pending before the LPSC is whether its authority in a § 251 arbitration extends to issues arising under § 271, and more particularly, whether it can order Bellsouth to include § 271 network elements in § 252 interconnection agreements and set rates for such elements.  Plaintiff argues that the LPSC has basically punted on the issue and retreated into indefinite inaction while purportedly awaiting guidance from federal district courts in Georgia and Missouri, *i.e.*, courts that are not even in the Fifth Circuit.  Therefore, plaintiff argues, this Court has federal question jurisdiction under both the Telecommunications Act and the Supremacy Clause of the United States Constitution to issue a declaratory judgment ordering the LPSC to require BellSouth to include Section 271 network elements in its Section 251 interconnection agreements, and to set rates for the Section 271 elements.

Plaintiff also argues that the Louisiana Constitution gives the LPSC authority to regulate telecommunications service providers, including the authority to set rates for those providers' services, and there is nothing in federal law that preempts that authority.

Defendants counter that this matter is not ripe/premature because plaintiff has not fully exhausted its administrative remedies with the LPSC.  The Court therefore lacks subject matter jurisdiction over plaintiff's complaint for declaratory judgment.  Defendant LPSC also argues that it is an arm of the State and therefore entitled to sovereign immunity under the Eleventh Amendment of the United States Constitution.

Plaintiff counters that defendants' ripeness/prematurity arguments are now moot because it has withdrawn from CompSouth's motion for reconsideration that is pending before the LPSC.

### *Law and Discussion*

In its complaint, plaintiff asserts federal question jurisdiction for its declaratory judgment action based on, *inter alia*, a violation of the Telecommunications Act, but is less than precise on the particular provision, stating only that "[s]hould 47 U.S.C. § 252(e)(6) be construed as jurisdictional, the Court also has subject matter jurisdiction over this matter pursuant to that statute." (*Rec. doc. no.* 1, p. 3, para. 10.) In *Premiere Network Services, Inc. v. SBC Communications, Inc.*, 440 F.3d 683, 686 (5th Cir. 2006), the Fifth Circuit indicated that federal question jurisdiction for violations of the Telecommunications Act can be found in 47 U.S.C. § 252(e)(6), which provides as follows in pertinent part:

> 47 U.S.C. § 252(e)(6) – Review of State commission actions
>
> In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section.

However, with respect to the precise language of § 252(e)(6), the Fifth Circuit emphasized in *Premiere* that the section does not textually require exhaustion of remedies. 440 F.3d at 687. Therefore, "only the jurisprudential doctrine of exhaustion controls, which is not jurisdictional in nature. . . . Under that doctrine, Premiere likely *failed to state a claim* under section 252(e)(6) because 'no one is entitled to judicial relief for a supposed or

7

threatened injury until the prescribed administrative remedy has been exhausted.'"[8] *Id.*, citing *Taylor v. United States Treasury Dep't.*, 127 F.3d 470, 476 (5th Cir. 1997), quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51, 58 S.Ct. 459, 82 L.Ed. 638 (1938) (emphasis supplied). The Fifth Circuit noted in *Taylor* that Rule 12(b)(6)[9] provides a proper basis for dismissal for failure to exhaust administrative remedies. 127 F.3d at 478.

In *Taylor*, the Fifth Circuit also explained that the "jurisprudential exhaustion doctrine" is a long settled rule of judicial administration.[10] 127 F.3d at 476-77. However, while courts have discretion in applying the jurisprudential exhaustion requirement, the exercise of that discretion is quite limited, *i.e.*, a court should only excuse a plaintiff's failure to exhaust administrative remedies in "extraordinary circumstances" such as the following:

> (1) the unexhausted administrative remedy would be plainly inadequate, (2) the claimant has made a constitutional challenge that would remain standing after exhaustion of the administrative remedy, (3) the adequacy of the administrative remedy is essentially coextensive with the merits of the claim (*e.g.*, the claimant contends that the administrative process

---

[8] Thus, the Fifth Circuit emphasized, it would have been more accurate for the district court, which had dismissed Premiere's claims under section 252(e)(6) for lack of subject matter jurisdiction for failure to exhaust administrative remedies, to "have framed the dismissal in terms of Premiere's *failure to state a claim*, not in terms of the court *lacking jurisdiction*." 440 F.3d at 687 (emphasis supplied).

[9] With respect to defendants' motions to dismiss, Rule 12(b) provides in pertinent part that a case can be dismissed for "(1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person" and "(6) failure to state a claim upon which relief can be granted."

[10] The doctrine, the Fifth Circuit noted, serves multiple purposes: "(1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that 'frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.'" 127 F.3d at 476-77 (internal citations omitted).

> itself is unlawful), and (4) exhaustion of administrative remedies would be futile because the administrative agency will clearly reject the claim.

*Id.* at 477.

The record in the present matter supports a finding that none of the traditional exceptions to the general rule requiring exhaustion of administrative remedies applies in this case. *See Taylor*, 127 F.3d at 477. Plaintiff's assertion to the contrary largely focuses in on what plaintiff alleges will be the LPSC's "indefinite" inaction with respect to the two § 271 issues (*i.e.*, whether § 271 network elements should be included in § 252 interconnection agreements, and whether the LPSC has the authority to set rates for such elements):

> "[T]he LPSC has *indefinitely* refused to act on the Motion for Reconsideration. . . . Ironically, however, the LPSC is not 'acting' on the Motion for Reconsideration at all. Rather, the LPSC has refused to act on it until federal courts or the FCC provide guidance on the issue. . . . In this case, the LPSC has effectively denied CompSouth's Motion for Reconsideration pending federal court guidance. The LPSC plainly is not 'acting' on the Motion for Reconsideration."

Plaintiff's brief, pp. 14-15 (*rec. doc. no.* 23).

The record, however, supports a finding that plaintiff's perception of indefinite inaction by the LPSC is premature. For example, plaintiff correctly notes that the LPSC stated that the jurisdictional issues before it were pending in federal courts in other states, including Georgia, which, notably, is part of the 11th Circuit. However, and as was noted in fn. 3, *supra*, a Florida district court decided *Dieca* on September 12, 2006, *i.e.*, about 4 months after the LPSC voted to hold in abeyance its decision on the § 271 issues. In deciding *Dieca*, that district court explicitly stated that it was applying 11th Circuit law, *i.e.*,

9

law that also governs federal district courts in Georgia. More particularly, the *Dieca* Court held as follows: "In this circuit (*i.e.* the 11th Circuit), a state commission's authority in a § 251 arbitration is only to address issues arising under § 251. . . . The Florida Commission thus had it right. It has no authority to enforce § 271." 447 F.Supp.2d 1281.

Similarly, and as BellSouth noted in footnote 10 of its brief (*rec. doc. no.* 18, p. 11), a federal district court in Missouri case issued an opinion on September 14, 2006 (*i.e.*, just a few months after the LPSC issued its May 25, 2006, Order stating that it would await guidance from federal courts in Georgia and Missouri) that directly addressed the issue of whether a state commission had the jurisdiction and authority to order § 271 unbundling obligations to be included in an interconnection agreement arbitrated pursuant to § 252. *See* n. 6, *supra*, citing *Southwestern Bell v. Missouri PSC*, 2006 U.S. Dist. LEXIS 65536 (E.D. Mo. Sept. 14, 2006).

Plaintiff in the present matter does not state in its brief whether it has brought the *Dieca* and *Southwestern Bell* decisions to the attention of the LPSC for it to accept or reject and then render a decision based on the guidance for which it was waiting. Regardless, the fact that those two decisions were issued just a few months after the LPSC's May 25, 2006, Order belies plaintiff's argument that it will be the victim of indefinite inaction by the LPSC. Thus, the record does not support plaintiff's contention that the LPSC is set on a path of indefinite inaction, or that plaintiff has shown an extraordinary circumstance sufficient to negate the jurisprudential doctrine of exhaustion of remedies.[11] Accordingly,

---

[11] An "inaction" argument similar to the one advanced by plaintiff in the present matter was rejected by the Fifth Circuit in *Premiere, supra*, 440 F.3d at 688-89. In that case, the plaintiff argued for jurisdiction under § 207 of the Telecommunications Act instead of § 252(e)(6). Referring to another case, the Fifth Circuit stated as follows: "Appellant in that case argued that inaction by the FCC on its complaint allowed it to file in federal court. But the court stated that appellant 'offer[ed] no explanation as to why or

the record supports a finding that plaintiff's complaint for declaratory judgment should be dismissed under Rule 12(b)(6) on the non-jurisdictional grounds of failure to state a claim upon which relief can be granted at this time.[12]

### *Recommendation*

For the reasons assigned, it is the recommendation of the Magistrate Judge that the motions to dismiss (*rec. docs. nos.* 12 and 17) filed by defendants Louisiana Public Service Commission and BellSouth Telecommunications, Inc. should be **GRANTED** on the grounds

---

how its choice of fora becomes, in a sense, 'reset' in the face of FCC inaction. Title 47 offers no indication that a party's election of fora, once made, is anything but irrevocable.'" Citing *Bell Atlantic Corp. v. MFS Comminications Co.*, 901 F.Supp. 835 (D. Del. 1995).

Of further note, the plaintiff in *Premiere*, like plaintiff in the present matter, also similarly argued that voluntary dismissal of its complaint with the FCC (or, the LPSC in the present matter) prior to a decision essentially "un-files"the complaint with the FCC and leaves the situation as if the action had never been filed, thus allowing the plaintiff to come directly into federal court. However, the Fifth Circuit responded that Premiere "offers no precedent in support of this assertion, nor have we found any. . . . We decline to adopt Premiere's 'un-filing' argument." 440 F.3d at 689. The record in the present matter supports a finding that plaintiff should similarly not be allowed to bypass the administrative exhaustion doctrine by such an "un-filing" tactic, especially when plaintiff remained a party to the action before the LPSC while only withdrawing from one particular motion filed as part of that action.

[12] The Court therefore does not need to address plaintiff's allegations in its complaint that jurisdiction exists under the Supremacy Clause or 28 U.S.C. § 1343(a)(3), or the LPSC's immunity argument. (*Rec. doc. no.* 1, p. 3, para. 10.) Nevertheless, the Court notes that the Fifth Circuit has held that federal question jurisdiction is presented via the Supremacy Clause when a plaintiff seeks relief from a state law or regulation on the grounds that such law or regulation is pre-empted by a federal statute. *Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1180 (5th Cir. 1984). The present matter, however, involves just the opposite scenario. Plaintiff is not seeking relief from any Louisiana law or regulation, but is instead arguing that the state law or regulation reigns supreme over a federal law. In essence, plaintiff is arguing jurisdiction based on the Supremacy Clause based on a defense that a defendant *might* assert rather than on a request for relief that plaintiff has asserted. As for jurisdiction under 29 U.S.C. § 1343(a)(3), which pertains to deprivation of equal rights by a person acting under color of state law, the record does not support a finding that plaintiff has shown, or cited any relevant authority, how an administrative tribunal's abeyance of a decision constitutes a violation of its equal rights, or even persuasively discussed the issue in its brief.

As for the LPSC's assertion of Eleventh Amendment immunity, the Fifth Circuit recently reiterated the following longstanding rule of law: "In declining to resolve any Eleventh Amendment issues, we follow the well-established canon that courts should avoid addressing constitutional questions when possible. *United States v. Lipscomb*, 299 F.3d 303, 359 (5th Cir. 2002). This court should not decide questions of constitutional nature 'unless absolutely necessary to decide the case.'" *Riley v. Louisiana Bar Association*, 2007 WL 178108 (5th Cir. 2007). The record in the present matter does not support a finding that such a necessity has been shown.

that plaintiff has failed to state a claim upon which relief can be granted, and that this matter should be **DISMISSED** without prejudice.

    Signed in Baton Rouge, Louisiana, on March 14, 2007.

*/s/ Docia L. Dalby*

**MAGISTRATE JUDGE DOCIA L. DALBY**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**MOMENTUM TELECOM, INC.**                                         CIVIL ACTION

**VERSUS**                                                                      NUMBER 06-835-RET-DLD

**LOUISIANA PUBLIC SERVICE COMMISSION, ET AL**

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have ten days from date of receipt of this notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on March 14, 2007.

_____

**MAGISTRATE JUDGE DOCIA L. DALBY**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MOMENTUM TELECOM, INC.

VERSUS

LOUISIANA PUBLIC SERVICE
COMMISSION, ET AL

CIVIL ACTION

NO. 06-835-C

**RULING**

The court has carefully considered the petition, the record, the law applicable to this action, and the Report and Recommendation of United States Magistrate Judge Docia L. Dalby dated March 14, 2007. Plaintiff has filed an objection and defendants, Louisiana Public Service Commission and BellSouth Telecommunications, Inc., d/b/a AT&T Louisiana, have filed replies to the objection which the court has considered.

The court hereby approves the report and recommendation of the magistrate judge and adopts it as the court's opinion herein.

Accordingly, the motions to dismiss filed by defendants Louisiana Public Service Commission and BellSouth Telecommunications, Inc. will be granted on the grounds that plaintiff has failed to state a claim upon which relief can be granted, and this matter will be dismissed without prejudice.

Baton Rouge, Louisiana, April 17, 2007.

RALPH E. TYSON, CHIEF JUDGE
MIDDLE DISTRICT OF LOUISIANA