EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MOMENTUM TELECOM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:06-cv-577-WKW |
| | ) | [wo] |
| ALABAMA PUBLIC SERVICE | ) | |
| COMMISSION, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Momentum Telecom, Inc. ("Momentum") seeks a declaratory judgment that Defendant Alabama Public Service Commission ("PSC") has authority to set rates for switching services that Intervenor-defendant BellSouth Telecommunications, Inc. ("BellSouth"), provides to Momentum. The parties agree that the case presents only questions of law and consent to the court deciding the matter on briefs. (Doc. # 19.) Because the controversy is not ripe, the court declines to rule on the merits of the matter and finds that dismissal is appropriate.

## I. FACTS AND PROCEDURAL HISTORY

The dispute in this case arises out of BellSouth's charges to Momentum for switching services.[1]  However, this is not a mere contract dispute because the PSC's authority under the Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (codified in

---

[1] "'[S]witching' is the process by which a call on the network is routed to the called party. Switches are equipment directing calls to their destination." *Qwest Corp. v. Pub. Utils. Comm'n of Colo.*, No. 04-2596, 2006 WL 771223, at *2 n.2 (D. Colo. Mar. 24, 2006).

scattered sections of 47 U.S.C.) ("Telecom Act"), to regulate rates for switching is also implicated.

## A.     *Telecom Act*

With the Telecom Act, Congress established the procedure to introduce competition into the local telephone service industry and to allow local telephone service providers to enter the long distance telephone service market. *See Verizon New England, Inc. v. Me. Pub. Utils. Comm'n*, 509 F.3d 1, 4 (1st Cir. 2007). Traditionally, telephone companies could provide either local service, which was regulated by state commissions, or long distance service, which was regulated by the FCC, but not both. *Id.* The Telecom Act changed the relationship between state commissions and the FCC, resulting in confusion – and litigation – about the role of federal and state regulators. Sections 251 and 252 of the Telecom Act establish the steps incumbent local service providers must take to open up the local telephone service market to competitors, while § 271 enumerates what Bell operating companies ("BOCs")[2] must do to enter the long distance market. 47 U.S.C.§§ 251-52, 271. Section 251 of the Telecom Act allows for competition among local telephone service providers by limiting the rates that incumbents[3] can charge competitors for access to certain network

---

[2] BOCs are the former subsidiaries of AT&T. The parties agree that BellSouth is a BOC. *See* 47 U.S.C. § 153(4).

[3] An incumbent is a local service provider that, among other things, provided telephone service in an area prior to February 8, 1996. 47 U.S.C. § 251(h)(1).

2

elements.[4]  Switches are a network element.  When an incumbent is required to lease a particular network element to competitors, that network element is known as an unbundled network element ("UNE").  47 U.S.C. § 251(c)(3).  The FCC may require an incumbent to unbundle a network element only if it determines that the competitor would be otherwise impaired in its ability to provide service.  *Id.* § 251(d)(2).  The pricing for a UNE is set either in an interconnection agreement negotiated by the carriers or, if they fail to agree, through arbitration conducted by the state commission and subject to review in federal courts.  *Id.* §§ 252(a)-(b). The FCC has determined that prices for UNEs should be based on "total element long run incremental costs" or "TELRIC" – rates which are highly favorable to competitors.  *See AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 374 n.3 (1999).

Under § 271, BOCs must petition the FCC to be permitted to offer interLATA service.[5]  As a condition for entry into the long distance market, the petitioning BOC must make fourteen services, including switching, available to competitors in local markets. 47 U.S.C. § 271(c)(2)(B). The FCC regulates interLATA compliance and consults with state commissions only when a BOC first petitions the FCC to verify that the BOC is in compliance with § 271.  *Id.* § 271(d)(2)(B).

Initially, the FCC defined each of the fourteen services enumerated in § 271 as UNEs,

---

[4]  A network element is a "facility or equipment used in the provision of a telecommunications service." 47 U.S.C. § 153(29).

[5]  InterLATA service is "telecommunications between a point located in a local access and transport area and a point located outside such area."  47 U.S.C. § 153(21).  In plain language, this is long distance telephone service.

meaning that BOCs were required to provide these services under § 271 and charge TELRIC rates under § 251. However, courts struck down this broad definition of UNEs as inconsistent with § 252,[6] and the FCC has since narrowed the definition of UNEs, resulting in some § 271 elements, such as switching, being no longer classified as a UNE. *Verizon New England*, 509 F.3d at 5. BOCs are therefore required to offer switching under § 271, but not as a UNE. Litigation has ensued about what rates BOCs can charge for these non-UNE § 271 elements and whether disputes over the charges should be resolved by the FCC under § 271 or by state commissions under § 252.

## B.    *Procedural History*

Momentum provides local telephone service throughout the Southeast and has approximately 15,000 customers in Alabama. (Compl. ¶ 2.) Momentum has a § 252 agreement with BellSouth that defines the rates BellSouth can charge Momentum for UNEs. When the FCC removed switching from the list of UNEs, BellSouth notified Momentum and other competitors that it would not be taking new UNE switching orders. (BellSouth's Br. 7.)

Because of the uncertainty regarding the price BellSouth could charge Momentum for switching, both Momentum and BellSouth filed petitions with the PSC. Momentum asked the PSC to determine the rate BellSouth could charged for switching under §§ 252 and 271.

---

[6] Courts struck down the FCC's first three definitions of UNEs. *AT&T Corp.*, 525 U.S. at 387-88; *U.S. Telecom Ass'n v. FCC*, 359 F.3d 554, 568 (D.C. Cir. 2004); *U.S. Telecom Ass'n v. FCC*, 290 F.3d 415, 425-26 (D.C. Cir. 2002). Its fourth attempt was successful. *Covad Commc'ns Co. v. FCC*, 450 F.3d 528, 531 (D.C. Cir. 2006).

(Compl. Ex. 1.) BellSouth requested the PSC determine how the removal of switching from the list of UNEs changed the § 252 agreement. (Compl. Ex. 2.) On April 26, 2006, the PSC determined that it did not have jurisdiction to compel BellSouth to include § 271 elements in § 252 agreements and that BellSouth was not obligated to negotiate with Momentum regarding the cost of § 271 elements. (Compl. Ex. 3, at 4-5.) On March 7, 2006, Momentum filed a petition for reconsideration with the PSC. (Compl. Ex. 4.) On May 2, 2006, the PSC entered an order holding Momentum's petition for reconsideration in abeyance because the same issue was being litigated in a federal court in Georgia. (Compl. Ex. 5.) The PSC reserved ruling "until there is guidance from the federal district court in question." (*Id.* at 2.)

On June 27, 2006, Momentum filed this action in the Middle District of Alabama against the PSC. Momentum seeks a declaration from the court that the "PSC, acting pursuant to its powers under Alabama state law and the Telecommunications Act of 1996, may set rates for Section 271 network elements and may require BellSouth to include Section 271 network elements in its interconnection agreements." (Compl. 14.) The court granted BellSouth's motion to intervene (Doc. # 20) and held a hearing on all the issues.

## II. DISCUSSION

As a threshold issue, the court must determine whether Momentum's claims are ripe for review while Momentum's petition for reconsideration is pending before the PSC. Momentum argues that the controversy is ripe, and that even if it is not ripe, the futility

exception to the ripeness doctrine applies.

"Article III of the Constitution limits the jurisdiction of the federal courts to actual cases or controversies and requires [a court] to consider whether a plaintiff's claims are ripe." *Beaulieu v. City of Alabaster*, 454 F.3d 1219, 1227 (11th Cir. 2006). Ripeness has both constitutional and prudential dimensions. *Konikov v. Orange County, Fla.*, 410 F.3d 1317, 1322 (11th Cir. 2005). The purpose of the ripeness requirement is to protect "federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes." *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997).

In deciding whether a claim is ripe, courts consider (1) "whether the issues are fit for judicial decision" and (2) "the hardship to the parties of withholding court consideration."[7] *Konikov,* 410 F.3d at 1322. The Supreme Court has explained that courts use a three-pronged test to evaluate these two factors: "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Ohio Forestry Ass'n, Inc. v. Sierra Club,* 523 U.S. 726, 733 (1998). This inquiry allows the court "to determine 'whether the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective

---

[7] As the Eleventh Circuit has noted, "the relationship between the fitness and hardship prongs of the ripeness inquiry is not entirely clear." *Pittman v. Cole*, 267 F.3d 1269, 1280 n.8 (11th Cir. 2001). For example, it is unclear if the two factors are evaluated on a sliding scale approach or if both factors must be present. *Id.*

decisionmaking by the court.'" *Konikov*, 410 F.3d at 1322 (quoting *Cheffer v. Reno*, 55 F.3d 1517, 1524 (11th Cir. 1995)).

## A.    *Fitness*

The judicial intervention and further factual development prongs relate to whether a claim is fit for review. *Pittman*, 267 F.3d at 1278. The fitness requirement protects "agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbot Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967), *abrogated by Califano v. Sanders*, 430 U.S. 99 (1977). When an issue is still pending before an agency, judicial intervention would interfere with the agency action. *Nat'l Adver. Co. v. City of Miami*, 402 F.3d 1335, 1339-40 (11th Cir. 2005); *Staver v. Am. Bar Ass'n*, 169 F. Supp. 2d 1372, 1377 (M.D. Fla. 2001) (finding a claim is not fit for review "where the decision-making body has yet to render its final decision"). An issue pending on a motion for reconsideration is still before the agency. *See Clifton Power Corp. v. FERC*, 294 F.3d 108, 110 (D.C. Cir. 2002) (finding issue was still before agency when party filed a motion for reconsideration with an agency).

Momentum seeks a declaratory judgment that § 271 elements can be included in § 252 interconnection agreements and that the Telecom Act gives the PSC the power to set rates for § 271 elements;[8] however, these issues are still pending before the PSC on a motion for

---

[8] Additionally, Momentum seeks a declaration regarding the PSC's authority to set rates for § 271 elements under *state law*. (Compl. ¶ 64.) Momentum concedes that, unlike the other issues in this case, it did not bring this issue before the PSC. (Momentum's Br. 17.) For the court to have jurisdiction under § 252(e)(6) the issue must first be presented to the state commission. The issue of the PSC's authority to set rates under state law is not ripe for review because it has not been presented to the state commission.

reconsideration. The Telecom Act provides for federal court review "in any case in which a State commission makes a determination under this section." 47 U.S.C. § 252(e)(6). Because the PSC has not decided the motion for reconsideration, this controversy is not ripe for federal court review. A decision from this court would amount to an improper advisory opinion.

The facts of this case are not sufficiently developed as one critical fact is missing: the agency's ruling on the motion for reconsideration. *See Pittman*, 267 F.3d at 1278-79 (finding case was not fit for review when an "important factual issue" was unresolved because the agency had not adopted an actual policy). Any decision on the merits in this case would require the court first to guess at how the PSC would rule on Momentum's petition. Because a decision from this court would interfere with agency action and because further factual development is necessary, this case is not fit for review.

**B.    *Hardship***

Hardship is another factor in determining ripeness. "[H]ardship exists if a party suffers an 'immediate and direct impact' from a challenged decision or policy and that when such is the case, it is more likely to be considered ripe." *Hames v. City of Miami*, 479 F. Supp. 2d 1276, 1285 (S.D. Fla. 2007) (citing *Pittman*, 267 F.3d at 1280).

A party does not experience a legal harm if the agency's decision or policy does not affect the legal rights of the parties. In *Pittman*, the plaintiffs challenged the constitutionality of an advisory opinion from the state bar. The Eleventh Circuit determined that withholding

8

adjudication until a more mature case was presented would not cause the plaintiffs legal harm because the challenged state policy did not affect their rights. The court concluded the "plaintiffs are in exactly the same position after the . . . opinion was issued, legally speaking, as they were beforehand." *Pittman*, 267 F.3d at 1281.

Here, Momentum will not experience a legal hardship if this court refrains from ruling on the merits of its claims. Because the PSC has held Momentum's petition for reconsideration in abeyance, it has not yet issued an order changing Momentum's legal rights with respect to the rates that BellSouth can charge Momentum. Like the plaintiffs in *Pittman*, Momentum is in the same position legally that it was in before the PSC ruled. *See Pittman*, 267 F.3d at 1281. Momentum also claims that it is experiencing practical harm because BellSouth is charging it higher rates. However, the issue of whether BellSouth can charge Momentum the higher rates remains pending before the PSC, and it is more appropriate for this court to review that issue after the PSC has issued its decision.

Momentum argues that the futility exception to ripeness applies because the PSC has stated it will not decide this matter until a Georgia court decides a similar issue.[9] Futility is an exception to the requirement of ripeness. *Shalala v. Ill. Council on Long Term Care, Inc.*,

---

[9] Momentum also claims agency review is futile because the PSC has consented to this court deciding the issues, indicating the PSC will not render a decision on Momentum's petition. First, the PSC has not specifically stated that it will not rule on Momentum's petition. Moreover, Momentum ignores its role in creating the situation. Finding futility here would allow utilities to bypass state commission review by suing a commission in federal court before the commission had completed reviewed of a pending petition. When the commission then stopped its review to respond to the pending lawsuit, the utility could claim that further agency action would be futile due to the pending lawsuit. The court refuses to allow parties to side-step the system of administrative review created in the Telecom Act.

529 U.S. 1, 13 (2000). While the PSC decided to wait until a district court in Georgia ruled on a similar case pending before it, the PSC has not indicated that it will not rule on Momentum's petition; indeed, the PSC's actions suggest that it intends to rule but has been waiting for guidance on the law. At the time the PSC held the petition for reconsideration in abeyance, courts were split on the issue.[10] Now, more courts, including the Georgia court that the PSC was awaiting, have addressed the issue and determined that state public service commissions cannot regulate rates for § 271 elements.[11] Because Momentum has not shown that the PSC will not rule on its petition, the futility exception does not apply.

Moreover, to the extent the parties have consented to the court determining the unripe issues,[12] the court finds that their consent does not confer jurisdiction on the court. Parties

---

[10] *Compare Verizon New England, Inc. v. Me. Pub. Utils. Comm'n*, 441 F. Supp. 2d 147 (D. Me. 2006) (state commissions have authority to set rates for § 271 elements), *vacated*, 509 F. 3d 1, *with Sw. Bell Tel., L.P. v. Mo. Pub. Serv. Comm'n*, 461 F. Supp. 2d 1055 (E.D. Mo. 2006) (state commission had no authority to set rates for § 271 elements)*, appeals docketed*, Nos. 06-3701, 06-3726, 06-3727 (8th Cir. Oct. 26, 2006).

[11] *See Verizon New England*, 509 F. 3d 1; *BellSouth Telecomms., Inc. v. Ga. Pub. Serv. Comm'n*, Nos. 06-162, 06-972, slip op. at 7 (N.D. Ga. Dec. 3, 2007); *Mich. Bell Tel. Co. v. Lark*, No. 06-11982, 2007 WL 2868633, at *6 (E.D. Mich. Sept. 26, 2007), *appeals docketed*, Nos. 07-469, 07-2473 (6th Cir. Nov. 28, 2007); *BellSouth Telecomms. Inc. v. Ky. Pub. Serv. Comm'n*, No. 06-65, 2007 WL 2736544, at *7 (E.D. Ky. Sept. 18, 2007); *Qwest Corp. v. Ariz. Corp. Comm'n*, 496 F. Supp. 2d 1069, 1077-79 (D. Ariz. 2007), *appeals docketed*, No. 07-17079, 07-17080 (9th Cir. Nov. 18, 2007); *Ill. Bell Tel. Co. v. O'Connell-Diaz*, No. 05-1149, 2006 WL 2796488, at *13-14 (N.D. Ill. Sept. 28, 2006); *Dieca Commc'ns, Inc. v. Fla. Pub. Serv. Comm'n*, 447 F. Supp. 2d 1281, 1286 (N.D. Fla. 2006); *Sw. Bell*, 461 F. Supp. 2d at 1068; *Verizon New England, Inc. v. N.H. Pub. Utils. Comm'n*, No. 05-94, 2006 WL 2433249, at *8 (D.N.H. Aug. 22, 2006), *aff'd*, 509 F.3d 1; *BellSouth Telecomms., Inc. v. Miss. Pub. Serv. Comm'n*, 05-173, 2006 WL 1140081, at *1 (S.D. Miss. Apr. 27, 2006).

[12] The PSC has consented to the court determining various issues in this case while maintaining that other issues are not ripe; the PSC has not been consistent as to which issues it has decided are not ripe. In its answer, it consented to the court deciding its authority to set rates under § 271 but not under § 252. (PSC's Answer ¶ 64.) In its briefing, the PSC only claimed that the issue of whether it had authority to set rates for § 271 elements under state law was unripe and, presumably, consented to the court deciding the other issues in the case. (PSC's Br. 13-15.) Even if the PSC consented to the court determining every issue

10

cannot consent to a court hearing a case that is not ripe. *See Nat'l Propane Gas Ass'n v. U.S. Dep't. of Transp.*, 43 F. Supp. 2d 665, 674 (N.D. Tex. 1999). The Eleventh Circuit has emphasized that "[s]trict application of the ripeness doctrine prevents federal courts from rendering impermissible advisory opinions and wasting resources through review of potential or abstract disputes." *Nat'l Adver.*, 402 F.3d at 1339. Here, the PSC has attempted to consent to this court exercising jurisdiction even though the controversy is not ripe; the PSC "agreed to defer to the wisdom of the Court with regard to a determination as to whether federal law affords the [PSC] the authority to establish rates for § 271 elements in the event the [PSC] **later determines** that it has the authority to establish such rates consistent with state law." (PSC's Br. 3 (emphasis added).) However, because a party cannot consent to a court hearing an unripe case, this statement does not confer jurisdiction upon the court.

This case is not ripe because it is not fit for review and because Momentum has not demonstrated hardship. Because the controversy is not ripe, this court does not have jurisdiction to decide this case.

### V.  CONCLUSION

Accordingly, it is ORDERED that this case is DISMISSED without prejudice.

An appropriate judgment will be entered.

DONE this 22nd day of January, 2008.

_____/s/  W.  Keith Watkins_____
UNITED STATES DISTRICT JUDGE

_____

in the case, its consent does not change the ripeness analysis.